UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

## Case Number: 18-22798-CIV-MORENO

JAVIER CARDENAS and KURT KIRTON,

        Plaintiffs,

vs.

TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR SALES, U.S.A., INC.,
TOYOTA MOTOR ENGINEERING &
MANUFACTURING, INC., and
SOUTHEAST TOYOTA DISTRIBUTORS,
LLC,

        Defendants.

_____/

## ORDER DENYING DEFENDANTS' MOTION TO STAY OR TRANSFER

This class action lawsuit is about whether certain Toyota entities defrauded consumers and

engaged in unfair trade practices by concealing a defect in the heating, ventilation, and air

conditioning systems installed in 2012–2017 Toyota Camrys and Camry Hybrids.

The Plaintiffs allege the Toyota entities' fraudulent conduct violates the Racketeering Influenced

and Corrupt Organizations Act, the Magnuson-Moss Warranty Act, Florida's Deceptive and

Unfair Trade Practices Act, and the Tennessee Consumer Protection Act, breaches the implied

warranty of merchantability, and constitutes common law fraud or fraudulent concealment.

The Defendants believe this lawsuit is a "copycat class action" involving claims

substantially similar to those being litigated in three other ongoing class actions against

Toyota Motor Sales, U.S.A., Inc. that are currently pending in the Central District of California.

For this reason, the Defendants ask the Court to transfer this action to California pursuant to the

"first-to-file" rule or the federal transfer statute. The Plaintiffs strongly disagree and insist this

lawsuit belongs in Florida because there is a named Florida plaintiff, and because there are Florida statutory and common law claims asserted against (among others) one Florida defendant, concerning conduct that occurred in Florida. The Plaintiffs further attest the proposed classes in this lawsuit do not overlap with the certified class or proposed classes in the pending California class actions.

THE COURT has considered the moving papers and oral argument, the pertinent portions of the record, and is otherwise fully advised in the premises. For the reasons below, the Defendants' Motion to Stay or Transfer this Action to the Central District of California **(D.E. 25)** is **DENIED**.

## DISCUSSION

The Defendants[1] assert there are sufficient grounds to transfer this action to California pursuant to the "first-to-file" rule or the federal transfer statute in 28 U.S.C. Section 1404(a). The Defendants direct the Court to look at the allegations in three ongoing class actions against Toyota Motor Sales, U.S.A., Inc. that are currently pending in the Central District of California: *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:15-cv-08629-FMO-E (C.D. Cal., filed Nov. 4, 2015) ("*Salas*"); *Stockinger v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:17-cv-00035-VAP-KS (C.D. Cal., filed Jan. 3, 2017) ("*Stockinger*"); and *Beil v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:17-cv-07079-VAP-KS, (C.D. Cal., filed Sept. 25, 2017) ("*Beil*") (collectively, the "California Actions"). Alternatively, the Defendants ask the Court to stay this lawsuit pending a result in the upcoming class action trial in *Salas*.

---

[1] Specifically, the Plaintiffs assert claims against Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., and Southeast Toyota Distributors, LLC ("Southeast Toyota") (collectively, the "Defendants").

The Defendants point out that each case revolves around the same alleged heating, ventilation, and air conditioning system defect (*i.e.* the system fails to properly remove all humidity and water; and consequently, emits foul, noxious, and toxic odors into the vehicle passenger compartment, which exposes passengers to serious health and safety hazards, such as mold and other contaminants).[2] The Plaintiffs disagree that transfer is warranted under either the "first-to-file" rule or Section 1404(a).

