UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 18-22798-CIV-MORENO**

JAVIER CARDENAS and KURT KIRTON,

      Plaintiffs,

vs.

TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR SALES, U.S.A., INC.,
TOYOTA MOTOR ENGINEERING &
MANUFACTURING, INC., and
SOUTHEAST TOYOTA DISTRIBUTORS,
LLC,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTIONS TO DISMISS

      This class action lawsuit is about whether certain Toyota entities defrauded consumers

and engaged in unfair trade practices by concealing a defect in the Heating, Ventilation, and

Air Conditioning Systems installed in 2012–2017 Toyota Camrys and Camry Hybrids.

The Plaintiffs claim the Toyota entities' conduct constitutes common law fraud or fraudulent

concealment, and violates the Racketeering Influenced and Corrupt Organizations Act, the

Magnuson-Moss Warranty Act, Florida's Deceptive and Unfair Trade Practices Act, and the

Tennessee Consumer Protection Act. The Plaintiffs also claim the Defendants have breached the

implied warranty of merchantability.

      For the reasons below, the Defendants' Motions to Dismiss **(D.E. 26, 27)** are

**GRANTED IN PART AND DENIED IN PART**. Specifically, the Motions are **GRANTED** as

to Counts III, IV, V, and VI, and thus these Counts are **DISMISSED**, and the Motions are

**DENIED** as to Counts I, II, VII, and VIII.

# I.  **BACKGROUND**

The Plaintiffs allege the Defendants[1] marketed, sold, and leased millions of 2012–2017 Toyota Camrys and Camry Hybrids throughout the United States despite knowing the vehicles had a defective Heating, Ventilation, and Air Conditioning System.  According to the Plaintiffs, the Heating, Ventilation, and Air Conditioning Systems were defective because they failed to properly remove all humidity and water; and consequently, emitted foul, noxious, and toxic odors into the vehicle passenger compartment, which exposed passengers to serious health and safety hazards, such as mold and other contaminants.

In August 2014, Plaintiff Javier Cardenas purchased a new 2014 Toyota Camry from Kendall Toyota near Miami, Florida, while he was a Florida resident.  In March 2017, Plaintiff Kurt Kirton purchased a used 2015 Toyota Camry from a Wyatt Johnson Toyota dealership in Clarkesville, Tennessee.  Both Plaintiffs allege they were unaware their vehicles had a Defective Heating, Ventilation, and Air Conditioning System at the time of purchase, and that had they known about the Defect, they would not have purchased their vehicles.

The Complaint alleges the Defendants possessed exclusive and superior knowledge about the Defect based upon: (1) consumer complaints filed with the National Highway Traffic Safety Administration and with Toyota Motor Sales's network of exclusive dealers; (2) testing performed by Toyota Engineering and Manufacturing in response to consumer complaints; (3) Technical Service Bulletins issued by Toyota to its network of distributors and dealers; and (4) repair orders, aggregate warranty data, and parts data compiled by and received from

---

[1]  Specifically, the Plaintiffs assert claims against Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., (collectively, the "Toyota Defendants"), and Southeast Toyota Distributors, LLC ("Southeast Toyota") (collectively all together, the "Defendants").

those dealers. Despite having this information, the Complaint alleges the Defendants failed to disclose, and actively concealed the Defect and its health and safety hazards from the Plaintiffs and putative class members.

As a result, the Plaintiffs filed an 8-count Class Action Complaint seeking economic loss damages and alleging that the Defendants' nondisclosure and active concealment of the Defect violates federal and state law. The Toyota Defendants and Southeast Toyota filed separate motions to dismiss. This Order resolves both motions.

## II.    **LEGAL STANDARD**

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Detailed factual allegations are not required, but a complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." *Twombly*, 550 U.S. at 555 (citation omitted). The factual allegations must be enough to "raise a right to relief above the speculative level." *Id.* (citations omitted).

Where a cause of action sounds in fraud, the allegations in a complaint must satisfy Federal Rule of Civil Procedure 9(b). Under Rule 9(b), "a party must state with particularity the

3

circumstances constituting fraud or mistake"; although "conditions of a person's mind," such as malice, intent, and knowledge may be alleged generally. Fed. R. Civ. P. 9(b). To comply with Rule 9(b), a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997) *(per curiam)* (citation omitted). In other words, a plaintiff is required to plead the "who, what, when, where, and how" pertaining to the underlying fraud. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (citation omitted). At bottom, the purpose of particularity pleading is to alert defendants to their precise misconduct and protect them against baseless charges of fraudulent behavior. *See Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (citation omitted).

Finally, at the motion to dismiss stage, the Court must view the allegations in the complaint in the light most favorable to the plaintiffs and accept well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986).

### III. DISCUSSION

### A. RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT

#### 1. Racketeering (Count I)

In Count I, the Plaintiffs assert a federal RICO claim under 18 U.S.C. Section 1962(c) against the Toyota Defendants. To state a plausible Section 1962(c) claim, a plaintiff must allege that defendants: (1) engaged in conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006), *abrogated on other grounds by Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016).

4

In this case, the Plaintiffs' racketeering claim is predicated on mail and wire fraud. Thus, the allegations in the Complaint must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal*, but also with Rule 9(b)'s heightened pleading standard. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007)). Notwithstanding, because particularity pleading under Rule 9(b) is limited to "the circumstances constituting fraud," the non-fraud elements of a RICO claim can be alleged under Rule 8(a) standards. *See D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 666 (2d Cir. 2014); *Audette-Weaver v. J.G. Wentworth, S.S.C., L.P.*, No. 8:07-cv-2056-T-26MAP, 2008 WL 11336685, at *6 (M.D. Fla. Feb. 26, 2008).

### a) Racketeering Activity

Racketeering activity is defined as any act indictable under any of the statutory provisions listed in 18 U.S.C. Section 1961(1), which includes mail and wire fraud in violation of 18 U.S.C. Sections 1341 and 1343. *See Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1359 (11th Cir. 2004). A "pattern of racketeering activity" requires the commission of at least two such acts within a ten-year period. *See* 18 U.S.C. § 1961(5); *Rajput v. City Trading, LLC*, 476 F. App'x 177, 180 (11th Cir. 2012) (*per curiam*).

