UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  1:18-cv-22798-FAM

JAVIER   CARDENAS,   RODNEY   AND
PAMELA  BAKER,  MICHELLE  MONGE,
and  KURT  KIRTON,  individually  and  on
behalf of all others similarly situated,

       Plaintiffs,

v.

TOYOTA      MOTOR      CORPORATION,
TOYOTA  MOTOR  SALES,  U.S.A.,  INC.,
TOYOTA   MOTOR   ENGINEERING   &
MANUFACTURING   NORTH   AMERICA,
INC.,    and    SOUTHEAST    TOYOTA
DISTRIBUTORS, LLC.,

       Defendants.

_____/

**DEFENDANT SOUTHEAST TOYOTA DISTRIBUTORS, LLC'S
RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Defendant Southeast Toyota Distributors, LLC ("SET"), hereby files its Response in Opposition to Plaintiffs', Javier Cardenas, Rodney and Pamela Baker, Michelle Monge, and Kurt Kirton ("Plaintiffs"), Motion to Compel Discovery [D.E. 68] (the "Motion"), and states:

## Introduction

In their Motion, Plaintiffs paint a misleading picture of SET's Electronically Stored Information ("ESI") efforts in an attempt to depict SET as failing "to engage in any meaningful ESI collection and production." Plaintiffs' characterization is not only off the mark, but disappointing considering the cooperative efforts in which SET engaged with Plaintiffs until filing their Motion. SET's ESI-collection efforts have not only been meaningful and overly inclusive, but also cooperative and with an aim towards mitigating the potential for the incursion of additional exorbitant fees and costs.

For example, instead of restricting the number of custodians from whom documents would be collected, SET sequestered all documents from ***two entire departments*** and further invited Plaintiffs to suggest additional custodians. Instead of refusing to collect non-Camry related documents – and despite SET's uncontested written objections to the lack of relevance thereof and Plaintiffs' unpersuasive argument to the contrary – SET agreed to complete an initial ESI collection using Plaintiffs' proposed search terms, as agreed. But as part of that same agreement, the parties planned to confer after the initial search was complete to negotiate the potential need for more appropriate search terms to be used to identify all documents that would be manually reviewed for responsiveness. This has proven necessary because, as the parties anticipated, the collection using Plaintiffs' very broad search terms was too voluminous. It yielded one million hits – *after* accounting for deduplication. Although SET promptly proposed new search strings, as of the filing of this opposition, Plaintiffs refused to engage in any further discussion about revising

search strings, as promised. Instead, they chose to seek the Court's intervention without engaging in meaningful good-faith discussions.

Plaintiffs not only demand that SET review one million, largely irrelevant documents, without compromise, they also demand that SET complete this impossibly burdensome task on or before April 10, 2020.  This incredible ask ignores that it was Plaintiffs who chose to delay asking SET to conduct the Rule 26(f) conference, and that it is Plaintiffs who have since refused to work with SET to negotiate reasonable ESI search terms. Plaintiffs should not be the beneficiaries of their own intransigence that has largely caused the delay from which they now wish to be rescued.

## I.      Procedural Background and SET's ESI Collection Efforts

Although the Court entered its Order on the Toyota Entities' Motion to Transfer on September 26, 2019 [D.E. 44], Plaintiffs neglected to contact SET to have a Rule 26(f) conference until November 19, 2019.[1] At that time, SET promptly disclosed its comprehensive plan for the anticipated ESI collection, including its intention to make an overly inclusive capture of two entire departments at SET: Customer Loyalty and Field Technical. SET expressly confirmed that since it is merely a distributor, and not the designer, manufacturer or in any other way involved in the production of the Class Vehicles or their components, any information concerning an alleged issue with the Class Vehicles' HVAC system would land with someone in these departments. SET did not request to limit which individuals in these departments would be subject to collection, but it did invite Plaintiffs (who by this time had access to the approximately 40,000 documents produced from the Toyota Entities in the *Salas* matter)[2] to provide a list of additional names to be included.

---

1.      SET was not invited to Plaintiffs' initial, global scheduling discussions. It is SET's understanding that Plaintiffs were only working with the Toyota Entities for the first few months of the discovery period, to the exclusion of making any such efforts with SET.

2.      *Salas* refers to *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:15-cv-08629-FMO-E (C.D. Cal., filed Nov. 4, 2015). Plaintiffs there asserted a "California-only class consisting of all

On December 16, 2019, Plaintiff provided sixteen names of SET employees it wanted included in the collection. SET immediately confirmed those names were either already included or would be added to the collection. A few days later, Plaintiffs responded to SET's proposed ESI search terms that SET provided them over a month earlier, with their own, much broader set. SET agreed to run those searches first. But the parties also expressly agreed they would circle back after the collection if there was "something like a million hits" using Plaintiffs' terms.

