## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JAVIER CARDENAS, RODNEY AND PAMELA BAKER, MICHELLE MONGE, and KURT KIRTON, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., and SOUTHEAST TOYOTA DISTRIBUTORS, LLC.<br><br>      Defendants. | Civil Action No. 18-22798-CIV-MORENO |

**OPPOSITION OF DEFENDANTS TOYOTA MOTOR SALES USA, INC., TOYOTA MOTOR ENGINEERING & MANUFACTURING OF NORTH AMERICA, INC. AND TOYOTA MOTOR CORPORATION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................ 1

II.     FACTUAL BACKGROUND ........................................................................... 3

        A.      Plaintiffs' Complaint Involves Only Camry Model Vehicles................................ 3

        B.      Plaintiffs Represented That They Would Utilize The Salas Discovery And
                Not Seek Burdensome And Unnecessary Discovery................................................ 4

        C.      The Toyota Defendants Produced More Than 36,000 Documents From
                More Than 14 Custodians Through The Salas Production.................................... 5

        D.      Even Though The Toyota Defendants Agreed To Collect Documents
                From Several Additional Custodians (Beyond Those Collected In Salas),
                Plaintiffs Recently Demanded Additional Custodial Collections Of
                Documents ................................................................................................................ 6

        E.      Plaintiffs Rejected The Salas Search Terms And Insisted On Improper,
                Excessive Terms That Would Yield Massive Volumes Of Irrelevant
                Documents And Take Significant Time And Cost To Review............................... 6

        F.      Plaintiffs Ignored The Toyota Defendants' Reasonable And Generous
                Counterproposal On Search Terms........................................................................ 7

        G.      Plaintiffs' "Substantial Completion" Deadline Is Improper And
                Inconsistent With Plaintiffs' Demands And The Court's Instructions ................. 8

III.    ARGUMENT ................................................................................................... 8

        A.      Plaintiffs' Motion To Compel Is Premature And Procedurally Improper. ........... 9

        B.      Plaintiffs' Request For Search Terms That Do Not Utilize A Camry
                Limiter Should Be Denied. ................................................................................. 10

                1.      Plaintiffs' Proposed Search Terms Seek Irrelevant Information
                        About Non-Camry Vehicles .................................................................. 10

                2.      Without A Camry Limiter, Plaintiffs' Search Terms Result In
                        Discovery That Is Unduly Burdensome And Not Proportional To
                        Needs Of This Case ............................................................................... 13

                3.      Even If Plaintiffs' Proposed Search Terms Were Relevant And
                        Proportional (Which They Are Not), Defendants Should Not Bear
                        The Cost Of Such Discovery ................................................................. 15

        C.      Redactions For Information Pertaining To Non-Camry Vehicles And
                Other Irrelevant Information Are Appropriate. .................................................. 16

                1.      The Court Has Recognized That It Is Proper To Make Relevance
                        Redactions ............................................................................................. 16

                2.      The Redactions Toyota Defendants Stand Upon Do Not Include
                        Relevant Information ............................................................................. 17

# TABLE OF CONTENTS
(continued)

**Page**

       3.    Plaintiffs' Redaction Demands Are Disproportionate To The Needs Of This Case ............................................................................... 18

   D.   Plaintiffs' Novel Proposal For A Substantial Completion Deadline Is Unworkable And Unsupported By Law. ............................................................ 19

IV.   CONCLUSION ............................................................................................................. 20

I.    **INTRODUCTION**

From the outset, this Court expressly recognized the substantial discovery that has taken place in pending class action litigation (the "*Salas* Litigation")[1] involving the same alleged defect, legal theory, and Camry model vehicles at issue here:  "There's so much discovery already."  (Sept. 6, 2019, Hearing Tr., Ex. 1 to Ercole Decl. (Ex. A), at 70:6.)[2]  Plaintiffs even represented that their discovery would focus "primarily" on the production in *Salas* ("*Salas* Production").  (*Id.* at 71:15.)

Toyota Defendants produced all documents produced in the *Salas* Litigation.  Rather than identify what targeted *additional* documents Plaintiffs need, Plaintiffs have done exactly what the Court warned against—they seek discovery from scratch.  In addition to serving broad document requests on each of the Toyota Defendants,[3] Plaintiffs have:  (a) proposed 22 new custodians from whom to collect documents; (b) proposed entirely new search terms—without limitation to the Camry vehicles at issue—that likely would require review of millions of documents (the bulk of which would be irrelevant documents); and (c) insisted on the removal of all relevance redactions from the *Salas* Production, even those that have nothing to do with the HVAC matters in this case.  When the Toyota Defendants requested a further meet and confer to resolve these issues, Plaintiffs filed a motion to compel—and now seek a unilateral deadline of April 10, 2020 for all Defendants to "substantially complete" document productions.  Plaintiffs' motion should be denied.

*First*, Plaintiffs' motion is premature.  Plaintiffs did not sufficiently and meaningfully meet and confer with the Toyota Defendants to try to reach agreement regarding the issues raised in the

---

[1]    That action is captioned *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:15-cv-08629-FMO-E (C.D. Cal., filed Nov. 4, 2015).  The *Salas* Litigation involves the 2012–2015 model year Camry vehicles and the same defect theory as alleged here.  (ECF No. 25 at 4–5.)

[2]    Exhibits 1 through 12 to the Declaration of Brian M. Ercole are hereafter referred to in this opposition brief as "Ex. A(1)" through "Ex. A(12)" respectively.

[3]    The phrase "Toyota Defendants" refers to Toyota Motor Sales USA, Inc. ("TMS"), Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA"), and Toyota Motor Corporation ("TMC").

motion.  Particularly given the impact of COVID-19 on the current schedule and their discovery demands, Plaintiffs should be required to do so now in accordance with Local Rule 7.1(a)(3).