## I.   THE "FIRST-TO-FILE" RULE

"Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (citations omitted). But, as this Court has recognized, the first-to-file rule "is not a hard-and-fast rule." *Pompano Imports, Inc. v. BMW of N. Am., LLC*, No. 15-23491-CIV, 2015 WL 12556151, at *2 (S.D. Fla. Nov. 10, 2015) (citing *Manuel*, 430 F.3d at 1135). Rather, it "simply creates a presumption in favor of" the forum of the first-filed action, which can be overcome by compelling circumstances. *Id.* As such, the parties objecting to jurisdiction in the first-filed forum, here the Plaintiffs, carry the burden of proving the "compelling circumstances" necessary to justify an exception to the first-to-file rule. *Manuel*, 430 F.3d at 1135.

In deciding whether the first-to-file rule applies, courts consider: "(1) the chronology of the two actions, (2) the similarity of the parties, and (3) the similarity of the issues." *Lianne Yao v. Ulta Beauty Inc.*, No. 18-22213-CIV-ALTONAGA, 2018 WL 4208324, at *1 (S.D. Fla.

---

[2] The Court will refer to the heating, ventilation, and air conditioning system defect as the "HVAC System Defect" or "Defect."

Aug. 8, 2018) (citing *Women's Choice Pharms., LLC v. Rook Pharms., Inc.*, No. 16-cv-62074, 2016 WL 6600438, at *2 (S.D. Fla. Nov. 8, 2016)). Ultimately, courts are afforded "an ample degree of discretion" in applying the first-to-file rule. *Strother v. Hylas Yachts, Inc.*, No. 12-80283-CV, 2012 WL 4531357, at *1 (S.D. Fla. Oct. 1, 2012) (quoting *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012) (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952))).

The Defendants argue the parties and claims in this lawsuit are substantially similar to, and overlapping with, the parties and claims in the California Actions. The Plaintiffs contend that the Defendants oversell this argument, and maintain this lawsuit is substantially dissimilar to the California Actions because this lawsuit involves different classes of plaintiffs, different defendants, new claims—and in certain instances, different vehicle makes and models. After full consideration of the moving papers and oral argument, the Court finds the Plaintiffs have met their burden of establishing the "compelling circumstances" necessary to warrant an exception to the "first-to-file" rule.

At the outset, the *proposed* classes in this lawsuit differ significantly from the narrow *certified*-class in *Salas*, and the proposed classes in *Stockinger* and *Beil*. The court in *Salas* already certified a "*California-only class* consisting of all persons in California who purchased or leased a 2012-2015 Toyota Camry XV 50 model vehicle from an authorized Toyota dealer." *See Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-8629 FMO (EX), 2019 WL 1940619, at *14 (C.D. Cal. Mar. 27, 2019) (emphasis added). And in *Stockinger* and *Beil*, the plaintiffs seek to certify a nationwide class, multiple statewide sub-classes, and several California statute based sub-classes—but strikingly, these proposed classes comprise owners and lessees of make and model vehicles that are not involved in this lawsuit: *Beil* involves only 2013–2017 Lexus ES series

- 4 -

models, and *Stockinger* involves a myriad of 2006–2015 Toyota and Lexus model vehicles, none of which include any Toyota Camry models. *See Stockinger*, No. 2:17-cv-00035-VAP-KS, ECF No. 34 at ¶¶ 2, 73 (C.D. Cal. Mar. 24, 2017); *Beil*, No. 2:17-cv-07079-VAP-KS, ECF No. 1 at ¶¶ 1, 75 (C.D. Cal. Sept. 25, 2017).

As a notable aside, the *Salas* court already declined in separate orders to accept transfer of the *Stockinger* and *Beil* actions into its docket for the precise reason that those cases "would not entail a substantial duplication of labor if heard by different judges," since those cases involved different vehicle makes, models, and model years. (*See* D.E. 33 at 30, 32.) The court in *Salas* noted that *Beil* involved only 2013–2017 Lexus ES vehicles, and described *Stockinger* as involving "every other vehicle manufactured by Toyota, and for vastly different years." *Id.* At the time of these denials, the *Salas* court was well acquainted with the parties and claims, having presided over that case for more than a year when it denied transfer of *Stockinger*, and nearly two years when it denied transfer of *Beil*. Thus, if *Stockinger* and *Beil* were not substantially similar enough to *Salas* to warrant an intra-district transfer, then this lawsuit is certainly not substantially similar enough to *Stockinger* and *Beil* to transfer it across the country.