The Plaintiffs' racketeering claim is predicated on mail and wire fraud, and thus they must allege: (1) intentional participation in a scheme to defraud; and (2) the use of the interstate mails or wires in furtherance of that scheme. *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009) (citing *United States v. Hasson*, 333 F.3d 1264, 1270 and n.7 (11th Cir. 2003); *United States v. Ellington*, 348 F.3d 984, 990 (11th Cir. 2003)). A "scheme to defraud" requires proof of a material misrepresentation, or the omission or concealment of a material fact

calculated to deceive another out of money or property. *Id.* (citing *United States v. Svete*, 556 F.3d 1157, 1161, 1169 (11th Cir. 2009) (*en banc*)).

In this case, the Court finds that the Plaintiffs adequately allege mail and wire fraud against the Toyota Defendants. The Complaint sets forth numerous allegations establishing the Toyota Defendants' exclusive and superior knowledge of the Defect. By way of examples, the Complaint alleges the Toyota Defendants were aware of the Defect based upon numerous complaints filed with the National Highway Traffic Safety Administration by consumers complaining about foul, moldy odors coming from the Heating, Ventilation, and Air Conditioning System in their vehicle. (*See* D.E. 1 at ¶¶ 65–67.) The Complaint also alleges the Toyota Defendants used their knowledge of the Defect to share Technical Service Bulletins with its network of distributors in 1997, 2009, 2011, 2013, and 2015. *See id.* at ¶¶ 68–74, 125b–c, e, j, l.

According to the Complaint, a 1997 Technical Service Bulletin described the Heating, Ventilation, and Air Conditioning System Defect as a "musty odor . . . emitted from the air conditioning system of some vehicles which are usually operated in areas with high temperature and humidity." *Id.* at ¶¶ 69, 125b. This Technical Service Bulletin noted that the odor could result from "[b]lockage of the evaporator housing drain pipe, resulting in the build up of condensate" or "[m]icrobial growth in the evaporator, arising from dampness in the evaporator housing where the cooling air flow is dehumidified." *Id.* at ¶ 69.

Then, the Complaint alleges that in 2009 and 2011, new Technical Service Bulletins were issued, stating that a "newly designed evaporator sub-assembly [had] been made available to decrease the potential for HVAC odor" and that this repair was "covered under the Toyota Comprehensive Warranty . . . in effect for 36 months or 36,000 miles, whichever occurs first."

*Id.* at ¶¶ 70–71, 125c, e. The 2009 Bulletin also stated that certain "Camry, Camry HV, and Prius models may exhibit an intermittent HVAC system odor." *Id.* at ¶¶ 70, 125c.

The Complaint further alleges that a 2013 Bulletin explained the odors as "naturally occurring from the HVAC system and/or related environmental factors" and then informed dealers there was "no way to eliminate these odors." *Id.* at ¶¶ 72, 125j. That Bulletin further provided procedures to "minimize" the odors, but noted the procedures would "NOT eliminate the odors experienced, but [were] provided to help reduce the intensity of [the] odors." *Id.* The Complaint also alleges that a 2015 Bulletin revised the 2013 Bulletin to include 2007–2015 Camry and Camry Hybrid vehicles. *Id.* at ¶¶ 73, 125l. Finally, the Complaint alleges that despite this exclusive and superior knowledge of the Defect, members of the Toyota RICO enterprise "encouraged Plaintiffs and Class members to pay for remedies that would fail to completely repair the HVAC System Defect, to increase Defendants' and other members of the Toyota RICO Enterprises' profits." *Id.* at ¶ 125l.

The Complaint juxtaposes the consumer complaints filed with the National Highway Traffic Safety Administration and the Technical Service Bulletins, with numerous internal communications supporting the reasonable inference that the Toyota Defendants took actions to mislead consumers, or conceal from them, the existence and/or full nature of the Heating, Ventilation, and Air Conditioning System Defect in order to avoid liability and to maintain revenue. Several allegations stand out to the Court. First, the Complaint alleges that on September 19, 2012, a communication was transmitted via wire by a Toyota Motor Sales Product Engineer between Toyota's offices in California and Texas, which summarized communications with Southeast Toyota as follows:

7

AC has been one of the top issues for [Southeast Toyota] for the last few years .... [Southeast Toyota] *stopped attempting to repair vehicles with AC odor, because of the severity of the Lemon Law in the state of Florida.* [Southeast Toyota] *started to tell customers the condition was normal.*

*Id.* at ¶¶ 77, 125g (emphasis added). Relatedly, the Complaint alleges that on January 23, 2013, Toyota transmitted a communication via wire to its offices in Australia and Japan, explaining that Toyota and its dealers were "hesitant" to attempt repairing the Heating, Ventilation, and Air Conditioning Systems, because the odors would come back, and it would subject Toyota to Lemon Law liability. *Id.* at ¶ 125h.

Second, the Complaint alleges that on July 25, 2013, Toyota's office in Kansas transmitted a communication via wire to Southeast Toyota in Florida, which provided standardized language to give complaining customers; specifically, that the odor was not a defect, but rather, "an industrywide condition." *Id.* at ¶ 125i. That communication also advised that customers should be encouraged to "contact [their] local Toyota dealership for a thorough evaluation of the condition." *Id.*

Third, the Complaint alleges that on September 9, 2015, a Toyota Pricing Manager emailed the National Product Planning Manager, stating that he agreed with Southeast Toyota, and asked:

[I]f this is a known issue with a [Technical Service Bulletin] for how to repair, why are we asking to charge customers. . . . it does seem challenging to explain why to get what a customer should expect as a standard condition for the air conditioner (no odor) we charge more?

*Id.* at ¶ 81; ¶ 125m (noting the same communication described the Defect as an engineering problem affecting "a basic requirement of the system").