As the Parties were completing these initial discussions, on December 23, 2019, pursuant to an agreement reached at last November's 26(f) conference, SET timely served its written responses and objections to Plaintiffs' First Set of Requests for Production of Documents (the "First RFP"). Given that Plaintiffs' action relates exclusively to 2012 – 2017 Toyota Camrys, SET unambiguously stated in response to each Request that its production would be limited to the "Class Vehicles:"

> Notwithstanding and subject to these objections, SET has negotiated and agreed with Plaintiffs to search terms to use to capture potentially responsive ESI, including communications between SET and any Toyota Defendant in this action reflecting the presence of any alleged odor from the HVAC systems in the putative Class Vehicles. **To the extent any non-privileged, responsive materials related to Class Vehicles are identified after a reasonable review of SET's records, including the ESI collected pursuant to the parties' agreement, SET will produce those, as appropriate and in accordance with the previously entered Protective Order, on a rolling basis.**

*See* Defendant Southeast Toyota Distributors, LLC's Responses and Objections To Plaintiffs' First Set of Requests For Production of Documents to Defendants, which are attached to this opposition as **Exhibit 1**. Notwithstanding that express restriction and redactions consistent with same in

---

persons in California who purchased or leased a 2012-2015 Toyota Camry XV 50 model vehicle from an authorized Toyota dealer.

documents that have been produced, Plaintiffs failed to file any motion challenging the scope of the production.[3] In fact, the parties conducted a telephone conference on January 23, 2020 concerning this very limitation. SET explained that it would not agree to produce documents related to vehicles and customers who are not part of the putative class because it would be nothing more than a fishing expedition. Following that clarification, Plaintiffs appeared to accept the limitation, which is consistent with their pleadings and positions they have taken in prior arguments in this case. No mention of the unequivocal scope of SET's anticipated response has been made since – not even in the pending Motion. As such, there is no reasonable dispute that only documents that relate to Class Vehicles (2012 – 2017 Camrys) will be included in SET's production *regardless of the ESI search terms used*. In light of this, rather than honor their agreement to negotiate more limited terms if such a situation were to arise after collection, Plaintiffs now unreasonably argue that SET should have to review one million documents that are *overly inclusive by design* using their original, very broad search strings – and that they should be required to do so on an accelerated timeline.

In their Motion, Plaintiffs try to mask their own lack of diligence and recalcitrance concerning discovery by stating that "SET . . . refused to run key searches for ESI unless the search query includes the keyword limiter of 'Camry'" and that "SET has not provided support for its contention that the use of such a limiter will make document production more manageable." Motion, p. 4. This is demonstrably false.

---

3.  Pursuant to S.D. Fla. 26.1, Plaintiffs had thirty (30) days to file a discovery motion from December 23, 2019: "All motions related to discovery, including…motions to compel discovery…shall be filed within thirty (30) days of the occurrence of grounds for the motion. Failure to file a discovery motion within thirty (30) days, absent a showing of reasonable cause for a later filing, *may* constitute a waiver of the relief." *See* S.D. Fla. L.R. 26.1(g)(1).

On February 12, 2020 and again on February 18, 2020, SET advised Plaintiff that when using the terms supplied by Plaintiffs, *i.e.* without a "Camry" or any other modifier, the document search returns roughly *one million* hits. *See* February 12, 2020 E-Mail from Robert Sacks to Tyler Graden, which is attached to this opposition as **Exhibit 2**; *see also* February 18, 2020 E-Mail from David J. DePiano to Tyler Graden, which is attached to this opposition as **Exhibit 3**. In support, SET provided a "hit list" showing the total number of documents captured by each of the three pages of broad search strings proposed by Plaintiffs. *See* **Exhibit 3**. Given that quantity, SET informed Plaintiffs that it "will not be able to complete the review of documents captured by Plaintiffs' ESI terms for responsiveness and privilege in a reasonable amount of time or without undue cost." *Id*.

On that same day, February 18th, in an effort to expedite the ESI collection, review and production, (and consistent with the parties' agreement from December) SET provided Plaintiffs with suggested modifiers to the search query. *See* **Exhibit 3**, along with the redlined version of Plaintiffs' proposed ESI search strings, which are attached to this opposition as **Exhibit 4**. The modified search strings were based on Plaintiffs' proposal, essentially adding only a "Camry" modifier and proximity operators capturing key terms within a certain number of words of other key terms.[4] *See* **Exhibit 4**. Using SET's proposed suggestions to Plaintiffs' terms, including the "Camry" modifier, the search returns a more manageable 79,696 documents. *See* Declaration of Michael Katz In Support Of Defendant Southeast Toyota Distributors, LLC's Opposition To

---

4.       SET's suggested modifications to Plaintiffs' proposed terms were presented in redline to Plaintiffs for ease of review. Most of the suggestions consist of the use of "proximity operators" designed to filter out documents which may be related to air conditioning, for example, but not odor. Notwithstanding the "Camry" modifier disagreement, Plaintiffs initially indicated that they would consider some of SET's suggested changes. Without warning or any further discussion in any form, however, Plaintiffs filed the instant motion to compel.

Plaintiffs' Motion To Compel, which is attached to this opposition as **Exhibit 5**,[5] at ¶ 10. When using Plaintiffs' unmodified terms, the search returns 991,074 documents. *Id*. at ¶ 10. From a cost perspective, the addition of the "Camry" modifier is anticipated to save at least *$1,650,000* in manual review costs for responsiveness. *See* **Exhibit 5** at ¶ 16. This is in addition to other significant costs (as much as an additional $178,000) that may result from using Plaintiffs' terms. *Id.* at ¶ 19. The cost reduction associated with using SET's proposed search string would be realized while arriving at the same outcome as if Plaintiffs' proposed ESI search strings were used: the production of responsive documents relating to 2012–2017 Toyota Camrys – as indicated in SET's December 23, 2019 written discovery responses and as discussed by the parties on January 23, 2020.