*Second*, Plaintiffs' requested search terms—which have no limiter ensuring that captured documents relate to the Camry model vehicle at issue (the "Camry Limiter")—seek irrelevant information and would generate a document review population grossly disproportionate to the needs of this case.  Plaintiffs seek to gather information about "different vehicles" (Pls.' Mot. at 12), but this case involves Camry vehicles exclusively.  There is no reason to deviate from the more limited search terms used in *Salas*.  Indeed, without a Camry Limiter, Plaintiffs' search terms would capture massive volumes of primarily irrelevant information—projected at over *2.1 million* documents.  The Court should not require Toyota Defendants to incur the undue burden of reviewing Plaintiffs' proposed massive volume of documents—projected to cost more than $2.4 million dollars and require approximately 36,000 hours (the equivalent of 50 people working 8 hours per day for 90 working days).  (J. Rosenthal Declaration, attached as Ex. B, ¶¶ 19–21.)  If the Court were inclined to force Toyota Defendants to do so, Plaintiffs should bear the costs of reviewing, hosting, and producing this information.

*Third*, Plaintiffs' request to remove redactions from the *Salas* Production is unwarranted.  Courts (including this one) have recognized that relevance redactions are appropriate.  Moreover, Toyota Defendants have offered to remove redactions related to the cost of proposed countermeasures associated with potential HVAC odor—which moots this portion of the motion.  What then remains is Plaintiffs' request to "unredact" information that Plaintiffs have failed to show bears any relevance to the issues at hand in this case.

*Lastly*, Plaintiffs offer no legal or factual basis for their "substantial completion" deadline.  Toyota Defendants have not violated any scheduling deadline.  Nor have Plaintiffs moved to

compel based upon any untimely production.  Plaintiffs' requested deadline is rendered even more unreasonable by Plaintiffs' recent demands to expand discovery, including through additional custodians and the ongoing dispute over their overbroad search terms.  Depending on the custodians and search terms, Toyota Defendants will have to review hundreds of thousands, if not millions, of documents for responsiveness and privilege.  For instance, even if Toyota Defendants' narrower search terms were to be  applied to Plaintiffs' proposed custodians, the review process is projected to take at least 14,516 hours—the equivalent of 50 people working 8 hours per day for 37 working days.  (Ex. B, ¶ 23.)  These challenges are exacerbated by the current problems from COVID-19 and the global health crisis.  Plaintiffs' unilateral deadline is unworkable.

## II.   FACTUAL BACKGROUND

Plaintiffs omit the background behind the discovery issues raised in their motion.  But Plaintiffs' motion cannot be decided in a vacuum.  That background is set forth below, and shows why Plaintiffs' motion is both premature and substantively flawed.

### A.   Plaintiffs' Complaint Involves Only Camry Model Vehicles.

This case is about Toyota Camry vehicles.  Plaintiffs define the proposed "Class Vehicles" as "2012-2017 Toyota Camry[s]."  (Corrected Am. Compl. ("Complaint"), ECF No. 49, ¶ 2.) Plaintiffs allege that the "Class Vehicles contain a defective Heating, Ventilation, and Air Conditioning System."  (*Id.* ¶ 3.)  And each Plaintiff alleges to have owned or leased a Camry. (*Id.* ¶¶ 23, 28, 30, 34, 38.)  There are no allegations as to any vehicle other than Camry.

Plaintiffs and their counsel expressly confined this case to the Camry model vehicle.  This is likely due to a separate and pending putative class action against TMS—brought by some of the same Plaintiffs' counsel here in the Central District of California—that involves 35 different (non-

Camry) Toyota and Lexus vehicles.  *See Stockinger v. Toyota Motor Sales, U.S.A., Inc.*, No. 17-cv-00035 (C.D. Cal., filed Jan. 3, 2017) (the "*Stockinger* Litigation").[4]

### B.   Plaintiffs Represented That They Would Utilize The *Salas* Discovery And Not Seek Burdensome And Unnecessary Discovery.

In response to Plaintiffs' Complaint, the Toyota Defendants filed a motion to transfer this action to the Central District of California, where both the *Stockinger* and *Salas* actions are pending.  At the motion to transfer hearing, Plaintiffs repeatedly assured the Court that while TMC and TEMA are new parties, Plaintiffs would focus on discovery already taken in the *Salas* Litigation if they were given access to that discovery.  (*See* Ex. A(1) at 70:2–8; *id.* at 71:14–16 ("We can start discovery immediately, it's not a problem, and we can focus primarily, at least initially, on what we've got in *Salas*.").)  The Court emphasized that "[t]here's so much discovery already."  (*Id.* at 70:6.)  While the Court denied the motion to transfer, it recognized the importance of limiting duplicative discovery:  "the Court strongly urges the parties to resolve discovery disputes that are redundant of those already litigated in California."  (ECF No. 44 at 7 n.3.)[5]

---

[4]   In that case, Judge Philips recently denied class certification, in part, because of the many differences in the HVAC systems among the various models and model years at issue.  *See* Order, Ex. A(2).

[5]   TMC is the Japanese parent company of TEMA and TMS.  (Am. Compl. ¶ 44.)  In exchange for TMC's agreement to waive service under the Hague Convention ("Hague Service Agreement") and given the linguistic, geographic, and other difficulties associated with collecting and producing documents from TMC, Plaintiffs agreed (among other things) that:  (1) TMC's responses and objections to written discovery requests are due 75-days after service; (2) TMC's document productions must be ***commenced*** 90 days following service; and (3) the parties must meet and confer in good faith to attempt to eliminate and/or streamline any discovery disputes.