Turning back, then, to the proposed classes in this case, the Plaintiffs seek to certify classes of owners and lessees of 2012–2017 Toyota Camrys and Camry Hybrids. (D.E. 1 at ¶¶ 2, 95.) Thus, the Plaintiffs here seek class certification regarding vehicles that are not involved in *Stockinger* and *Beil* at all. And while a class of California owners and lessees of 2012–2015 Toyota Camry XV 50 models has been certified in *Salas*, here, the Plaintiffs made clear at oral argument that in light of *Salas*, they are now seeking—in addition to the Florida and Tennessee statewide classes they sought before—a nationwide class that *excludes* California. Consequently, the proposed classes in this lawsuit do not overlap with the certified class in *Salas*,

or the proposed classes in *Stockinger* and *Beil*. In essence, this lawsuit fills the large gap left by the narrow class that was certified in *Salas*. Furthermore, to the extent this lawsuit is similar to *Salas* because it also involves Toyota Camry models, other compelling reasons for not transferring this case to the Central District of California are immediately apparent: such as the chronology of the lawsuits, the composition of the defendants, and the claims involved.

Put simply, the chronology of *Salas* and this lawsuit are not in harmony. *Salas* was filed on November 4, 2015; this case was not filed until July 12, 2018. In its two-and-a-half-year head start, the court in *Salas* has ruled on two rounds of motions to dismiss by the defendant, the defendant's motion for summary judgment, and indeed, already certified a California-only class. Right now, while the parties in *Salas* prepare for a class action trial, this lawsuit remains at the dismissal stage. Consequently, any judicial economy saved by a potential consolidation with *Salas* has expired. And, even though the *Salas* court is well acquainted with the claims related to the HVAC System Defect, this lawsuit involves three new defendants, and for the first time, Racketeering Influenced and Corrupt Organizations Act ("RICO") allegations.

The collection of defendants in this lawsuit is substantially dissimilar to the sole defendant in each of the California Actions. The only defendant in the California Actions is Toyota Motor Sales, U.S.A., Inc. which is, at least on paper, a California corporation. (*See* D.E. 1 at ¶ 35 (noting Toyota Motor Sales is headquartered in Texas, but is incorporated in California).) This lawsuit, by contrast, involves three new Toyota entity defendants: Toyota Motor Corporation (the Japanese parent corporation), Toyota Motor Engineering & Manufacturing of North America, Inc. (a Kentucky corporation that is headquartered in Texas), and Southeast Toyota Distributors, LLC—which, notably, is headquartered in Florida. *See id.* at ¶¶ 34, 37, 39. The presence of these additional defendants matters. It matters not only because one of them is a Florida resident and

- 6 -

the Plaintiffs allege relevant conduct occurred in Florida, but critically, the Plaintiffs here also allege violations of RICO, including a RICO conspiracy claim involving all four defendants. RICO was not alleged in the California Actions, and so, the judges presiding over those cases have not issued any rulings on dispositive or discovery motions[3] against the backdrop of an alleged RICO conspiracy. At bottom, these new defendants and new claims give this lawsuit a significantly different tenor than the California Actions.

Taking these dissimilarities together, the Court finds that the Plaintiffs have carried their burden of proving "compelling circumstances" necessary to justify an exception to the first-to-file rule. *Manuel*, 430 F.3d at 1135. Consequently, in exercising its discretion, the Court declines to transfer this lawsuit across the country to California. The Defendants' Motion to Transfer on this ground is accordingly **DENIED**.