Next, the Complaint alleges that the while the Toyota Defendants knew about and wrestled with the Heating, Ventilation, and Air Conditioning System Defect internally, but did

not publicly disclose it, they continued to tout the Camry's "legendary quality" (2011), described the interior as "a space that is rewarding and enhances the driver experience" (2013), and marketed Camrys as providing "maximum comfort" "ready for your next road trip," and as "[c]ommitted to safety" (2016). *See id.* at ¶¶ 125d, 125k, 125n. The Complaint also avers that the Toyota Defendants marketed the 2017 Camry as offering "the best combination of roominess, comfort, quality safety and performance" and that it upheld "its well-earned reputation for comfort," which came with "[p]eace of [m]ind [w]arranty [p]rotection." *Id.* at ¶ 125o. Finally, despite its knowledge of the Defect and continued marketing of Camry vehicles, the Complaint alleges that "[b]y concealing the scope and nature of the HVAC System Defect contained in millions of vehicles, the Toyota Defendants also maintained and boosted consumer confidence in the Toyota brand" and "avoid[ed] the costs and bad publicity associated with a recall or lemon law suit." *Id.* at ¶¶ 120, 125f.

Taking all these allegations as true, as the Court must at the dismissal stage, the Court finds the Complaint sufficiently alleges a scheme to defraud based on "material misrepresentations" or the "omission or concealment" of material facts from the Plaintiffs and the putative class members. *Cf. Stockinger v. Toyota Motor Sales U.S.A., Inc.*, No. LACV 17-00035-VAP (KLSx), 2017 WL 10574372, at *15–19 (C.D. Cal. July 7, 2017) (denying motion to dismiss common law fraud claims under similar, if not lesser, allegations); *Salas v. Toyota Motor Sales, U.S.A., Inc.*, Case No. CV 15-8629 FMO (Ex), 2016 WL 7486600, at *6–11 (C.D. Cal. Sept. 27, 2016) (same as to fraud-based statutory claims).

### b) Enterprise

The Supreme Court has ruled that "[f]rom the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships

among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). An association-in-fact enterprise is "simply a continuing unit that functions with a common purpose." *Id.* at 948. While an enterprise need not have a hierarchical structure, specific governing procedures, or fixed roles for its members, *Ray*, 836 F.3d at 1352 (citing *Boyle*, 556 U.S. at 948), what is required, is "evidence of an ongoing organization, formal or informal, and . . . evidence that the various associates function as a continuing unit," *United States v. Turkette*, 452 U.S. 576, 583 (1981).

Here, the Complaint sufficiently alleges a RICO enterprise. The Complaint alleges the Toyota RICO enterprise includes the following entities and roles: the Toyota Defendants (who designed, manufactured, and sold millions of Class Vehicles equipped with the Defect[2]); Southeast Toyota, non-party Gulf Coast Toyota, and other distributors (who distributed, marketed, and sold the Class Vehicles); non-party DENSO (who designed, manufactured, and sold the Heating, Ventilation, and Air Conditioning Systems with the Toyota Defendants' guidance and instructions); various Toyota authorized dealers (who sold, leased, and serviced the Class Vehicles); and the officers, executives, and engineers of the Defendants, non-parties, distributors, and dealers (who collaborated and colluded with each other to conceal the Defect and its health hazards). (*See* D.E. 1 at ¶¶ 9, 114a–h.)

Furthermore, "evidence used to prove [a] pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'" *Boyle*, 556 U.S. at 947

---

[2] More specifically, the Complaint alleges that despite knowledge of the Defect, Toyota Engineering and Manufacturing "continued to design and manufacture Class Vehicles that contained the Defective HVAC System"; Toyota Motor Sales "continued selling Class Vehicles with the Defective HVAC System"; and Toyota Motor Corporation "continued to direct and or approve of continued production and sales of the defective Class Vehicles." (D.E. 1 at ¶ 9.)

(quoting *Turkette*, 452 U.S. at 583). As outlined above, the Complaint sets forth numerous allegations, including specific communications between separate Toyota entities, showing the Toyota Defendants and Southeast Toyota had knowledge of the Defect, yet did not disclose, and actually concealed, the Defect from the public. *See supra*. Finally, the Complaint alleges that all members of the Toyota RICO enterprise "served a common purpose: to sell as many Defective HVAC Systems and Class Vehicles containing the Defective HVAC Systems, as possible, and thereby maximize the revenue and profitability of the Toyota RICO Enterprise's members." (D.E. 1 at ¶ 118.)

These allegations, taken as true, sufficiently allege an association-in-fact enterprise under Rule 8 pleading standards. *See In re Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2015 WL 9987659, at *1 (S.D. Fla. Dec. 2, 2015).

### c) <u>Scienter</u>

To plead the necessary scienter for a racketeering claim premised on mail and wire fraud, a plaintiff must allege that defendants "knowingly devised or participated in a scheme to defraud plaintiffs" and that they "did so willingly with an intent to defraud." *Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000). As outlined above, the Complaint alleges the Toyota Defendants had extensive and superior knowledge of the Defect, yet did not disclose it to the public, but rather concealed it, in order to avoid Lemon Law liability, recall obligations, and negative publicity, all the while promoting the quality, comfort, and safety of the Class Vehicles. The Court finds that these allegations, in conjunction with several internal communications—which ranged from informing dealers there was "no way to eliminate these odors," to a conversation about charging customers for repairs anyway, to discussions about

actions taken to get around Lemon Law liability—are sufficient to give rise to a reasonable inference of scienter.

The Court emphasizes that at the dismissal stage, the Plaintiffs' allegations are the ones given weight. To be sure, the Toyota Defendants will have the opportunity to present evidence at summary judgment or trial in support of their defenses. For now, the Court finds the Complaint sets forth sufficient RICO allegations to survive the motions to dismiss. Accordingly, the Toyota Defendants' Motion to Dismiss Count I is **DENIED**.