Continuing its good faith efforts to resolve this discovery dispute, on February 25, 2020, SET provided Plaintiffs further rationale for applying the "Camry" modifier, including: 1) the scope of the pleadings being clearly limited to Camry; 2) the search being designed (via the proximity operators) to still capture documents that apply to many models, including Camrys; and 3) the sheer number of documents to be reviewed without the modifier would result in undue cost, burden and delay. Rather than responding to those points, Plaintiffs filed the subject Motion. *See* February 25, 2020 E-Mail from David J. DePiano to Tyler Graden, which is attached to this opposition as **Exhibit 6**.

In addition to raising their objection to the "Camry" modifier and demanding the names of all individuals in the Customer Loyalty and Field Technical departments, Plaintiffs raised their

---

5.      Due to the quarantine imposed to help combat the COVID-19 pandemic, Mr. Katz does not have access to his office. As such, he cannot presently sign the declaration. He has provided an electronic signature for now; SET will supplement the record with a hand-signed copy of his declaration as soon as he regains access to necessary office equipment.

concerns with past redactions in the *Stockinger*-based and non-ESI productions.[6] Indeed, on February 14, 2020, SET requested Plaintiffs to identify for review any allegedly improper redactions in the *Stockinger* documents SET previously produced. *See* February 14, 2020 E-Mail from David J. DePiano to Tyler Graden, which is attached to this opposition as **Exhibit 7**. Plaintiffs ignored that attempt to resolve any of the redaction issues, and otherwise did not engage in a good-faith effort to work with SET to resolve the ESI Search Term issue prior to filing the Motion.[7]

## II.     The ESI Search Term Modifiers, including the "Camry" Modifier, are Reasonable, Proportionate and Necessary

The modifier is justified for four reasons: a) non-Camry related information is not reasonably likely to lead to the discovery of admissible evidence and should not be subject to production; b) the needs of the case dictate that non-Camry documents are not discoverable; c) even if it were, use of the modifiers is still reasonably likely to capture most, if not all, of those documents since they also likely contain the term "Camry" within a certain proximity; and d) without the "Camry" modifier, SET anticipates expending at least an additional $1,650,000 to review the additional one million-plus documents. Further, if SET is compelled to engage in the burdensome and disproportionate ESI collection and review efforts Plaintiffs request, then the cost-burden of those efforts should be shifted onto Plaintiffs.

### a.   *Non-Camry Related Information is Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence*

---

6.      *Stockinger* refers to *Stockinger v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:17-cv-00035-VAP-KS (C.D. Cal., filed Jan. 3, 2017), which is a separate action that asserted a putative class action on behalf of owners of 35 different (non-Camry) Toyota and Lexus vehicles. SET was subpoenaed as a non-party in that litigation. Judge Philips recently denied class certification, in part, because of the many differences in the HVAC systems among the various models and model years at issue. *See, infra*, n.8.

7.      Plaintiffs' failure to adequately confer with SET as to both the ESI search terms and SET's redactions, as well as the requested substantial completion deadline that was never raised until the Motion, constitutes a violation of S.D. Fla. L. R. 7.1(a)(3).

Plaintiffs' allegations of defect and their causes of action are directed exclusively to 2012 – 2017 Toyota Camrys. D.E. 49, ¶ 2. Plaintiffs define the 2012 – 2017 Toyota Camrys as the "Class Vehicles." *Id.* And they allege only that "The Class Vehicles contain a defective Heating, Ventilation and Air Conditioning System." *Id.*, at ¶ 3.

Plaintiffs do not (and cannot) dispute that they chose to limit the pleadings (and resulting scope of discovery) to just 2012 – 2017 Camry vehicles. Instead, they merely conclude in their Motion that non-Camry related information is somehow "directly relevant to [SET's] knowledge of the defect and their attempts to correct it." Motion, p. 7. That argument is belied by the absence of any legal and factual justification asserted by Plaintiffs to support their claims.

Plaintiffs fail to provide any authority which establishes that SET's purported knowledge of an alleged product defect in non-Camry models could show knowledge of an alleged defect in Camry models. Plaintiffs do not cite to a single case which establishes that knowledge can be inferred based upon an alleged defect in a separate product not at issue in the lawsuit, let alone an analogous case that concerns a mere distributor, like SET.

Nor do Plaintiffs make any factual showing. To even attempt to get the broad and irrelevant discovery they demand here, Plaintiffs have the burden of showing that all non-Camry model HVAC Systems (for which they want discovery) are "substantially similar" to model year 2012-2017 Camry HVAC Systems (which are all that is at issue here):

> The party seeking to compel disclosure regarding other models "bear[s] the burden of establishing that the different products are substantially similar ..." The movant must make "a specific factual showing of substantial similarity ... [c]onclusory statements of alleged similarity are not enough." To allow "discovery of models that are not substantially similar is truly the equivalent of comparing apples and oranges where there are differences between the other models and the model at issue."