**C.** **The Toyota Defendants Produced More Than 36,000 Documents From More Than 14 Custodians Through The *Salas* Production.**

On November 27, 2019, Toyota Defendants produced to Plaintiffs all of the documents that TMS produced in *Salas*. The production consisted of more than 36,000 documents (and nearly 100,000 pages) collected from 14 individual custodians and five departmental custodians. (*See* E-mail from Tyler Graden (Dec. 9, 2019, 12:01 p.m.), attached as Ex. A(3); E-mail from Brian Ercole (Dec. 20, 2010, 1:10 p.m.), attached as Ex. A(4).) These custodians were employees of both TMS and TEMA. The Toyota Defendants also provided the search terms used in *Salas*. (*See* Ex. A(4).)

The Toyota Defendants produced the *Salas* documents in the same form that the documents were produced in *Salas*—including redactions. In *Salas*, certain documents were redacted for relevance, including information pertaining to matters not involving HVAC odor issues, matters related to vehicles other than Camry, and the costs of potential countermeasures to address HVAC odor. Because no redaction log was required in *Salas*, there was no redaction log to produce here.

After receiving the *Salas* Production, Plaintiffs requested the Toyota Defendants "unredact" certain—but not all—information from the documents. As a compromise, the Toyota Defendants offered to withdraw those redactions pertaining to costs associated with countermeasures to address HVAC odor. (*See* E-mail from Brian Ercole (Feb. 6, 2020, 8:58 a.m.), attached as Ex. A(5).) Plaintiffs rejected the offer without a counterproposal, and declined to meet and confer on the issue prior to filing their motion to compel.[6]

---

[6] In light of the substantial discovery completed in *Salas*, Plaintiffs agreed to serve targeted discovery as to TMS to fill in any supposed gaps in the *Salas* Production. Plaintiffs did not do so. (*See* Pls.' First Request for Production to TMS, attached as Ex. A(6) (serving 39 broad requests).)

**D.    Even Though The Toyota Defendants Agreed To Collect Documents From Several Additional Custodians (Beyond Those Collected In *Salas*), Plaintiffs Recently Demanded Additional Custodial Collections Of Documents.**

Even though the Toyota Defendants produced more than 36,000 documents from over 14 custodians in *Salas,* Plaintiffs demanded additional custodial collections.  (*See* E-mail from Tyler Graden (Dec. 13, 2019, 9:32 p.m.), attached as Ex. A(7).)  Given that TMC and TEMA were not named defendants in *Salas*, the Toyota Defendants agreed to collect documents from 11 new custodians.  (*See* Ex. A(5); E-mail from Brian Ercole (Feb. 21, 2020, 4:43 p.m.), attached as Ex. A(8).)  Toyota Defendants are undertaking these custodial reviews.

***Three months after their original request***, Plaintiffs demanded that TMC, TMS, and TEMA collect documents from an additional 11 custodians (and numerous categories of additional unidentified employees).  (*See* E-mail from Tyler Graden (Feb. 14, 2020, 5:12 p.m.), attached as Ex. A(9).)  For each custodian, it takes significant time to understand what documents he or she possesses, to collect them, to have a vendor process those documents, and to review them for privilege and responsiveness.  This is particularly burdensome with respect to TMC employees— given geographic and language barriers, including the need to translate search terms into Japanese. In total, Plaintiffs have requested that Toyota Defendants collect and produce documents from at least 36 identified custodians for this case,[7] plus several categories of unidentified employees.

**E.    Plaintiffs Rejected The *Salas* Search Terms And Insisted On Improper, Excessive Terms That Would Yield Massive Volumes Of Irrelevant Documents And Take Significant Time And Cost To Review.**

Plaintiffs have refused to agree to the search terms applied in *Salas*.  Instead, Plaintiffs demand that Toyota Defendants run new search terms that have virtually no limits—and no connection to Camry vehicles.  For instance, Plaintiffs propose lengthy lists of keywords separated

---

[7]    This includes 14 individual custodians from *Salas* and the 22 new specifically-identified custodians for this case.  It does not include unnamed custodians demanded by Plaintiffs.

by an "AND" modifier: one list consisting of 38 terms the other 36 terms. That produces 1,368 individual search strings. The proposed search strings are comprised of many broad and untargeted search terms. Some examples of such search strings are: (1) Complain* "AND" lawsuit*; (2) goodwill "AND" complaint*; and (3) investigate* "AND" health*. (Pls.' Proposed Search Terms, attached as Ex. A(10).) Plaintiff's proposal also includes a list of 21 standalone search terms. (*Id.*)

Running Plaintiffs' proposed search terms against documents collected from the custodians requested by Plaintiffs is projected to yield over ***2.1 million documents*** that would need to be reviewed by the Toyota Defendants for responsiveness and privilege. (Ex. B, ¶ 18.) It is further estimated that Plaintiffs' proposal would require Toyota Defendants to review more than ***1.6 million irrelevant documents***, based upon the 78.4% false hit rate Plaintiffs' proposed search terms generated when run against the *Salas* review population. (*Id.* ¶ 27.) Such a review would take approximately 36,000 hours—meaning that 50 people would need to work 8 hours per day for 3 months to do the first-level review. (*Id.* ¶ 21.) The projected cost of just that document review is more than $2.4 million. (*Id.* ¶ 19.)