## II.     THE FEDERAL TRANSFER STATUTE

Under Section 1404(a), a district court may transfer any civil action to any other district or division where it might have been brought, in the interest of justice, for the convenience of the parties and witnesses. 28 U.S.C. § 1404(a). Courts are afforded broad discretion to determine whether transfer is justified under Section 1404(a). *Almanzar v. Select Portfolio Servicing, Inc.*, No. 14-22586-CIV-MORENO, 2015 WL 11233132, at *1 (S.D. Fla. Jan. 29, 2015) (citing *Trafalgar Capital Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F. Supp. 2d 1274, 1281 (S.D. Fla. 2012)).

To prevail on a motion under Section 1404(a), the movant must generally establish:

---

[3] Notwithstanding, the Court will strive to make its discovery rulings as consistent as possible with the discovery rulings issued in the California Actions. But, the Court strongly urges the parties to resolve discovery disputes that are redundant of those already litigated in California.

(1) an adequate alternative forum is available; (2) the private interests of the parties weigh in favor

of transfer; and (3) the public interests weigh in favor of transfer. *Id.* (citing *Hartman*, 848 F.

Supp. 2d at 1282). Private factors include: (a) the plaintiffs' initial choice of forum;

(b) the convenience of the parties; (c) the convenience of the witnesses and the availability of

process to compel the attendance of unwilling witnesses; and (d) the relative ease of access to

sources of proof and location of relevant documents.[4] *Id.* Additionally, public factors include:

(a) the forum's familiarity with the governing law; and (b) the forum's interest in adjudicating the

dispute. *Id.* "Ultimately, transfer can only be granted where the balance of convenience of the

parties *strongly* favors the defendant." *Id.* (quoting *Steifel Lab., Inc. v. Galderma Lab., Inc.*, 588

F. Supp. 2d 1336, 1339 (S.D. Fla. 2008)) (emphasis added).

Here, the Court need not resolve the parties' dispute over what alternative forums this

lawsuit may have been brought in, because collectively, the private and public factors do not

strongly weigh in favor of transfer. As for the private factors, while the importance of a plaintiff's

forum choice is diminished in the class action context,[5] the balance of convenience of the parties

does not strongly favor transfer to California. The Defendants argue that California provides the

---

[4] As this Court previously recognized, the location of documents or other evidence is "almost irrelevant today '[g]iven the ease with which documents can be transported in the technological age.'" *Almanzar*, 2015 WL 11233132, at *2 (quoting *Hartman*, 878 F. Supp. 2d at 1288–89).

[5] *See Almanzar*, 2015 WL 11233132, at *1 n.1 (declining to focus on the plaintiff's-choice-of-forum factor because "a plaintiff's choice of venue is generally not entitled to great deference where, *inter alia*, the suit is a class action, or where plaintiff has chosen a forum that is not his or her 'home forum'") (citing *Cellularvision Tech. & Telecomm., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007)).

Here too, the Court will not focus on the Plaintiffs' choice of forum because the Complaint asserts class action claims, and because the named Plaintiffs do not currently reside in Florida. While Plaintiff Javier Cardenas purchased his Toyota Camry from Kendall Toyota near Miami, Florida while he was a Florida citizen, he is currently a citizen of Missouri. (*See* D.E. 1 at ¶ 23.) The other named Plaintiff, Kurt Kirton, is a citizen of Tennessee. *Id.* at ¶ 28.