### 2. Conspiracy (Count II)

In Count II, the Plaintiffs assert a RICO conspiracy claim under Section 1962(d) against all Defendants. Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [Section 1962]." 18 U.S.C. § 1962(d). "The essence of a RICO conspiracy claim is that each defendant has *agreed* to participate in the conduct of an enterprise's illegal activities." *Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1291 (S.D. Fla. 2008) (citing 18 U.S.C. § 1962(d)) (emphasis in original). As this Court previously recognized, "proof of the agreement is at the heart of a conspiracy claim." *Id.* (quoting *In re Managed Care Litig.*, 430 F. Supp. 2d 1336, 1345 (S.D. Fla. 2006)). A plaintiff can state a RICO conspiracy claim by showing defendants: (1) agreed to the overall objective of the conspiracy; or (2) agreed to commit two predicate acts. *Am. Dental Ass'n*, 605 F.3d at 1293 (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997)). An agreement under RICO need not be established by direct evidence, however; it may be inferred from the conduct of the participants. *Id.*

Unlike racketeering claims predicated on fraud under Section 1962(c), conspiracy claims under Section 1962(d) only need to satisfy Rule 8 pleading requirements. *See id.* at 1290–96

(evaluating Section 1962(d) claim under Rule 8 standards, and fraud-based Section 1962(c) claim under Rule 9(b) standards); *see also Associated Indus. Ins. Co., Inc. v. Advanced Mgmt. Servs., Inc.*, 2014 WL 1237685, at *7 n.7 (S.D. Fla. Mar. 26, 2014) ("Rule 9(b)'s particularity requirement does not apply to RICO conspiracy claims.") (citing *O'Malley v. O'Neill*, 887 F.2d 1557, 1560 (11th Cir. 1989)). Here, the allegations in the Complaint, which are discussed in depth above, enable the Court to draw the reasonable inference of a RICO agreement between the Defendants. Therefore, the Defendants' Motions to Dismiss Count II are **DENIED**.

## B.   FRAUD OR FRAUDULENT CONCEALMENT (COUNTS III AND IV)

Next, Cardenas asserts an individual and Florida-class claim against Southeast Toyota for "fraud or fraudulent concealment" under Florida law (Count IV), and collectively, the Plaintiffs assert the same claim on behalf of a nationwide class against the Toyota Defendants (Count III). Together, the Defendants argue that Counts III and IV are barred by the economic loss rule.

### 1.   Florida Law

The economic loss rule sets forth the circumstances under which "a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 401 (Fla. 2013) (citing *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004)). The Florida Supreme Court has defined economic loss as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Id.* (citing *Casa Clara Condo. Ass'n, Inc. v. Charley Toppino and Sons, Inc.*, 620 So. 2d 1244, 1246 (Fla. 1993)). Economic loss also extends to "diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Casa Clara*, 620 So. 2d at 1246 (citations omitted).

13

Cardenas argues his "fraud or fraudulent concealment" claim can proceed because *Tiara* recognized a fraudulent concealment exception to the economic loss rule. This Court's ruling in *In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d 1324 (S.D. Fla. 2016) disposes of this argument. There, this Court addressed the following question:

> [W]hether Florida's Supreme Court, by its dicta [in *Tiara*], intended to abridge the economic loss rule *in the products liability setting to allow* fraudulent inducement and negligent misrepresentation claims (and by implication *fraudulent concealment claims*), even where the action for fraud *depends upon precisely the same allegations as a warranty claim*—i.e., a claim the product failed to work as promised.

*Id.* at 1338–39 (emphasis added). This Court agreed with other courts in this Circuit, which concluded that the Florida Supreme Court "did not intend to allow such products liability claims to survive." *See id.* at 1339 (collecting cases). Consequently, this Court dismissed the plaintiffs' fraudulent concealment claims because they alleged "precisely what a breach of warranty claim would allege—namely that the Mazda vehicles did not work as promised." *Id.*

Like *In re Takata*, Cardenas seeks economic loss damages for his "fraud or fraudulent concealment" claim, which alleges precisely what his breach of warranty claim alleges—that his Toyota Camry did not work as promised.[3] Therefore, the Court finds that the economic loss rule bars Cardenas's "fraud or fraudulent concealment" claim under Florida law. *See id.*; *see also Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1224–25 (S.D. Fla. 2017) (following *In re Takata* and

---

[3] *Compare* D.E. 1 at ¶¶ 161, 163 (alleging Southeast Toyota fraudulently concealed "material information regarding the Defective HVAC System" and that the Plaintiffs "trusted [Southeast Toyota] not to . . . recommend them to pay money for inspections and repairs that were caused by a defect and that would not remedy the Defect"), *with id.* at ¶ 181 (alleging the Toyota Defendants breached the implied warranty of merchantability because they "knew of and concealed the Defective HVAC System, and . . . refused to repair or replace the Defective HVAC System free of charge within a reasonable time").

dismissing fraudulent concealment claims under the Florida economic loss rule). Therefore, Counts IV (in the entirety) and III (as to Florida law) are **DISMISSED**.

### 2. <u>Tennessee Law</u>

The economic loss doctrine is "undisputedly a valid feature of Tennessee law." *Milan Supply Chain Sols. Inc. v. Navistar Inc.*, No. W2018-00084-COA-R3-CV, 2019 WL 3812483, at *6 (Tenn. Ct. App. Aug. 14, 2019) (citing *Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 488–92 (Tenn. 2009)). The Toyota Defendants assert this doctrine bars Kirton's "fraud or fraudulent concealment" claims. Countering, Kirton argues there is a fraud or fraud in the inducement exception to the economic loss doctrine.

In a recent opinion, the Tennessee Court of Appeals in *Milan Supply Chain* confronted whether "some type of exception to the [economic loss] doctrine exists for fraud claims." *Id.* at *3. There, the plaintiff sought recovery for financial losses stemming from the purchase of over two hundred allegedly defective trucks sold by the defendant. *Id.* at *1, 3. The plaintiff filed a complaint alleging fraud, in addition to alleging breach of contract, breach of warranty, and violations of the Tennessee Consumer Protection Act. *Id.* at *1. The fraud claim was based on the defendant providing false information to the plaintiff about the performance capabilities, fuel economy, and overall fitness of the purchased trucks. *Id.*

After a thorough review of the economic loss doctrine in Tennessee, and other states, *id.* at *3–7, the Tennessee Court of Appeals *unanimously* ruled that "where the alleged fraud . . . relates to the quality of goods sold, the economic loss doctrine is a bar and any remedies must be pursued in contract/warranty law," *id.* at *7. As applied in that case, the Court of Appeals found the plaintiff's fraud claims—based on "false information" given by the

defendant—concerned "the quality of the trucks sold," and consequently ruled the fraud claim was barred by the economic loss doctrine. *Id.* at *8.