*Stone v. Zimmer, Inc.*, 2010 WL 11602738, *2 (S.D. Fla. January 7, 2010) (internal citations omitted) (denying plaintiffs' entitlement to discover information regarding products other than the product in controversy).

Here, Plaintiffs do not allege in their Complaint, much less demonstrate in their Motion, that non-Camry and Camry model vehicles are "substantially similar" sufficient to justify their fishing expedition into non-class vehicles. The complete absence of any factual foundation (not even in the form of pleading allegations), let alone an expert opinion or affidavit, as to a substantial similarity between Camry and non-Camry HVAC Systems precludes the discovery of non-Camry information.[8] Without more, Plaintiffs request for such information is impermissible and should be denied.

### b. *The Needs of the Case Dictate that Non-Camry Information is Not Discoverable*

"Rule 26(b) allows discovery through increased reliance on the commonsense concept of proportionality." *In re: Takata Airbag Prod. Liab. Litig.*, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016). "Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case." *Tiger v. Dynamic Sports Nutrition, LLC*, 2016 WL 1408098, at *2 (M.D. Fla. Apr. 11, 2016). The operative complaint defines "Class Vehicles" as limited to 2012 – 2017 Camrys. Plaintiffs' allegations regarding the alleged defect in the putative class vehicles are based upon customer and dealer complaints pertaining ***specifically to Camrys***. D.E. 49, ¶¶ 77 a) – t), 80-81, 83, 86, 89. Consistent with that, SET served written

---

8. The *Stockinger* Court recently denied plaintiffs' motion to certify a class due, in part, to the "permutations in HVAC design" amongst Toyota and Lexus vehicles at issue in that case. *See* the Order DENYING Motion to Certify Class (Dkt. 202) and DENYING Motions to Exclude Experts Opinions, Reports, and Testimony (Dkts. 231-235), *Stockinger et al., v. Toyota Motor Sales, U.S.A., Inc.*, C.D. Cal. Case No.: 17-cv-00035-VAP-KSx, which is attached to this opposition as **Exhibit 8**, at 17-18.

responses to Plaintiffs' initial set of discovery on December 23, 2019, limiting production to documents related to Camry vehicles. The parties' discussed the propriety of this limitation at their January 23, 2020 conference – with no follow up from Plaintiffs. *See, supra,* § I.

Plaintiffs' silence regarding SET's position to limit production to Camry vehicles was consistent with positions Plaintiffs took previously in this very litigation suggesting that they did not need non-Camry discovery for this case. For instance, as grounds for arguing against transfer of this action into the *Stockinger* action, Plaintiffs highlighted the fact that *Stockinger* involved all Toyota models except Camry, whereas this action was limited exclusively to Camry. The Court cited this very argument as one its reasons for denying transfer. *See* Order Denying Defendants' Motion to Stay Or Transfer [D.E. 44], 4–5. Had Plaintiffs been candid at the outset that they would be seeking discovery relating to all Toyota models, their *Stockinger* distinction for challenging transfer would have lost all import. In fact, the ability of Plaintiffs to readily obtain discovery that had been produced in the other, previously filed Camry-exclusive case, *Salas*, was yet another reason for denial of the transfer. That benefit is greatly diminished by Plaintiffs now seeking discovery which extends far beyond that which was produced in *Salas*, which was essentially limited to Camry.

Given Plaintiffs prior positions and clear acquiescence to receiving only Camry-related discovery consistent with those positions, the issue should not now be re-litigated. But even if the Court were to entertain Plaintiffs' present change-of-heart, the scope of discovery should still be limited to documents related to the 2012 – 2017 model year Camry because that is all that Plaintiffs need to pursue their claims limited to these vehicles.

The Toyota Entities have already produced nearly 40,000 documents pertaining to the model year Camry vehicles at issue here and HVAC odor generally. In addition, SET anticipates

producing even more responsive documents (potentially in the tens of thousands) from the 79,696 documents contained within SET's "Camry-related" ESI search. *See* **Exhibit 4** at ¶ 10. Based on Plaintiffs' motion to compel, it is clear that the Toyota Entities are also collecting additional documents. In total, this will unquestionably result in a very significant number of discoverable and responsive documents produced to Plaintiffs in discovery in this matter. Plaintiffs have not articulated (nor is there) any legitimate need for SET to search an additional one million documents that are not related to the Class Vehicles *by design.* Indeed, if Plaintiffs cannot establish their claims based upon the large volume of materials actually relating to the Camry models at issue, no amount of additional, non-Camry documents could ever suffice.

In sum, Plaintiffs cannot show any need for the extremely broad, time consuming and costly review for at least two reasons. First, they did not (and cannot) premise their theory of liability on a defect in any other Toyota model.  Second, they are already expected to have a myriad of discoverable documents related to Camry model vehicles and their HVAC Systems. In this framework, there is simply no justification for SET to have to incur the exorbitant expense of reviewing an additional one million documents to review information on models that are not the subject of the proceedings.