### F.   Plaintiffs Ignored The Toyota Defendants' Reasonable And Generous Counterproposal On Search Terms.

On February 6, 2020, the Toyota Defendants offered to compromise on search terms and proposed an alternative derived from Plaintiffs' proposal. (Ex. A(5).; Toyota's Proposed Search Terms, attached as Ex. A(11).) The Toyota Defendants' counterproposal retained the majority of Plaintiffs' requested search terms while adding a Camry Limiter, such that the word "Camry" must be included anywhere in the document. (*Id.*) Plaintiffs refused to engage in any meaningful meet and confer on this counterproposal; instead, Plaintiffs confirmed they would "proceed[] with a motion to compel . . . ." (E-mail from Tyler Graden (Feb. 27, 2020, 5:15 p.m.), Ex. A(12).)

G. **Plaintiffs' "Substantial Completion" Deadline Is Improper And Inconsistent With Plaintiffs' Demands And The Court's Instructions.**

The Court set a pre-trial schedule for this case based upon streamlined discovery leveraging the years of discovery in the *Salas* Litigation. (ECF No. 46.) Now, without ever discussing the issue with the Toyota Defendants, Plaintiffs ask the Court to impose an April 10, 2020 substantial completion deadline for all their document productions. This deadline is both improper and unworkable, given the ongoing search term dispute, Plaintiffs' recent demands for more custodians, and the challenges presented by the COVID-19 pandemic.

III. **ARGUMENT**

Pursuant to Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter *that is relevant to any party's claim or defense and proportional to the needs of the case*[.]" Fed. R. Civ. P. 26(b)(1) (emphasis added). Critically, the information must be *both* relevant to a party's claim *and* proportional to the needs of the case. *Id.* "The concepts of relevancy and proportionality are considered by the courts when determining discovery disputes." *Cecchini v. Cetera Fin. Grp., Inc.*, No. 9:19-CV-80215, 2020 WL 618113, at *2 (S.D. Fla. Feb. 10, 2020).

Information is relevant if it has the "tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." *See* Fed. R. Evid. 401; *see also Hankinson v. R.T.G. Furniture Corp.*, No. 15-CV-81139-civ-Cohn/Seltzer, 2016 WL 1182768 , at *1 (S.D. Fla. Mar. 28, 2016). The moving party "bears the initial burden of proving that the information sought is relevant." *Douglas v. Kohl's Dep't Stores, Inc.*, No. 15-CV-1185, 2016 WL 1637277 , at *2 (M.D. Fla. Apr. 25, 2016).

Even relevant information must be proportional to the needs of the case before it is within the scope of discovery. *See Hall v. Sargeant*, No. 18-CV-80748, 2019 WL 3796764, at *6 (S.D. Fla. Aug. 12, 2019) (denying "additional requested discovery" where "even if relevant and not

-8-

privileged, is not proportional to the needs of the case"). In conducting the proportionality analysis, a court must consider how and to what degree the discovery "resolv[es] the issues," "the parties' relative access to relevant information," and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Court also retains the power for the "allocation of expenses" associated with discovery. Fed. R. Civ. P. 26(c)(1)(B).

Applying these standards, Plaintiffs' motion to compel should be denied.

### A.    Plaintiffs' Motion To Compel Is Premature And Procedurally Improper.

Under Local Rule 7.1(a)(3), no motion may be filed unless the moving party "make[s] reasonable effort to confer . . . in a good faith effort to resolve by agreement the issues to be raised in the motion." L. R. Civ. P. 7.1(a)(3). "'[R]easonable effort to confer means more than mailing a letter to opposing counsel. It requires that counsel converse, confer, compare views, consult, and deliberate.'" *Reilly v. Chipotle Mexican Grill, Inc.*, No. 15-23425-CIV, 2016 WL 10646561, at *11 (S.D. Fla. Sept. 22, 2016) (internal citation omitted); *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 744 F. Supp. 2d 1297, 1299 n.2, 1304 (S.D. Fla. 2010) ("In order to 'confer,' a movant must have a ***give-and-take exchange*** with opposing counsel." (emphasis added)).

As detailed above, Plaintiffs have not engaged in an adequate give-and-take exchange to complete the meet and confer process on the issues raised in their motion, despite Defendants offering to do so on multiple occasions. Had Plaintiffs agreed to speak with the Toyota Defendants, Plaintiffs would have learned the significant burdens associated with Plaintiffs' search terms and that the Toyota Defendants were willing to compromise as to certain redactions from the *Salas* Production. Nor did Plaintiffs raise the April 10, 2020 substantial completion deadline before filing this motion.[8] Having a further meet and confer is all the more necessary given the

---

[8]    Plaintiffs initially raised a substantial completion date of March 19, 2020 in one email, but when the Toyota Defendants indicated that this date was improper, given that the Hague Service

challenges to discovery (and the current schedule) posed by the current public health emergency. *See* SDFLA Order Administrative 2020-18 (recognizing public emergency from Coronavirus).  As a result, Plaintiffs' motion should be denied, and they should be required to further meet and confer with all Defendants on all issues in the pending motion.  *See* S.D. Fla. L.R. 7.1(a)(3); *Stolfat v. Equifax Info. Servs., LLC*, 2019 WL 3779778, at *3 (S.D. Fla. Aug. 12, 2019) (applying rule).[9]

### B.     Plaintiffs' Request For Search Terms That Do Not Utilize A Camry Limiter Should Be Denied.

#### 1.     Plaintiffs' Proposed Search Terms Seek Irrelevant Information About Non-Camry Vehicles.

Rule 26(b)(1) limits discovery to that which is "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Plaintiffs claim that their proposed search terms—without a Camry Limiter—should be applied so that they can obtain information pertaining to "other vehicles" and "multiple Toyota vehicles."  (Pls.' Mot. at 12.) Plaintiffs have failed to meet their burden of showing that their search terms—and the non-Camry information they seek to obtain—is relevant or proportional to the needs of the case for multiple reasons.