greatest convenience for the parties and witnesses. But right now, none of the Defendants are headquartered in California: Southeast Toyota is headquartered in Florida; Toyota Motor Corporation is headquartered in Japan; and Toyota Motor Sales and Toyota Motor Engineering & Manufacturing are headquarted in Texas. (*See* D.E. 1 at ¶¶ 34–35, 37, 39.) Furthermore, as the Defendants acknowledge, "[v]irtually all of the relevant employees of the Toyota Entities" are "primarily located in Texas." (D.E. 25 at 20–21.) By contrast, Southeast Toyota is a Florida limited liability company that is headquartered in Florida (D.E. 1 at ¶ 39), and the Defendants recognize in their moving papers that relevant Southeast Toyota witnesses are located in Florida (*see* D.E. 25 at 21).[6] In addition, of the non-parties alleged as co-conspirators in the RICO enterprise, none are headquartered in California: Gulf States Toyota is also headquartered in Texas, and DENSO International America, Inc. is headquartered in Michigan. (D.E. 1 at ¶¶ 43, 45.) Taking together Southeast Toyota and their witnesses' presence in Florida, the central location of Texas between Florida and California, the chronology of the California Actions relative to this lawsuit, and the other dissimilarities between the California Actions and this lawsuit, the Court cannot conclude that convenience strongly favors transfer to California.

The Court also finds that public factors do not weigh in favor of transfer. While the Central District of California is as equally qualified as this Court to decide issues in this lawsuit in accordance with applicable law, this Court has ample experience in class action cases involving RICO and deceptive trade practices claims asserted against automotive manufacturers and distributors. In addition, as the *Salas* court noted in *declining* transfer of *Stockinger* and *Beil*, the

---

[6] Interestingly, while Defendants resist the idea of its Texas based witnesses testifying in Florida on convenience grounds, it has no problem sending its Florida based witnesses all the way to California. (*See* D.E. 25 at 21.)

issues in those cases "would not entail substantial duplication of labor" if heard by different judges. (*See* D.E. 33 at 30, 32.) The Court finds this rationale applies equally when comparing this lawsuit to *Salas*—especially so because this lawsuit, unlike *Salas*, involves racketeering and conspiracy claims under RICO. In brief, it is entirely appropriate for this Court, which is well equipped to apply the governing law, to resolve the issues in this case.

Finally, the public interest weighs in favor of keeping this lawsuit in Florida. In addition to RICO claims, the Complaint asserts deceptive trade practices claims under Florida statute and common law against a Florida resident, Southeast Toyota, based upon conduct occurring in Florida and deriving in part from efforts to circumvent Florida's Lemon Law. (*See, e.g.,* D.E. 1 at ¶¶ 77, 125(g), 138(b).) These allegations suggest an adversely disparate impact on Florida citizens. Notably, the Complaint does not assert any claims under California law, and the only California defendant, Toyota Motors Sales, U.S.A., Inc. is now headquartered in Texas and is a California corporation on paper only. *See id.* at ¶ 35. Furthermore, the court in *Salas* certified a California-only class, thereby leaving Florida citizens, and citizens of other states, without claims for relief relating to the HVAC System Defect in Toyota Camry model vehicles. Put simply, this case raises several issues that are of far greater interest to Florida than California. As such, the Court finds the public factors also weigh in favor of keeping this lawsuit in Florida.

For these reasons, the Court finds that the Defendants have failed to meet their burden of establishing that California is the more convenient forum under Section 1404(a). *Almanzar*, 2015 WL 11233132, at *1 ("The burden is on the movant for a transfer of venue to establish that the suggested forum is more convenient.") (citing *Steifel Lab.*, 588 F. Supp. 2d at 1338).

Consequently, the Defendants' Motion to Transfer under Section 1404(a) is **DENIED**.

## III.   THE MOTION TO STAY

Alternatively, the Defendants ask the Court to stay this lawsuit pending a result in the upcoming class action trial in *Salas*.[7] As discussed above, this lawsuit is quite dissimilar, and chronologically trails far behind *Salas*. For these reasons, the Court declines to stay this case pending resolution of the California-only class trial in *Salas*. Therefore, the Defendants' Motion to Stay is **DENIED**.

## CONCLUSION

For the foregoing reasons, it is

**ADJUDGED** that the Defendants' Motion to Stay or Transfer this Action to the Central District of California **(D.E. 25)** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this ___25___ of September 2019.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

---

[7] As of the date of this Order, the court in *Salas* has not set a trial date yet.