Likewise here, Kirton's "fraud or fraudulent concealment" claim alleges the Toyota Defendants "intentionally and knowingly misrepresented, concealed, suppressed, and/or omitted material facts including *the standard, quality, or grade of the Class Vehicles* . . . ." (D.E. 1 at ¶ 147 (emphasis added).) Therefore, Kirton's "fraud or fraudulent concealment" claim is barred by the Tennessee economic loss doctrine. Accordingly, the remaining claims in Count III are **DISMISSED**.

## C. FLORIDA'S DECEPTIVE & UNFAIR TRADE PRACTICES ACT (COUNT VII)

In Count VII, Cardenas asserts an individual and Florida-class claim against the Defendants for violations of Florida's Deceptive and Unfair Trade Practices Act. To state a claim under this Act, a plaintiff must allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 n.25 (11th Cir. 2012) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)).

Deception occurs if there is a "representation, *omission*, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Harris v. Nordyne, LLC*, No. 14-CIV-21884-BLOOM, 2014 WL 12516076, at *6 (S.D. Fla. Nov. 14, 2014) (quoting *Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. USA, Inc.*, 2005 WL 975773, at *8 (S.D. Fla. Mar. 4, 2005) (quoting *PNR, Inc. v. Beacon Prop. Mgmt. Inc.*, 842 So. 2d 773, 777 (Fla. 2003))) (emphasis in original). Furthermore, while a plaintiff need not allege actual reliance on the deceptive conduct, a plaintiff must allege the deceptive conduct was "likely to deceive a consumer acting reasonably in the same circumstances." *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009)

*(per curiam)* (citing *State, Office of the Att'y Gen. v. Commerce Comm. Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007)).

Here, Cardenas's claim is premised on the Defendants' nondisclosure and concealment of the Heating, Ventilation, and Air Conditioning System Defect. As discussed above, the Complaint includes numerous allegations highlighting the Defendants' exclusive and superior knowledge of the Defect, showing the continued marketing of the Camry and Camry Hybrids as quality, comfortable, and safe vehicles, and outlining the Defendants' failure to disclose, or efforts to conceal, the Defect. *See supra.* In addition, the Complaint alleges that "[h]ad Plaintiff and the Florida Class members been aware of the Defective HVAC Systems that existed in the Class Vehicles . . . Plaintiff and the Florida Class either would not have paid as much for their Class Vehicles or would not have purchased or leased them at all." (D.E. 1 at ¶ 222.) And finally, the Complaint alleges that, as a result of the negative publicity following disclosure of the Defect, "the value of the Class Vehicles has greatly diminished" and the Class Vehicles are now "worth significantly less than they otherwise would be." *Id.* at ¶ 220.

Taking these allegations as true, the Court finds the Complaint plausibly alleges a claim under Florida's Deceptive and Unfair Trade Practices Act. Therefore, Defendants' Motion to Dismiss Count VII is **DENIED.**

## D.     TENNESSEE CONSUMER PROTECTION ACT (COUNT VIII)

In Count VIII, Kirton asserts an individual and Tennessee-class claim under the Tennessee Consumer Protection Act. The Toyota Defendants argue Count VIII should be dismissed: (1) as to the class claim because the Act only allows individual actions; (2) as to Kirton's individual claim because it is time-barred; and (3) as to both claims because the factual allegations are deficient. The Court addresses each argument in turn.

**1. Class Claims Under the Tennessee Consumer Protection Act**

The Toyota Defendants argue Kirton's Tennessee-class claim should be dismissed because the Tennessee Consumer Protection Act does not permit class actions. The Toyota Defendants direct the Court to Section 47-18-109 of the Tennessee Code, which provides: "[a]ny person who suffers an ascertainable loss . . . as a result of . . . an unfair or deceptive act or practice . . . may bring an action *individually* to recover actual damages"; and "*[n]o class action lawsuit* may be brought to recover damages for an unfair or deceptive act or practice declared to be unlawful by this part." Tenn. Code Ann. § 47-18-109(a)(1), (g) (emphases added).

In their Reply memorandum, the Toyota Defendants invite the Court to dismiss Count VIII by following a ruling from the Middle District of Tennessee in *Bearden v. Honeywell Int'l Inc.*, No. 3:09-1035, 2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010). There, the district court ploughed through the Supreme Court's fragmented opinions in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) and ruled that under the approach taken in the concurring opinion by Justice Stevens—in the district court's view, the controlling opinion under *Marks v. United States*, 430 U.S. 188 (1977)—the plaintiffs could not maintain their Tennessee Consumer Protection Act class action claim because "the class-action limitation contained in the [Tennessee Consumer Protection Act] is so intertwined with that statute's rights and remedies that it functions to define the scope of the substantive rights," thereby preventing a class action under Federal Rule of Civil Procedure 23. *See* 2010 WL 3239285, at *8–10.

Despite the Middle District of Tennessee's thoughtful and thorough analysis of the opinions in *Shady Grove*, this Court is bound by Eleventh Circuit precedent. And in *Lisk v. Lumber One Wood Preserving, LLC*, the Eleventh Circuit answered in the affirmative

18

the question of whether Rule 23 allows a plaintiff to assert a class action claim under a state statute that disallows private class actions. 792 F.3d 1331, 1332 (11th Cir. 2015). Unlike the district court in *Bearden*, the Eleventh Circuit found that in *Shady Grove*, "five justices agreed that applying Rule 23 to allow a class action for a statutory penalty created by New York law did not abridge, enlarge, or modify a substantive right." *Id.* at 1335. The Eleventh Circuit emphasized that "Rule 23 controlled" and that "[r]egardless of which *Shady Grove* opinion is binding, the *holding* is binding." *Id.* (emphasis in original). Finding "no relevant, meaningful distinction between a statutorily created penalty of the kind at issue in *Shady Grove*, on the one hand, and a statutorily created claim for deceptive practices," the Eleventh Circuit concluded:

> If Rule 23 did not abridge, enlarge, or modify a substantive right under the New York statute, even though the statute precluded class actions altogether, it is difficult to conclude that Rule 23 abridges, enlarges, or modifies a substantive right in Alabama, when all the statute does is prescribe who can bring a class claim based on the very same substantive conduct.