> c. *The "Camry" Modifier Captures Most, if not All, of the Relevant Discovery in the Sequestered Documents*

In addition to non-Camry information being beyond the scope of discovery based on the allegations in this matter, the statistics Plaintiffs ran on the *Salas* production fall far from showing materials related to those vehicles would be excluded if SET's terms were used. Just the opposite, they prove that using the "Camry" modifier would ***not*** exclude documents concerning those vehicles. As an initial matter, the *Salas* documents are an insufficient analogue to SET's sequestered documents such that applying the search terms to the *Salas* documents does not lend

itself to an apples-to-apples comparison. The *Salas* documents comprise, generally, internal Toyota communications and documents involving sales and engineering departments, among others. On the other hand, it is anticipated that SET's documents generally consist of or refer to individual consumer issues found at dealers and their service departments. Consequently, there is no reliability in Plaintiffs' use of the *Salas* documents as a means for extrapolating how many relevant documents the search terms will capture in SET's documents. Even if Plaintiffs' approach could be relied upon, their results actually show that SET's suggested search terms would be adequate for both parties' intended purposes.

Using SET's suggested terms, Plaintiffs conclude that "just" 74% of the *Salas* documents are captured. Earlier in their Motion, however, Plaintiffs also state that 20% of those documents are supposedly redacted ***"in their entirety"*** and would not be captured by *any* search. Motion, p. 8 (emphasis in original). This fact highlights two glaring problems with Plaintiffs' conclusion. First, even if a full 20% of the *Salas* documents were completely redacted, and therefore beyond the purview of any search, then the 74% of documents captured by SET's suggested modified search terms would, in fact, only be missing a very small percentage of the retrievable documents – and not 26% as Plaintiffs inaccurately suggest. Second, even if a full 20% of the *Salas* documents were completely redacted, and therefore unsearchable, Plaintiffs' search terms could not possibly have captured 93% of the documents. Something, quite literally, does not add up with Plaintiffs' methodology as they describe it.[9]

Consequently, Plaintiffs' "statistical analysis" of the *Salas* documents is flawed or shows that SET's suggested search term modifications will reasonably ensure capture of discoverable

---

9.    This suggests either that Plaintiffs' math is "off" or that they are attempting to manipulate statistics. Either explanation significantly dampens the impact of any statistics-based arguments from Plaintiffs.

documents responsive to Plaintiffs' requests for production. Either way, Plaintiffs' analysis does not justify a search designed to capture materials that relate solely to non-class vehicles (*i.e.*, vehicles other than Camry).

### d. In the Absence of a "Camry" Modifier, Plaintiffs' Suggested Search Terms are Unduly Burdensome

Pursuant to FRCP 26(b)(1), "a court may limit discovery of relevant material if it determines that the discovery sought is unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs the likely benefit." *Henderson v. Holiday CVS, L.L.C.,* 269 F.R.D. 682, 686 (S.D. Fla. 2010). As noted above, the difference in hits using the "Camry" modifier and proximity operator versus not using them is roughly one million documents, with estimated review costs of $1,800,000 or more. *See* **Exhibit 5** at ¶ 16. This significant increase in cost reflects 28,000 hours of manual review, which is the equivalent of 10 document reviewers working exclusively on this project 8 hours a day, every day, for just under a year (approximately 351 days). *See* **Exhibit 5** at ¶ 13. To compare, this is roughly 26,000 more review hours than if SET's ESI search strings were utilized. *Id*. at ¶ 16. In terms of expense, that equates to between a $1,350,000 and $1,650,000 ***increase*** in costs if Plaintiffs' broad ESI search strings are applied.[10] *Id*. That massive and disproportionate burden must be compared against the lack of any harm associated with narrowing the terms to exclude *just* non-Camry and other documents that are not

---

10.     SET contends that Plaintiffs' proposed ESI search strings are inappropriate for the reasons stated in this opposition, including among many others, that the burden associated with reviewing the results from those strings is unduly burdensome. If those ESI search strings are nevertheless employed, it should be Plaintiffs and not SET that bears the burden of the significant and unjustifiable increase in costs associated with reviewing and producing materials captured. *See*, *infra*, § II(e).

implicated by Plaintiffs' claims in the operative complaint. This balance falls squarely in favor of narrowing the ESI search strings as SET suggested, including a "Camry" modifier.

Specifically, the substantial expenditure of resources and time necessary to review non-Camry documents clearly outweighs Plaintiffs' need for those documents, especially considering their lack of relevance here. Under such circumstances, the Court is obligated to limit discovery. *Stone*, 2010 WL 11602738 at *3. Per *Stone*, "the first inquiry should be to ask what are the benefits to be derived from the discovery," and then these benefits should be compared to the cost burden resulting from the discovery." *Id.* (internal citation omitted). Under that cost-benefit analysis, Plaintiffs here failed to adequately demonstrate the relevance and/or need for the requested discovery when weighed against the massive financial burdens of such discovery. Plaintiffs' inability to justify why information relating to non-Camry models outweighs SET's substantial burden in producing that discovery warrants denial of their request for non-Camry discovery.