First, this case involves Camry vehicles.  (*See, e.g.*, Am. Compl., ¶¶ 1–2, 23, 28, 34, 38, 73–74, 77, 80, 83, 89, 95, 98, 130, 135.)  Plaintiffs purchased only Camry vehicles, their class is

---

Agreement with TMC did not even require that entity to ***commence*** production until March 19, 2020, Plaintiffs did not respond. (*See* Ex. A(8).)

[9]      In addition, the very *Sedona Principles* relied upon by Plaintiffs gut their motion.  They make clear that "[a] responding party should determine how to meet its own preservation and production obligations."  *Sedona Principle Sedona Principles*, 19 SEDONA CONF. J. 1, 118 (2018).  Thus, Toyota Defendants could insist on running their own search terms and require Plaintiffs to wait until the Toyota Defendants make their productions to raise a challenge to those productions.  *In re: Viagra (Sildenafil Citrate) Prod. Liab. Litig.*, No. 16-MD-02691-RS (SK), 2016 WL 7336411, at *1 (N.D. Cal. Oct. 14, 2016) (applying rule).  Nonetheless, in an attempt to engage in cooperative and streamlined discovery as anticipated by this Court, Toyota Defendants would prefer to come to an agreement on search terms through a renewed meet and confer process.

limited to Camry model vehicles, and they make no allegations about any other model vehicle. Thus, they are not entitled to documents about non-Camry vehicles.

Second, at the hearing on the Toyota Defendants' motion to transfer (ECF No. 25), the Court and Plaintiffs recognized that this case is only about Camry vehicles. (*See* Ex. A(1) at 6:22–23 (Mr. Prieto: "This case involves Camrys.  In *Stockinger* it's every other model of Toyota cars except Camrys.").)  Indeed, among the "compelling reasons" that the Court identified as the basis to deny transfer was that the *Stockinger* Litigation involved "every other vehicle manufactured by Toyota."  (ECF No. 44, at 5.)  The Court further recognized that the "first-filed" case was a Camry only case (*Salas*) and that the parties should capitalize on the discovery that already existed there and not reinvent the "discovery" wheel.  (*See* Ex. A(1) at 70:2–71:16; ECF No. 44 at 7 n.3.)

Third, a Camry Limiter was used for many of the search strings in the *Salas* Litigation.  No party objected to the Camry Limiter in that case, and it was used with success, yielding relevant documents while allowing for a tailored approach proportional to the needs of the case and a manageable discovery process.  It similarly should be employed here, especially given the Court's instruction to utilize the discovery principles from the *Salas* Litigation.

Fourth, even if more were required, Plaintiffs provide no evidence to show why documents pertaining to the separate HVAC systems of other vehicles—much less any HVAC odor in those vehicles—are relevant.  To obtain documents about other model vehicles, Plaintiffs must at a minimum make "a specific factual showing of substantial similarity . . . [c]onclusory statements of alleged similarity are not enough."  *Stone v. Zimmer, Inc.*, No. 09-CV-80252, 2010 WL 11602738, at *2 (S.D. Fla. Jan. 7, 2010) (alternation original) (quoting *Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116, 1120 (N.D. Ga. 2007)) (denying other product discovery where plaintiffs submitted no evidence on substantial similarity); *Schultz v. Daimler Trucks N. Am., LLC*, No. 12-

CV-228, 2014 WL 11516082, at *3 (D. Wyo. Nov. 4, 2014) (applying principle); *Gonzales v. Goodyear Tire & Rubber Co.*, No. CIV 05-94, 2006 WL 7290047, at *7 (D.N.M. Aug. 10, 2006) (same).

Here, Plaintiffs make no effort to meet their burden. *Gibson*, 510 F. Supp. 2d at 1120–21 (denying discovery related to other model vehicles because "Plaintiffs do not present any concrete, specific, fact-based comparison to show that [different models] are sufficiently similar to the [at issue model]" and "bald assertion that the information sought is believed to be relevant" was insufficient).  In fact, Plaintiffs represented the opposite in prior briefing to avoid transfer.  (*See* ECF No. 33, at 7 (arguing that "[Judge Olguin's] keen understanding [in *Salas*] that the . . . different types of vehicles involved limited the similarities between the two cases [*Salas* and *Stockinger*] is equally applicable here.").)  And the *Stockinger* court recently denied class certification of claims based upon the same defect theory here because there are many "permutations in HVAC design"—and, thus, resolution of any alleged HVAC defect did not even meet the common question requirement under Rule 23(a) across the different models of Toyota and Lexus vehicles at issue.  *See* Ex. A(2), at 17–18; *Green v. Toyota Motor Corp.*, No. 11-CV-0207, 2012 WL 13065682, at *6–7 (N.D. Tex. July 18, 2012) (denying discovery into other model vehicles).  Given that *Stockinger* was not sufficiently similar to warrant transfer, discovery pertaining to the *Stockinger* model vehicles is not relevant here.  Plaintiffs' motion fails.

        **2.**      **Without A Camry Limiter, Plaintiffs' Search Terms Result In Discovery That Is Unduly Burdensome And Not Proportional To Needs Of This Case.**

This Court has explained that discovery is limited by "the commonsense concept of proportionality." *In re: Takata Airbag Prod. Liab. Litig.*, No. 15-MD-2599, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016) (Moreno, J.) (quoting Chief Justice John Roberts, 2075 *Year–End Report on the Fed. Judiciary* 6 (2015)). "Proportionality" in turn "requires counsel and the court

to consider whether relevant information is discoverable in view of the needs of the case." *Tiger v. Dynamic Sports Nutrition, LLC*, No. 15-CV-1701-ORL-41TBS, 2016 WL 1408098, at *2 (M.D. Fla. Apr. 11, 2016) (applying principle to limit discovery); *Reuter v. Physicians Cas. Risk Retention Grp*, No. 16-CV-80581, 2017 WL 395242, *3. (S.D. Fla. Jan. 27, 2017) (same).