*Id.* at 1335–36.

Furthermore, in applying Justice Stevens's approach, the district court in *Bearden* found it important that the limitation in the Tennessee Consumer Protection Act was "contained in the substantive statute itself, not in a separate procedural rule." *Bearden*, 2010 WL 3239285, at *10. The Eleventh Circuit in *Lisk* emphatically rejected this reasoning, explaining: "how a state chooses to organize its statutes affects the analysis not at all. . . . [T]he question whether a federal rule abridges, enlarges, or modifies a substantive right turns on matters of substance—not on the placement of a statute within a state code." *Lisk*, 792 F.3d at 1336.

Both the Tennessee statute here, and Alabama statute in *Lisk*, create a cause of action for deceptive trade practices. Because the Eleventh Circuit ruled that applying Rule 23 did not result in an abridgment, enlargement, or modification of a substantive right to relief for deceptive trade

practices under the Alabama statute—which disallowed private class actions—this Court must find that Rule 23 also does not abridge, enlarge, or modify a substantive right under the Tennessee statute, which likewise disallows class actions.[4] Therefore, the Court finds that in this Circuit, Rule 23 permits Kirton to assert a class claim under the Tennessee Consumer Protection Act.

### 2. Statute of Limitations on Kirton's Individual Claim

Next, the Toyota Defendants argue that Kirton's individual claim under the Tennessee Consumer Protection Act should be dismissed as time-barred by the statute of limitations. In the Eleventh Circuit, a statute of limitations bar is an affirmative defense; and a plaintiff is not required to negate an affirmative defense in their complaint. *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quoting *Tregenza v. Great Am. Comms. Co.*, 12 F.3d 717, 718 (7th Cir. 1993)). As such, Rule 12(b)(6) dismissal on statute of limitations grounds "is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *Id.* (quoting *Omar v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003); *Carmichael v. Nissan Motor Acceptance Corp.*, 291 F.3d 1278, 1279 (11th Cir. 2002)). The statute of limitations for a Tennessee Consumer Protection Act claim is one year "from a person's discovery of the unlawful act or practice." Tenn. Code Ann. § 47-18-110.

Here, Kirton alleges he purchased a used 2015 Toyota Camry around March 2017. (D.E. 1 at ¶ 28.) Based on this allegation, the Toyota Defendants argue that, from the face of the Complaint, Kirton's claim is time-barred. (*See* D.E. 26 at 23.) But Kirton's claim accrued at

---

[4] *Compare* Ala. Code Section 8-19-10(f) ("A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class."), *with* Tenn. Code Ann. Section 47-18-109(a)(g) ("No class action lawsuit may be brought to recover damages for an unfair or deceptive act or practice declared to be unlawful by this part.").

time of the "discovery of the unlawful act or practice," *Schmank v. Sonic Auto., Inc.*, No. E2007-01857-COA-R3-CV, 2008 WL 2078076, at *2 (Tenn. Ct. App. May 16, 2008) (quoting Tenn. Code Ann. § 47-18-110)—not at the time he purchased his used 2015 Camry. And Kirton alleges that at the time he purchased his vehicle, he was "unaware his Class Vehicle contained the Defective HVAC System" and the Toyota Defendants "never informed or warned [him] of the Defective HVAC System and corresponding health and safety hazard associated with his Class Vehicle." (D.E. 1 at ¶ 29.) As such, the Court cannot conclude from the face of the Complaint that Kirton's claim is time-barred.

Furthermore, "[i]t is well-settled in Tennessee that statutes of limitations may be tolled for a period of time where the defendant has taken actions to fraudulently conceal a cause of action." *In re Estate of Davis*, 308 S.W.3d 832, 841 (Tenn. 2010) (collecting cases). Here, the Complaint also alleges the statute of limitations is tolled because the Toyota Defendants' "knowing and active concealment" of the Defect prevented the Plaintiffs from "reasonably discover[ing] the Defect or Defendants' deception with respect to the Defect." (D.E. 1 at ¶ 91.) The Complaint further alleges that "[w]ithin the time period of any applicable statute of limitations, Plaintiffs and Class members could not have discovered through the exercise of reasonable due diligence that Defendants were concealing the Defect in the Defective HVAC System." *Id.* at ¶ 92.

Accepting these allegations as true, the Court finds it premature to dismiss Kirton's individual Tennessee Consumer Protection Act claim on statute of limitations grounds.[5]

---

[5] After the close of discovery, however, the Toyota Defendants may renew this argument at summary judgment should the facts support a legal basis for dismissal under the statute of limitations. *Cf. Schmank*, 2008 WL 2078076, at *3 ("Generally speaking, in applying the discovery rule, the issue of '[w]hether the plaintiff exercised reasonable care and diligence in

### 3. **Sufficiency of Allegations Under the Tennessee Consumer Protection Act**

Lastly, the Toyota Defendants contend the individual and Tennessee-class claims should be dismissed because the Complaint fails to plead sufficient factual matter to state a Tennessee Consumer Protection Act claim. To state such a claim, a plaintiff must allege: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the Tennessee Consumer Protection Act; and (2) that the defendant's conduct caused an ascertainable loss of money or property. *Chattanooga Spine & Nerve Inst., Inc. v. Fish Tales, LLC*, No. 1:17-cv-55, 2017 WL 7691858, at *4 (E.D. Tenn. Nov. 13, 2017) (quoting *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005)). Furthermore, in Tennessee, courts are "required to construe the provisions of the [Tennessee Consumer Protection Act] liberally in order 'to protect consumers and legitimate business enterprises from those who engage in 'unfair or deceptive acts or practices in the conduct of any trade or commerce.'" *Beard v. Worldwide Mortg. Corp.*, 354 F. Supp. 2d 789, 815 (W.D. Tenn. 2005) (quoting *Pursell v. First Am. Nat'l Bank*, 937 S.W.2d 838, 841 (Tenn. 1996)).