### e.   If SET is Compelled to Conduct Expensive and Disproportionate ESI Collection And Review, the Cost-Burden on Those Efforts Should be Shifted Onto Plaintiffs

For the above reasons, the Court should prohibit the review and production of non-Camry related discovery. If the Court determines that the non-Camry discovery is relevant and subject to production, however, SET requests that the substantial cost associated with that production be borne by Plaintiffs. *See* FRCP Rule 26(b)(2)(C). The factors the Court should consider in determining whether to shift costs include: 1) the specificity of the discovery requests; 2) the likelihood of discovering admissible information; 3) the purposes for which the responding party maintains the discovery; 4) the relative benefit to the parties of obtaining the information; 5) the total cost associated with production; 6) the relative ability of each party to control costs and its incentive to do so; and 7) the resources available. *F.D.I.C. v. Brudnicki*, 291 F.R.D. 669, 676-77 (N.D. Fla. 2013).

These factors weigh heavily in favor of shifting costs to Plaintiffs. Indeed, factors one, two, three, four and five all militate toward a shift if production is required. As to the first factor, the discovery requests are decidedly not specific. For example, *see* Request Nos. 2-4 and 9 of Plaintiffs' First Set Of Requests For Production Of Documents.[11] None of these requests are limited to Camry and all are broad in scope. As to the second factor, since this case is only about Camry, the likelihood that this discovery will be admissible is low, if not non-existent. As to the third factor, the information is maintained by SET to provide the best experience and customer service for consumers who operate Toyota vehicles. The fourth factor, the purpose for which Plaintiffs seek non-Camry information (*i.e.*, to try to show that SET had knowledge of the alleged Camry defect), is wholly unsupported as a matter of fact and law, as discussed in more detail above. The total cost associated with the added production, the fifth factor, is substantial and clearly weighs in favor of shifting costs.[12]

### III.    SET Fulfilled its ESI Collection Obligations with Respect to Custodians

Plaintiffs point the Court to authority holding that parties are required to meet and confer with respect to the search terms intended to be used and custodians intended to be searched. SET has done exactly that here. *See* December 4, 2019 email from Robert Sacks to Tyler Graden, which

---

11.    "Any documents that Toyota provided to You regarding the presence of, or complaints of, odors emitted from HVAC Systems"; "Any Documents reflecting guidance, methods or suggestions Toyota provided to You regarding responding to complaints about, and/or the mitigation of, odors emitted from HVAC Systems"; "Any Documents reflecting guidance, methods or suggestions You provided to distributors, sellers and/or dealers of Class Vehicles within regions or areas served by SET regarding responding to complaints about, and/or the mitigation of, odors emitted from HVAC Systems"; "All documents related to any investigations concerning odors emitted by the HVAC System or any mold, bacteria and/or other microbial growth in HVAC Systems."

12.    The last two factors are either neutral or also support shifting the cost of Plaintiffs' requested ESI efforts. In any event, considering the weight of the first five factors, it is clear that cost-shifting is appropriate here, should the Court require Plaintiff's requested ESI collection and reviews be completed.

is attached to this opposition as **Exhibit 9**. SET preserved all documents from two entire departments spanning up to a nine-year period, depending on the applicable retention policy. SET also agreed to preserve documents from sixteen hand-picked custodians by Plaintiffs (whom they already knew from being in possession of roughly 40,000 *Salas* and *Stockinger* documents). And SET conferred with Plaintiffs on multiple occasions to further narrow the universe of documents to what is relevant to the pleadings. All in, SET preserved about one million documents from ***over 100 total individuals*** spanning across ***two entire*** departments and beyond. As discussed below, armed with this information, Plaintiffs cannot reasonably argue that they "have no basis to determine whether SET is conducting a reasonable search for documents responsive to Plaintiffs' document requests." Motion, p. 14.

Initially, Plaintiffs already know the identity of their sixteen chosen custodians. With regard to the remaining individuals whose information was captured, Plaintiffs do not articulate what they could glean from the identity of the other custodians before a review has been conducted to determine whether any of them are associated with relevant documents. In this regard, Plaintiffs' demand for SET to disclose the identity of every one of the individuals employed in the Customer Loyalty and Field Technical departments over a several year period is baseless. Unsurprisingly, other than making the cursory statement that "providing Plaintiffs the identity of the custodians . . . is . . . efficient and will help streamline the discovery process," Plaintiffs cannot and do not explain why that would be the case here. Indeed, when those principles are applied here, it is clear that SET has already given Plaintiffs more than enough information to confirm that responsive materials were reasonably captured. Rather than try to narrow the search to just a few custodians, Plaintiff has already been assured that over 100 individuals, including sixteen custodians requested by Plaintiffs themselves, have been captured.

Simply put, the information provided to Plaintiffs confirms that SET's collections were overly inclusive. And SET's proposed approach better facilitates the exchange of discoverable information with respect to the particular allegations against SET in this case than Plaintiffs' formulaic proposal. SET has endeavored to work in good faith based on the particular circumstances between Plaintiffs and SET here. Specifically, SET proposes to: a) sequester all documents from the two departments most likely to possess discoverable information, plus others hand-picked by Plaintiffs; b) agree upon and then work cooperatively to further narrow search terms to arrive at a manageable dataset; c) apply the search terms to filter out documents that are not relevant; d) provide the names of all individuals from the collection who are actual custodians; and e) manually review the final set for responsiveness and privilege.

Using this approach with respect to SET most efficiently gets to the maximum amount of relevant documents in the shortest amount of time. Plaintiffs' approach, on the other hand, would require SET to start with an exponentially larger document set, disclose almost one-hundred individuals who may have no information related to this dispute, and spend significantly more expense and time in responding to its written discovery.