Here, Plaintiffs' proposed search terms are grossly overbroad. As the declaration of John Rosenthal, Esq. (Toyota Defendants' discovery counsel) shows, without a Camry Limiter, Plaintiffs' search terms are nearly boundless. Using Plaintiffs' terms, the volume of documents across the 22 named custodians demanded by Plaintiffs is projected to exceed 2.1 million. (Ex. B, ¶ 18.) This is nearly 2.5 times the number of documents captured by the Toyota Defendants' proposed search terms. (*Id.* ¶¶ 19, 22, 25.) In a typical environment (with no public health emergency), reviewing the millions of documents that hit on Plaintiffs' search terms for responsiveness and privilege would take the equivalent of 50 people working 8 hours per day for 90 working days. (*Id.* ¶ 21.) And it would cost more than $2,400,000—on top of the significant costs TMS already spent collecting, reviewing, and producing documents in the *Salas* Litigation, and will spend re-reviewing the same. (*Id.* ¶¶ 19, 27.)

Statistics from the *Salas* Production are also instructive. Plaintiffs' proposed search terms generated a 79% false hit rate when run against the documents reviewed in the *Salas* Litigation. (*Id.* ¶ 26.) Thus, it is estimated that Plaintiffs' proposal (including reviewing documents from 22 additional custodians) would require Toyota Defendants to review approximately **1.7 million irrelevant documents** based upon the number of Cardenas custodians Plaintiffs seek. (*Id.*) Plaintiffs' proposed review will grossly exceed the costs associated with Toyota Defendants' search terms. (*Id.* ¶ 22.) Indeed, compared to the requisite 90 working days to review documents captured by Plaintiffs' proposal, 37 working days likely would be required to review documents

-13-

captured by Toyota Defendants' search terms (against 22 additional custodians).  (*Id.* ¶ 23.)  And even this burden still far exceeds the needs of the case, indicating a further narrowing of search terms or custodians is required—not the expansion Plaintiffs seek.

This analysis is buttressed by a review of a few of Plaintiffs' proposed search strings. Nothing more than commonsense is needed to know that search strings—such as (1) Complain* "AND" lawsuit*; (2) goodwill "AND" complaint*; and (3) investigate* "AND" health*—will produce large volumes of information that has absolutely nothing to do with the alleged factual or legal issues here.  (Ex. A(10).)  These search strings, for example, will capture documents discussing any other lawsuit involving any other vehicle, a dealer's decision to use goodwill to address any complaint (not covered by warranty) by any customer about any vehicle and any issue, and any investigation of any model vehicle where the word "health" is mentioned.  These search strings are not tailored to the needs of this case, particularly where the *Salas* documents have already been produced.

Plaintiffs claim that their proposed search terms are not over inclusive "because they actually return *fewer documents* than what is encompassed by the *Salas* Production and SET's productions to date."  (Pls.' Mot. at 13 (emphasis original).)  Their proposed search terms have a supposed "93%" hit rate when run against the *Salas* Production and SET's productions to date. (*Id.* at 12).  Not only do Plaintiffs provide no evidence to support this statistic, but the logic of Plaintiffs' analysis does not hold.  To determine whether Plaintiffs' proposed search terms are over inclusive, the salient statistic is how *many irrelevant hits they return—not the percentage of hits from relevant documents*.  Those irrelevant documents will be in the millions.

Plaintiffs' statistics are flawed in another way.  Plaintiffs inconsistently include or exclude families to skew the numbers in their favor.  (*Compare* Pls.' Mot. at 12 (indicating Plaintiffs'

search terms include 93% of the *Salas* Production, by including families) *with id.* at 13 (indicating Toyota's search terms return only 41.5% of the *Salas* Production, by excluding families).)

In short, the only statistical evidence properly before this Court is the declaration evidence of John Rosenthal submitted in support of the Toyota Defendants' opposition. That declaration confirms that Plaintiffs' proposed terms will necessarily lead to "unnecessary and wasteful discovery"—at massive expense to the Toyota Defendants. *Reuter*, 2017 WL 395242, *3. Plaintiffs' motion should be denied for this reason alone.

### 3. Even If Plaintiffs' Proposed Search Terms Were Relevant And Proportional (Which They Are Not), Defendants Should Not Bear The Cost Of Such Discovery.

Under Rule 26(c)(1)(B), the Court can issue orders that "specify[ ] terms, including time and place or the allocation of expenses, for the disclosure or discovery." While the "responding party ordinarily bears the costs of responding," Fed. R. Civ. P. 26(c)(1)(B) (advisory committee's notes to 2015 amendment), cost sharing may be "warranted when, inter alia, discovery presents an 'undue burden or expense' relative to the prospective benefit of the discovery." *United States ex rel. Bibby v. Wells Fargo Bank*, N.A., No. 06-CV-0547, 2016 WL 7365195, at *1 (N.D. Ga. May 26, 2016). This includes "costs related to reviewing documents prior to their production," including "expenses related to attorney privilege or responsiveness reviews." *Id.* at *2; *see also Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, No. 17-CV-80495, 2018 WL 6843629, at *2 (S.D. Fla. Dec. 21, 2018) (allocating costs under Rule 26(c)(1) and "require[ing] Plaintiff to pay all of the reasonable and necessary costs of Defendants' production").