Under the Tennessee Consumer Protection Act, unfair or deceptive acts or practices include: misrepresenting that goods have characteristics, uses, benefits, or quantities that they do not have; misrepresenting that goods are original or new if they are deteriorated, or altered to the point of decreasing the value; and misrepresenting that goods are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another. *See* Tenn. Code Ann. § 47-18-104(b). The examples listed in Section 47-18-104(b) are not, however, meant to be exhaustive. *Allen v. Vill. Partners, L.P.*, No. 3:06-CV-59, 2008 WL 3833605, at *5

---

discovering the injury or wrong is usually a fact question for the jury to determine.'") (quoting *Wyatt v. A–Best Co.*, 910 S.W.2d 851, 854 (Tenn. 1995); citing *McIntosh v. Blanton*, 164 S.W.3d 584, 586 (Tenn. Ct. App. 2004)).

(E.D. Tenn. Aug. 11, 2008). Unfair or deceptive acts or practices also include "practices that involve concealing material facts regarding the source, quality, value, age, and other similar characteristics of products for sale, false advertising, and unfairness in the return process." *Id.*

Here, as discussed above, the Complaint asserts numerous allegations highlighting the Defendants' knowledge of the Defect, showing the continued marketing of the Camry and Camry Hybrids as quality, comfortable, and safe vehicles, and outlining the Defendants' failure to disclose, or efforts to conceal, the Defect. *See supra.* Kirton also alleges that when he purchased his vehicle "he was unaware his Class Vehicle contained the Defective HVAC System," and that had he known of the Defect, "he would not have purchased his Class Vehicle or would have paid significantly less for it." (D.E. 1 at ¶ 29; *see also id.* ¶ 244 (alleging same as to Tennessee class).) The Complaint further alleges that as a result of the negative publicity following disclosure of the Defect, "the value of the Class Vehicles has greatly diminished" and "the Class Vehicles are now worth significantly less than they otherwise would [be]." *Id.* at ¶ 242.

In short, the Court finds the Complaint states a plausible claim under the Tennessee Consumer Protection Act. Accordingly, the Toyota Defendants' Motion to Dismiss Count VIII is **DENIED**.

## E.    BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (COUNT V)

In Count V, Cardenas alleges the Toyota Defendants breached the implied warranty of merchantability under Florida law. The Toyota Defendants argue Count V should be dismissed because Cardenas cannot establish contractual privity.

## 1. **Contractual Privity**

"Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. 3d DCA 2005) (citing *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37 (Fla. 1988); *Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. 4th DCA 2005); *Spolski Gen. Contractor v. Jett–Aire Corp. Aviation Mgmt. of Cent. Fla., Inc.*, 637 So. 2d 968, 970 (Fla. 5th DCA 1994)).

Time and again, Florida courts have dismissed breach of implied warranty claims under Florida law for lack of contractual privity where the plaintiff purchaser did not purchase a product directly from the defendant. *See, e.g.*, *Padilla v. Porsche Cars N. Am., Inc.*, — F. Supp. 3d —, 2019 WL 2192297, at *5 (S.D. Fla. 2019) (collecting cases). And consistent with the overwhelming weight of Florida law, this Court has repeatedly ruled that to establish the contractual privity required to state a breach of implied warranty claim, a plaintiff must purchase the product at issue directly from the defendant. *See, e.g.*, *id.* at *6 ("Consistent with Florida law, and this Court's application thereof, because Plaintiffs did not purchase their used vehicles directly from Porsche, they lack contractual privity with Porsche and their implied warranty claim necessarily fails as a matter of law.") (citing *In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d 1324, 1346 (S.D. Fla. 2016); *Tershakovec v. Ford Motor Co.*, No. 17-21087-CIV, 2018 WL 3405245, at *10 (S.D. Fla. July 12, 2018); *see also Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1303–04 (S.D. Fla. 2017)).

Here, Cardenas did not purchase his new 2014 Camry directly from any of the Toyota Defendants. Instead, Cardenas purchased his vehicle from Kendall Toyota, "a Toyota authorized *Dealer of* Toyota vehicles." (D.E. 1 at ¶ 23 (emphasis added).) Accordingly, Cardenas lacks contractual privity with the Toyota Defendants, and his implied warranty claim necessarily fails.

Nevertheless, Cardenas maintains that "Florida courts have found the privity requirement to be satisfied when a manufacturer directly provides a warranty to, or otherwise has direct contact with, a buyer who purchases from a third party." (D.E. 32 at 29 (quoting *Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1032 (11th Cir. 2017).) In other words, Cardenas argues his lack of contractual privity with the Toyota Defendants should be overlooked because he was the "third-party beneficiary" of Kendall Toyota purchasing Cardenas's Camry from the Defendants.

### 2. Third-Party Beneficiary Exception

Recently, this Court reviewed and rejected the very argument advanced by Cardenas now. In *Padilla v. Porsche Cars N. Am., Inc.*, the plaintiffs also cited *Global Quest* for the proposition they could overcome their lack of contractual privity through a third-party beneficiary exception. *Padilla*, — F. Supp. 3d —, 2019 WL 2192297, at *6–7. This Court ruled that the language in *Global Quest*—which Cardenas quotes in support of his argument—was non-binding dicta which did not confirm (let alone establish) a third-party beneficiary exception to the contractual privity requirement under Florida law. *See id.* at *7 (noting the quoted language appeared only *after* the Eleventh Circuit reversed the district court, and when addressing certain arguments made "in the alternative"). Nevertheless, this Court found that even if the quoted language was not dicta, the complaint there failed to allege factual matter establishing that Porsche had direct negotiations or contacts with, or made representations to, the plaintiffs. *Id.* This Court consequently dismissed the plaintiffs' breach of implied warranty claims under Florida law.