## IV.    Plaintiffs' Substantial Completion Deadline is an Untenable Solution to a Problem They Created

Plaintiffs apparently recognize the added time and expense using their approach, and therefore also ask this Court to artificially shorten the completion deadline to April 10th – an infeasible task both in terms of time and expense.[13] *See* **Exhibit 5** at ¶ 14. Especially in light of

---

13.    Once there is finality to which ESI search strings will be used to identify documents for manual review, SET will require a reasonable amount of time to complete its review such that production can be made. SET anticipates that to be at least forty-give to sixty days following resolution of the dispute of ESI search strings, if the Court adopts the SET proximity limiters and other modifiers. Otherwise, SET will likely need additional time to complete manual review of a more voluminous production.

the COVID-19 global health emergency, staffing a project of this magnitude on such short notice is impossible. *Id*. And even if there were a chance of *coming close* to completing such a broad review on the unreasonably short schedule Plaintiffs propose, it would require over 250 reviewers (who are not presently available due to the COVID-19 pandemic) to work over 12,000 hours in overtime in addition to over 16,000 hours of regular-time review. *Id*. Plaintiffs assert that the April 10th deadline they demand is not arbitrary, but is necessary to complete discovery, including depositions by the June 5, 2020 discovery cutoff. Motion, p. 16. But that logic is self-serving, intentionally ignoring any of their own delays and accountability for why Plaintiffs do not yet have SET's ESI discovery. SET should not be forced to meet an unreasonable deadline at an unreasonable expense. This is especially true here, where Plaintiffs chose to wait months to include SET in its 26(f) conferences with the other Defendants. Even then, they engaged in a "my way or the highway" approach to cooperating on ESI collection that did nothing to limit the universe of documents to be reviewed. Moreover, it is impossible for SET to reasonably complete the search requested (of either ESI collection set) in the time period suggested.[14] *See* **Exhibit 5** at ¶¶ 14, 15.

In addressing their self-imposed predicament, Plaintiffs also conveniently overlook the fact that they are already in possession of nearly 40,000 relevant documents, many of which involve SET employees engaging in communications with the Toyota Entities, including discussions about the Camry model vehicles at issue.[15]

---

14.    In addition to the logistical issues discussed in detail above, the Global Health Emergency instigated by the COVID-19 outbreak causes additional complications. To help ensure the safety and well being of its employees, SET's eDiscovery vendor will be forced to complete its review services remotely. This includes but is not limited to "secure virtual review" policies which will require reviewers and other Consilio eDiscovery experts to work remotely. This protocol is anticipated to increase the complexity, and therefore time and cost, associated with these efforts. *See* **Exhibit 5** at ¶ 20.

15.    To be sure, they have already conducted two such depositions and have stated their intent to take many more (including SET employees) in the next sixty to seventy-five days.

Had Plaintiffs timely commenced discovery and reasonably communicated and cooperated with SET to limit the universe of documents ESI collection, search term query and redactions, they would not have found themselves under their current time crunch. SET should not bear the pain resulting from Plaintiffs' lapses and unreasonable insistence in forcing SET to review an overbroad, largely irrelevant ESI document set.

### V.      Joinder and Adoption of the Toyota Entities' Arguments

To the extent the Toyota Entities assert factual and/or legal arguments in opposition to Plaintiffs' Motion which are not also raised herein but which may apply due to the overlap of some, if not all, of the issues (*e.g.*, ESI search term inquires, redactions, and the substantial completion deadline), SET hereby joins and adopts same.

### <u>Conclusion</u>

As shown above, SET's proposed ESI search terms and suggested approach to disclosing the names of ESI custodians is both reasonable and proper. On the other hand, Plaintiffs' broad search strings have proven untenable, and their refusal to customize the ESI-discovery plan both fail to meet the parties' needs in this matter. More specifically, this case is about an alleged defect in a discretely defined set of Camry-only vehicles. As such, appropriately tailored search strings including a "Camry" limiter will serve to reasonably capture all discoverable information in this matter. By contrast, using Plaintiff's proposed overly broad search strings, which do not include any "Camry" limiter, would capture almost one-million documents, the vast majority of which are unrelated to class vehicles ***by design***. Given that there is no justification for reviewing these additional documents, which would require massive amounts of time and prohibitive expense, the Court should adopt SET's search terms. Should the ESI collection and review efforts requested by

Plaintiffs be compelled despite their disproportionality to the case, then the cost burden associated with those efforts should be shifted onto Plaintiffs.

Similarly, the Court should adopt SET's more reasonable proposed protocol for disclosing document custodians after search strings are applied. This is more appropriate here, where SET completed an over-collection from the entirety of two of its departments, rather than trying to identify and limit the number of custodians before collection.

**WHEREFORE**, Defendant, Southeast Toyota Distributors, LLC, respectfully requests entry of an Order denying Plaintiffs' Motion to Compel Discovery and awarding SET with any other relief this Court deems just and proper.