That is precisely the case here. Plaintiffs' excessive and untethered search terms yield an anticipated 2.1 million documents for review; the associated cost of reviewing that information is an undue burden and expense. (Ex. B, ¶ 21.) Moreover, because nearly 80% of the documents captured are expected to be irrelevant (*id.* ¶ 26), and because the Toyota Defendants already

-15-

produced more than 36,000 documents from *Salas*, any additional relevant documents captured by Plaintiffs' proposed search terms will offer little value. If Plaintiffs and their counsel want those searches run, Plaintiffs and their counsel should bear the significant costs to conduct that review. Accordingly, if the Court is inclined to grant Plaintiffs' motion (and it should not), the Court should impose cost-shifting and require Plaintiffs to bear the reasonable costs of the Toyota Defendants' productions, including the cost of reviewing, hosting, and producing those documents.

### C.   Redactions For Information Pertaining To Non-Camry Vehicles And Other Irrelevant Information Are Appropriate.

#### 1.   This Court Has Recognized That It Is Proper To Make Relevance Redactions.

Plaintiffs argue that all relevance redactions are *per se* inappropriate under the "law in this District." (Pls.' Mot. at 5.) Not so. In *Takata*, this Court recognized that a party is "not entitled to irrelevant information in responsive documents," and, thus, allowed redactions of irrelevant information. 2016 WL 1460143, at *2. Nothing in Rule 34 prohibits the redaction of irrelevant information by the producing party, and, consistent with Rule 26(b)(1), Plaintiffs have no need or use for information that is not relevant to this case.

Other courts have reached the same result—both within and outside the Southern District of Florida. *See, e.g.*, *Drossin v. Nat'l Action Fin. Servs., Inc.*, No. 07-CV-61873, 2008 WL 5381815, at *5 (S.D. Fla. Dec. 19, 2008) (allowing redaction of irrelevant information); *Spano v. Boeing Co.*, No. 06-CV-00743, 2008 WL 1774460, *2 (S.D. Ill. Apr. 16, 2008) ("[C]ourts have found redaction appropriate where the information redacted was not relevant to the issues in the case."); *Schiller v. City of New York*, 2006 WL 3592547, *7 (S.D.N.Y. Dec. 7, 2006) (same); *Bear Creek Cranberry Co., LLC v. Cliffstar Corp.*, No. 10-CV-00770, 2011 WL 2882078, at *3 (W.D.N.Y. July 15, 2011) (same).

Although Plaintiffs try to limit the reach of *Takata* to the redaction of proprietary or competitively sensitive information in cases involving competitors (Pls.' Mot. at 5–6), the Court imposed no such limitation—and addressed the propriety of redacting irrelevant information in general.  Even the *Bonnell* case upon which Plaintiffs rely recognized that other courts allow these types of relevance redactions.  *Bonnell v. Carnival Corp.*, No. 13-CV-22265, 2014 WL 10979823, at *3 & n.3 (S.D. Fla. Jan. 31, 2014) (recognizing courts "have found redaction to be an appropriate means to challenge relevance" while declining to allow redactions given the facts of that case).

Plaintiffs repeatedly argue that the Toyota Defendants' redactions are inappropriate because they are "unilateral."  (Pls.' Mot. at 2–3, 5, 7, 10.)  But Plaintiffs fail to appreciate that the producing party has the right and obligation to determine relevance under the Federal Rules. *Viagra*, 2016 WL 7336411, at *1 ("the responding party is the one best situated to decide how to search for and produce ESI responsive to discovery requests"); *see also Green Leaf Nursery v. E.I. duPont de Nemours & Co.*, 341 F.3d 1292, 1305 (11th Cir. 2003) (counsel's Rule 26(g)(1)(B) signature certifies she has made reasonable effort to assure client provided relevant documents).

Moreover, Plaintiffs ignore the procedural history here.  The Toyota Defendants reproduced the documents previously produced in the *Salas* Litigation, after years of discovery. Neither the *Salas* plaintiffs nor the *Salas* court ever took issue with the documents as produced in *Salas*.  Plaintiffs cannot now complain that relevance redactions of those documents produced in a separate case where no parties objected are categorically inappropriate.  This is the very type of discovery dispute that the Court instructed the parties to avoid when it denied transfer.

### 2.    The Redactions Toyota Defendants Stand Upon Do Not Include Relevant Information.

Plaintiffs complain that the redactions from the *Salas* Production are improper because they redact supposedly relevant information pertaining to:  (a) the costs of countermeasures for

Camry vehicles; and (b) information pertaining to "other Toyota vehicles experiencing HVAC odor." (Pls.' Mot. at 6–7.)  Neither argument supports their motion to compel.

First, Plaintiffs argue that cost information regarding countermeasures to address HVAC odor was redacted from the *Salas* Production.  (*Id.*)  While correct (based upon the circumstances of that case), Plaintiffs ignore that Toyota Defendants have agreed to re-produce the *Salas* Production without that cost information redacted.  Thus, there is ***no dispute*** on this issue.

In addition (as discussed above), information related to non-Camry vehicles is irrelevant and, thus, properly redacted.  This case is limited to alleged defects in the HVAC systems of Camry vehicles—no other vehicle.  Plaintiffs affirmatively argued against substantial similarity of the Camry HVAC system with that of other vehicles in their opposition to the transfer motion, and do not even attempt to make such a showing now.  As such, Plaintiffs are not entitled to discovery on non-Camry vehicles.  *Gibson*, 510 F. Supp. 2d at 1120; *Schultz*, 2014 WL 11516082, at *3.