Likewise here—and even assuming the third-party beneficiary exception is recognized under Florida law—Cardenas fails to allege factual matter establishing that any of the

Toyota Defendants engaged in negotiations or contacts *directly* with, or made *direct* representations to, Cardenas. (*See* D.E. 1 at ¶¶ 173–85.) Without citation to authority, Cardenas argues the Toyota Defendants "involved [themselves] in the transaction" by publishing brochures and other marketing materials, and by providing warranty and maintenance schedules showing no service would be required on the evaporator. (D.E. 32 at 29.) But this argument, and the allegations it relies upon, still falls short under *Global Quest* because the plaintiff there was "given a limited express warranty, the terms of which were *negotiated by the parties as part of the sale*." *Global Quest, LLC*, 849 F.3d at 1025 (emphasis added).

For these reasons, the Court finds that Cardenas cannot state a claim for breach of the implied warranty of merchantability under Florida law. Therefore, Count V is **DISMISSED**.[6]

## F.  MAGNUSON-MOSS WARRANTY ACT (COUNT VI)

In Count VI, the Plaintiffs assert individual and class claims against the Toyota Defendants for violation of the Magnuson-Moss Warranty Act. The Toyota Defendants argue Count VI must be dismissed because Cardenas's implied warranty claim fails under Florida law, and because Kirton fails to even allege an implied warranty claim under state law, let alone sufficiently allege the contractual privity required to state such a claim.

The Magnuson–Moss Warranty Act gives consumers a private right of action against warrantors for a breach of warranty, as defined by state law. *See* 15 U.S.C. § 2301(7) ("The term

---

[6] The Court acknowledges that the Central District of California in *Stockinger v. Toyota Motor Sales, U.S.A., Inc.* declined to dismiss breach of implied warranty claims under Florida law regarding a similar vehicle defect. Relying on *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233 (S.D. Fla. 2014), the district court found that Florida law recognizes a third-party beneficiary exception to the privity requirement. *See* 2017 WL 10574372, at \*14 (C.D. Cal. July 7, 2017). This Court recently addressed, and citing its own prior ruling, declined to follow *Sanchez-Knutson*. *See Padilla*, — F. Supp. 3d —, 2019 WL 2192297, at \*6 (citing *Tershakovec*, 2018 WL 3405245, at \*10); *see also id.* at \*6 n.3 (collecting cases concluding same). For the reasons explained there, the Court again declines to follow *Sanchez-Knutson*.

'implied warranty' means an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product."). To state a claim under the Magnuson-Moss Warranty Act, though, a plaintiff must also state a valid breach of warranty claim. *Melton*, 243 F. Supp. 3d at 1304 (citing *Bailey v. Monaco Coach Corp.*, 168 F. App'x. 893, 894 n.1 (11th Cir. 2006) (*per curiam*) (noting "implied warranty claims under the [Magnuson-Moss Warranty Act ] arise out of and are defined by state law")). Indeed, where a plaintiff fails to state a breach of implied warranty claim, courts routinely dismiss the correlating Magnuson-Moss Warranty Act claim. *See id.* at 1304 ("Because Plaintiffs do not state a cognizable claim for breach of implied warranty, they also have no claim under the Magnuson–Moss Warranty Act."); *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1324 (S.D. Fla. 2009) (concluding same).

Here, Cardenas's breach of implied warranty claim has been dismissed; thus, his correlating Magnuson-Moss Warranty Act claim must also be dismissed. *See id.* As for Kirton, he does not even allege a breach of implied warranty claim (*see* D.E. 1 at ¶¶ 173–85), so his Magnuson-Moss Warranty Act claim must be dismissed as well.[7] *Melton*, 243 F. Supp. 3d at

---

[7] Based on the allegations in the Complaint, Kirton also would not be able to state a breach of implied warranty claim under Tennessee law. As noted above, "implied warranty claims under the [Magnuson-Moss Warranty Act] arise out of and are defined by state law." *Bailey*, 168 F. App'x. at 894 n.1. Under Tennessee law, privity of contract is required for purely economic loss claims. *See Gregg v. Y.A. Co. Co., Ltd*, No. 1:06-CV-203, 2007 WL 1447895, at *6 (E.D. Tenn. May 14, 2007) (citing *Messer Griesheim Indus., Inc. v. Eastman Chem. Co.*, 194 S.W.3d 466, 471 (Tenn. Ct. App. 2005)).

Here, Kirton did not purchase his *used* vehicle directly from any of the Toyota Defendants. Instead, Plaintiff Kirton purchased his *used* 2015 Toyota Camry "from a Wyatt Johnson Toyota *dealership* in Clarkesville, Tennessee." (D.E. 1 at ¶ 28 (emphasis added).) Accordingly, Kirton would lack contractual privity with the Toyota Defendants under Tennessee law. *See Gregg*, 2007 WL 1447895, at *7 (finding no breach of implied warranty claim where plaintiff purchased used machine from vendor who purchased same machine from "uninvolved third party").

By extension, Kirton's Magnuson-Moss Warranty Act claim would fail for this additional reason. *See Bearden*, 720 F. Supp. 2d at 938 ("[T]o recover under the Magnuson–Moss Act for

1304; *David*, 629 F. Supp. 2d at 1324. For these reasons, Count VI is **DISMISSED**.

## IV.    CONCLUSION

For the reasons stated above, it is

**ADJUDGED** that the Motions to Dismiss are **GRANTED IN PART AND DENIED IN**

**PART** as follows:

(1) The Motions to Dismiss are **GRANTED** as to Counts III, IV (fraud or fraudulent concealment), V (implied warranty), and VI (Magnuson-Moss Warranty Act). Therefore, these Counts are **DISMISSED**; and

(2) The Motions to Dismiss are **DENIED** as to Counts I, II (RICO), VII (Florida's Deceptive and Unfair Trade Practices Act), and VIII (Tennessee Consumer Protection Act). Accordingly, the Defendants must answer the Complaint no later than **November 15, 2019**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this ⟋ of September 2019.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

---

the breach of an implied warranty, the plaintiffs must assert a viable state-law warranty claim.") (citing *Fedrick v. Mercedes–Benz USA, LLC*, 366 F. Supp. 2d 1190, 1200 n.14 (N.D. Ga. 2005)).