Dated: March 17, 2020                    Respectfully submitted,
        Boca Raton, FL


                                         *s/ David J. DePiano*
                                         ROBERT E. SACKS, ESQ
                                         Florida Bar No. 110019
                                         E-Mail: rsacks@sbwh.law
                                         DAVID J. DePIANO, ESQ.
                                         Florida Bar No. 55699
                                         E-Mail: ddepiano@sbwh.law
                                         SHAPIRO, BLASI, WASSERMAN &
                                         HERMANN, P.A.
                                         7777 Glades Road, Suite 400
                                         Boca Raton, Florida 33434
                                         Telephone:     (561) 477-7800
                                         Facsimile:     (561) 477-7722
                                         *Attorneys   for   Defendant   Southeast   Toyota*
                                         *Distributors, LLC*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on March 17, 2020, a true and correct copy of the foregoing

document is being electronically filed with the Clerk of Court using CM/ECF and is being served

via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel of record

identified in the Service List below.

*s/ David J. DePiano*
ROBERT E. SACKS, ESQ
DAVID J. DePIANO, ESQ.

# SERVICE LIST

*Javier Cardenas, et al. v. Toyota Motor Corporation, et al.*
Case No.: 1:18-cv-22798-FAM
United States District Court, Southern District of Florida

Peter Prieto, Esq.
E-Mail:  pprieto@podhurst.com
John Gravante, III, Esq.
E-Mail:  jgravante@podhurst.com
            iyarzabal@podhurst.com
Matthew Weinshall, Esq.
E-Mail:  mweinshall@podhurst.com
Alissa Del Riego, Esq.
E-Mail:  adelriego@podhurst.com
Podhurst Orseck, P.A.
One S.E. 3rd Ave., Suite 2300
Miami, FL  33131
Tel:   (305) 358-2800
Fax:   (305) 358-2382
Attorneys for Plaintiffs
*Via CM/ECF*

Tyler S. Graden, Esq.
E-Mail:  tgraden@ktmc.com
Nathan A. Hasiuk, Esq.
E-Mail:  nhasiuk@ktmc.com
Natalie Lesser, Esq.
E-Mail:  nlesser@ktmc.com
Joseph H. Meltzer, Esq.
E-Mail:  jmeltzer@ktmc.com
Lisa M. Port, Esq.
E-Mail:  llambport@ktmc.com
Richard A. Russo, Jr., Esq.
E-Mail:  rrusso@ktmc.com
Melissa L. Troutner, Esq.
E-Mail:  mtroutner@ktmc.com
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia Rd.
Radnor, PA  19087
Tel:   (610) 667-7706
Fax:   (610) 667-7056
Attorneys for Plaintiffs
*(Admitted Pro Hac Vice)*
*Via CM/ECF*

Paul R. Kiesel, Esq.
E-Mail:  kiesel@kiesel.law
Jeffrey A. Koncius, Esq.
E-Mail:  koncius@kiesel.law
            mcruz@kiesel.law
Nicole Ramirez, Esq.
E-Mail:  ramirez@kiesel.law
Kiesel Law LLP
8648 Wilshire Blvd.
Beverly Hills, CA  90211
Tel:   (310) 854-4444
Attorneys for Plaintiffs
*(Admitted Pro Hac Vice)*
*Via CM/ECF*

Peter A. Muhic, Esq.
E-Mail:  pmuhic@levanlawgroup.com
LeVan Law Group, LLC
One Logan Sqaure – 27th Floor
Philadelphia, PA  19103
Tel:   (215) 561-1500
Fax:   (215) 827-5390
Attorney for Plaintiffs
*(Admitted Pro Hac Vice)*
*Via CM/ECF*

Brian M. Ercole, Esq.
E-Mail:  brian.ercole@morganlewis.com
Melissa M. Coates, Esq.
E-Mail:  melissa.coates@morganlewis.com
Matthew M. Papkin, Esq.
E-Mail:  matthew.papkin@morganlewis.com
Morgan, Lewis & Bockius LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL  33131
Tel:     (305) 415-3000
Fax:     (305) 415-3001
Attorneys for Defendants Toyota Motor
Corporation, Toyota Motor Sales, U.S.A., Inc.,
and   Toyota   Motor   Engineering   &
Manufacturing North America, Inc.
*Via CM/ECF*

Robert E. Sacks, Esq.
E-Mail:  rsacks@sbwh.law
David J. DePiano, Esq.
E-Mail:  ddepiano@sbwh.law
Shapiro, Blasi, Wasserman & Hermann, P.A.
7777 Glades Rd., Suite 400
Boca Raton, FL 33434
Tel:     (561) 477-7800
Fax:     (561) 477-7722
Attorneys  for  Defendant  Southeast  Toyota
Distributors, LLC
*Via CM/ECF*

David L. Schrader, Esq.
E-Mail:  david.schrader@morganlewis.com
Lisa R. Weddle, Esq.
E-Mail:  lisa.weddle@morganlewis.com
Morgan, Lewis & Bockius LLP
300 S. Grand Ave., 22nd Floor
Los Angeles, CA  90071
Tel:     (213) 612-2500
Fax:     (213) 612-2501
Attorney  for  Defendants  Toyota  Motor
Corporation, Toyota Motor Sales, U.S.A., Inc.,
and   Toyota   Motor   Engineering   &
Manufacturing North America, Inc.
*(Admitted Pro Hac Vice)*
*Via CM/ECF*