Finally, while Plaintiffs identify two narrow categories of information they wrongly claim are relevant, many of the redactions simply have nothing to do with HVAC odor, countermeasures to address HVAC odor, or even Camry vehicles.  They are irrelevant even under Plaintiffs' standard.  This includes, for example, discussion of issues about non-Camry vehicles unrelated to HVAC systems or odor in documents that discuss HVAC odor for Camry vehicles.  Plaintiffs offer no reason why the Toyota Defendants must now "unredact" that irrelevenat information from a prior production and be barred from making such redactions going forward.  *In re Takata*, 2016 WL 1460143, at *2.

### 3.    Plaintiffs Redaction Demands Are Disproportionate To The Needs Of The Case.

Plaintiffs represented at the motion to transfer hearing that they would not repeat discovery from the Salas Litigation if given access to that discovery.  (*See* Ex. A(1) at 70:2–71:16.)

Consistent with this Court's expectation that the parties streamline discovery and capitalize on the prior discovery in *Salas*, the Toyota Defendants should not be forced to reproduce the entirety of the *Salas* Production without redactions, including information irrelevant to this case.  Requiring the Toyota Defendants to do so is disproportional to the needs of this case, given that the *Salas* Production (as redacted) was sufficient for the Court and parties there.  (*See* ECF No. 44 at 7 n.3.)

Plaintiffs also complain that the Toyota Defendants did not provide a redaction log (Pls.' Mot. at 9), but, again, the Toyota Defendants produced what was produced in *Salas*—as agreed to by the parties and anticipated by this Court.  That production was made without a redaction log in *Salas*.  Nor do Plaintiffs cite any authority for the requirement that a relevance redaction log must be provided (or why they need one).  Requiring the Toyota Defendants to prepare a redaction log now also adds to the burdens the Court expected the parties to avoid when denying transfer.  Going forward, the Toyota Defendants are open to discussing a procedure with Plaintiffs for identifying the category of information being redacted as part of the redaction itself.  But that should not be required for a prior production, and, again shows why Plaintiffs' motion is premature.

Plaintiffs' argument that the Protective Order obviates the need for redactions also lacks merit.  (Pls.' Mot. at 11.)   As recognized in *Takata*, the redactions go to relevance not confidentiality.  Moreover, simply because there is a protective order and no competitor defendants are parties to this case does not lessen the propriety or importance of these redactions.  Irrelevant information here was appropriately redacted and Plaintiffs make no showing as to any need for such information in this litigation.  As such, the redactions should remain.

**D.    Plaintiffs' Novel Proposal For A Substantial Completion Deadline Is Unworkable And Unsupported By Law.**

Although Plaintiffs assert that substantial completion deadlines are "regularly included in scheduling orders" (Pls.' Mot. at 16), they do not cite a single case from this district or from a

court within the Eleventh Circuit for this proposition.   Plaintiffs' decisions are also entirely inapposite.  Plaintiffs have not identified any decision that granted a motion to compel—much less one without any discovery violation—to impose a substantial completion deadline for document productions.  (*Id.* at 16–17.)  Thus, Plaintiffs offer no basis for their unprecedented relief.

Plaintiffs' proposal fails for another reason:  it is unworkable.  Plaintiffs ignore that there cannot be a substantial completion deadline without resolution of (1) Plaintiffs' search term challenge; (2) custodians; and (3) whether TMS should have to re-review all *Salas* documents (and for what information).  As described above, Plaintiffs' proposed search terms are expected to generate millions of additional documents that will need to be reviewed for responsiveness and privilege.  Assuming 22 additional custodians, this would require 50 people working for 90 days in any ordinary environment—well beyond the April 10 deadline.  (Ex. B, ¶ 21.)  And we are not in an ordinary environment.  The COVID-19 pandemic already has disrupted work forces and it is unclear how (and for how long) it will further disrupt the usual course of discovery efforts.

Moreover, Plaintiffs seek substantial volumes of documents from TMC—which introduces additional burdens.  (*Id.* ¶ 24.)  Once finalized, search terms must be translated into Japanese and run against Japanese language documents.   Japanese uses both pictorial and phonographic characters, which exponentially grows those terms.  (*Id.*)  The review of Japanese language documents also requires more hours and is costlier.  (*Id.*)  All of these factors make Plaintiffs' proposed substantial completion date of April 10, 2020 unreasonable and unworkable.

IV.   <u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs' motion should be denied in its entirety.

Dated: March 17, 2020                    Respectfully submitted,

*s/ Brian M. Ercole*
Brian M. Ercole, FL Bar No. 102189
brian.ercole@morganlewis.com
Melissa M. Coates, FL Bar No. 111420
melissa.coates@morganlewis.com
Matthew Papkin, FL Bar No. 106565
matthew.papkin@morganlewis.com
Morgan, Lewis & Bockius LLP
200 South Biscayne Boulevard, Suite 5300
Miami, FL  33131-2339
Tel:  +1.305.415.3000
Fax: +1.305.415.3001

J. Gordon Cooney, Jr. (*pro hac vice* forthcoming)
gordon.cooney@morganlewis.com
Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA  19103-2921
Tel:  +1.215.963.4806
Fax:  +215.963.5001

David L. Schrader (*pro hac vice* forthcoming)
david.schrader@morganlewis.com
Lisa R. Weddle (admitted *pro hac vice*)
lisa.weddle@morganlewis.com
Morgan, Lewis & Bockius LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel:  +1.213.612.2500
Fax: +1.213.612.2501

*Counsel for Defendants Toyota Motor Corporation,*
*Toyota Motor Sales U.S.A., Inc., and Toyota*
*Manufacturing North America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Brian M. Ercole*
Brian M. Ercole
