UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 18-cv-22798-CIV-FAM

JAVIER CARDENAS, RODNEY BAKER,
and MICHELLE MONGE, individually and
on behalf of all others similarly situated,

    Plaintiffs,

    v.

TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR SALES, U.S.A., INC.,
TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA,
INC., and SOUTHEAST TOYOTA
DISTRIBUTORS, LLC,

    Defendants.
_____/

**PLAINTIFFS' MOTION TO EXCLUDE EXPERT OPINIONS, REPORT, AND
TESTIMONY OF DEFENDANTS' EXPERT SARAH BUTLER AND INCORPORATED
<u>MEMORANDUM OF LAW</u>**

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  BACKGROUND .............................................................................................................. 2

III. LEGAL STANDARD ...................................................................................................... 4

IV.  ARGUMENT ................................................................................................................... 5

    A.  The Court Should Exclude Butler's Opinions Because Her Survey Reflects a Patently Flawed Methodology and Is Unreliable ..................................................... 6

        1.  The Butler Survey Tests Whether Respondents Notice the "HVAC Disclosure" Language Buried in a Lengthy Review, Not Whether HVAC Odor Is Important To Them ............................................................................... 7

        2.  Butler Did Not Test a Disclosure About the HVAC Defect. .......................... 10

    B.  The Court Should Exclude Butler's Opinions Because They Will Not Assist The Trier Of Fact ................................................................................................. 11

V.   CONCLUSION .............................................................................................................. 12

i

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*1-800-Contacts, Inc. v. Lens.com, Inc.*,
  2010 WL 5186393 (D. Utah Dec. 15, 2010) .............................................................................. 7

*Allison v. McGhan Med. Corp.*,
  184 F.3d 1300 ....................................................................................................................... 5, 11

*AstraZeneca LP v. Tap Pharm. Prods., Inc.*,
  444 F. Supp. 2d 278 (D. Del. 2006) ........................................................................................ 11

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ..................................................................................................... 1, 4, 5, 11

*Daubert v. Merrell Dow Pharm., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ................................................................................................ 5, 11

*Hendrix ex rel. G.P. v. Evenflo Co.*,
  609 F.3d 1183 (11th Cir. 2010) ................................................................................................ 5

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ................................................................................................................... 5

*Hi Ltd. P'ship v. Winghouse of Fla., Inc.*,
  2004 WL 5486964 (M.D. Fla. Oct. 5, 2004) ............................................................................ 6

*McClain v. Metabolife Int'l, Inc.*,
  401 F.3d 1233 (11th Cir. 2005) ................................................................................................ 5

*McDowell v. Brown*,
  392 F.3d 1283 (11th Cir. 2004) ................................................................................................ 5

*Navelski v. Int'l Paper Co.*,
  244 F. Supp. 3d 1275 (N.D. Fla. 2017) .................................................................................... 5

*Nike, Inc. v. Sketchers U.S.A., Inc.*,
  No. 17-cv-08509 (C.D. Cal. Oct. 26, 2020), ECF No. 380 ...................................................... 9

*Port Everglades Launch Serv., Inc. v. M/Y Situations*,
  2010 WL 5392650 (S.D. Fla. Dec. 21, 2010) ........................................................................... 5

*Rink v. Cheminova, Inc.*,
  400 F.3d 1286 (11th Cir. 2005) ................................................................................................ 4

*Sabal Trail Transmission, LLC v. 13.386 Acres of Land in Lake Cty. Fla.*,
    2018 WL 8583439 (M.D. Fla. Aug. 13, 2018) ............................................................................6

*Superior Consulting Servs., Inc. v. Shaklee Corp.*,
    2018 WL 2087239 (M.D. Fla. May 4, 2018) ..............................................................................7

*United States v. Frazier*,
    387 F.3d 1244 (11th Cir. 2004) ..................................................................................................4

**Rules**

Federal Rule of Evidence 702 ................................................................................................ *passim*

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ("*Daubert*"*)*, Plaintiffs Javier Cardenas, Rodney Baker, and Michelle Monge ("Plaintiffs") respectfully move this Court for an order excluding the expert opinions, report, and testimony of Sarah Butler at any phase of trial and in any manner, including those proffered in connection with Defendants' Opposition to Plaintiffs' Motion for Class Certification and Defendants' Motions for Summary Judgment.

## I.   INTRODUCTION

In an attempt to rewrite history, the Toyota Defendants[1] proffer the Expert Report of Sarah Butler (the "Butler Report") (ECF No. 205-29, at Ex. A), wherein Toyota's expert, Sarah Butler, purports to have conducted a survey (the "Butler Survey") showing that consumers don't care about foul and noxious odors being emitted from their vehicles' heating, ventilation, and air conditioning system (the "HVAC system"). This not only defies common sense, and contradicts Defendants' own handling of the HVAC odor problem, but also finds no support in the Butler Survey and analysis.

First, as detailed in the Rebuttal Report of Steven P. Gaskin (Nov. 24, 2020) (the "Gaskin Rebuttal"), the Butler Survey merely addresses whether respondents ***noticed a few line reference*** to HVAC odor hidden inside a lengthy review—not whether having a vehicle free from HVAC odors mattered to respondents. Ex. 1, Gaskin Rebuttal at ¶¶ 14-23.  In fact, although Butler included hyperlinks in her survey providing the full HVAC disclosure she purports to study, ***not a single survey respondent*** noticed and clicked that hyperlink. Ex. 1, Gaskin Rebuttal at ¶ 21.

Second, although Butler contends that she was testing a disclosure about the HVAC Defect alleged by Plaintiffs, the "disclosure" does not track Plaintiffs' theory of liability.[2] Rather than disclosing that the Camry vehicles have an HVAC Defect, Butler advises respondents in the so-

---

[1] "Toyota Defendants" or "Toyota" means Toyota Motor Corporation ("TMC"), Toyota Motors Sales, U.S.A., Inc. ("TMS"), Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA"). Defendant Southeast Toyota Distributors, LLC ("SET," and collectively with Toyota, "Defendants") filed a Notice of Intent to Rely upon Affirmative Experts Disclosed by Co-Defendants (Oct. 20, 2020).

[2] As explained by Plaintiffs' expert Murat Okçuoğlu, the HVAC systems in Plaintiffs' Class Vehicles (which includes 2012-2014 model year non-hybrid Camry vehicles) have a defective design which "allows condensing water to accumulate and allows naturally present organic contaminants to be trapped, kept moist and cultivate organic matter such as microbes, bacteria, mold and fungus" (the "HVAC Defect" or "Defect"). Pls' Mot. for Class Certification, ECF No. 181, at Ex. 4 (Expert Report of Murat Okçuoğlu at 24 (Oct. 20, 2020)).

1

called "Disclosure Group" that "HVAC system odor has many causes"—thus incorporating language similar to the language Defendants disseminated through Technical Service Bulletins ("TSBs"), which Plaintiffs contend is false and misleading. Butler Report at ¶ 38.

Accordingly, not only are Butler's findings about the importance of HVAC odor wrong, but the Butler Survey is so flawed that her opinions must be excluded under Federal Rule of Evidence 702 ("Rule 702").

## II.   BACKGROUND

HVAC odor was unquestionably a major issue that affected Defendants' customers, sales, and bottom line. By July 2013, Toyota ranked HVAC odors "GR3" on its global ranking scale of GR1 through GR6, indicating that it was one of the top issues Toyota faced globally. Ex. 2, TOY-CAREDENAS-00023849-50; Ex. 3, Suzuki Dep. Tr. at 31:16-32:8. Toyota also implemented various so-called "countermeasures," such as "Komori Odor Logic" which re-directed putrid air from the HVAC system to occupants' feet, in an ill-conceived effort to hide the HVAC Defect and resulting odor. Ex. 4, TMC 30(b)(6) Dep. Tr. at 124:9-12; Ex. 5, at TOY-CARDENAS-00051747. Recognizing the unjust nature of passing the costs to address HVAC odor onto customers, Toyota's employees acknowledged that it is "challenging to explain why to get what a customer should expect as a standard condition for the air conditioner (no odor) we charge more" when having an HVAC system free from HVAC odor "is a basic requirement of the system." Ex. 6, at TOY-CARDENAS-00066798. *See also* Ex. 7, at TOY-CARDENAS-00020886 ("[C]ustomers see the odor issue as design related. Convincing them that they should spend more money [charcoal filter] to 'fix' an issue the vehicle never should have had is very difficult."); Ex. 8, at TOY-CARDENAS-00066941 ("I am still struggling why the customer needs to pay for this"). Instead of addressing customer concerns, Toyota engaged in a strategy of denial, distributing false and misleading TSBs and other information as part of a concerted effort to convince Camry drivers that the odor in their vehicles was "normal" so that the company could refuse to cover repairs under warranty. Ex. 9, at SET-CARDENAS00005482; Ex. 10, TOY-CAREDENAS-00084372-73; Ex. 11, TOY-CARDENAS-00009790-91; Ex. 12, at TOY-CARDENAS-00021839; Ex. 13, TOY-CARDENAS-00095511-14.

Faced with these facts, Toyota served the Butler Report, wherein Butler purports "to evaluate how potential consumers would respond to a disclosure from the Toyota Defendants regarding the potential for odor as a result of an HVAC design defect when considering the

2

purchase of a Putative Class Vehicle." Butler Report at ¶ 8. Specifically, Butler contends that she tested how consumers would respond to a pre-purchase disclosure that the HVAC system of a Toyota Camry "may emit a musty, damp, and/or sour odor and that this odor may be caused by a design which allows condensing water to accumulate and organic materials to become trapped in the system[,]" that she then evaluated "how, if at all, this information might affect consumers' interest in a Putative Class Vehicle and whether such information would be important or significant to the purchase decision-making of all consumers, as Plaintiffs allege in their Complaint." *Id.*

As described in the Report, the Butler Survey included 412 respondents from across the United States divided into two groups: (1) a "Non-Disclosure Group" consisting of 207 individuals who were shown Kelley Blue Book ("KBB") reviews of certain 2020 model Toyota Camry and Toyota Camry Hybrid vehicles; and (2) a "Disclosure Group" consisting of 205 individuals who were shown a modified version of the same KBB reviews except that, for this group, the KBB reviews included an additional "disclosure" stating: "Toyota has disclosed that the HVAC system in Camry and Camry HV models may emit a musty, damp, and/or sour odor. HVAC system odor has many causes, and may be caused by a design that allows condensing water to accumulate and for naturally occurring organic materials to be trapped in the system." *Id.* at ¶¶ 38, 51. The "disclosure" also contained a hyperlink which, if clicked, led to a pop-up screen with additional information regarding the HVAC odor. *Id.* at ¶ 39. However, the "Disclosure Group" is a misnomer given that Butler failed to ensure that those in the group ***actually viewed*** the disclosure—invalidating the survey.

After being presented with the KBB reviews, qualified respondents in both the Disclosure Group and Non-Disclosure group were asked to answer a series of broadly worded questions:

> Q1. What information in this review, if any, is important to you?
> Q2. Anything else?
> Q3. Is there any information in this review that <u>positively</u> affects your perception of this vehicle?
>   1. Yes
>   2. No
>   3. Don't know / unsure
> Q4. [IF Q3=YES] What information in this review <u>positively</u> affects your perception of this vehicle?
> Q5. Is there any information in this review that <u>negatively</u> affects your perception of this vehicle?
>   1. Yes
>   2. No

>>>3. Don't know / unsure
>>Q6. [IF Q5=YES] What information in this review negatively affects your perception of this vehicle?
>>Q7. Based on the information in this review, how interested would you be in purchasing this vehicle?
>>>1. Very likely
>>>2. Somewhat likely
>>>3. Neither likely nor unlikely
>>>4. Somewhat unlikely
>>>5. Very unlikely
>>>6. Don't know / unsure

*Id.* at ¶¶ 46-49, Ex. D. Butler then compared the responses to these questions entered by the purported "Disclosure Group" with the responses entered by the "Non-Disclosure Group" and concluded that the information contained in the HVAC disclosure "is not important to the majority of consumers and does not adversely affect respondents' perceptions of the Putative Class Vehicles." *Id.* at ¶ 10.

However, the Butler Survey is completely invalid due to serious flaws that impeded her ability to test her theories. Thus, her conclusions that "[t]he degree to which any HVAC Disclosure would adversely impact a consumer's view of the Putative Class Vehicles varies by consumer" and that "the HVAC disclosure is not important to the majority of consumers" are unreliable and should be excluded. *Id.*

### III. LEGAL STANDARD

Federal Rule of Evidence 702, as explained by *Daubert* and its progeny, governs the admissibility of expert testimony. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). Under the U.S. Supreme Court's decision in *Daubert*, expert testimony is reliable and relevant, and therefore admissible, only when the following criteria are met:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Rink*, 400 F.3d at 1291-92. The Eleventh Circuit refers to these criteria separately as "qualification, reliability, and helpfulness." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

To meet the qualification requirement, a party must show that its expert has sufficient "knowledge, skill, experience, training, or education" to form a reliable opinion about an issue that is before the court. *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1193 (11th Cir. 2010) (quoting Fed. R. Evid. 702). To meet the reliability requirement, "an expert's opinion must be based on scientifically valid principles, reasoning, and methodology that are properly applied to the facts at issue." *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1286 (N.D. Fla. 2017) (citing *Frazier*, 387 F.3d at 1261-62). In other words, an expert's opinion must be based on "scientific knowledge;" opinions based on unsubstantiated generalizations or opinions not "derived by the scientific method" must be excluded. *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*")).

The helpfulness requirement or "relevancy portion" of a court's *Daubert* analysis is often referred to as "fit." *See Port Everglades Launch Serv., Inc. v. M/Y Situations*, 2010 WL 5392650, at *2 (S.D. Fla. Dec. 21, 2010). Expert testimony is relevant only when it "logically advances a material aspect of [the proposing party's] case" and therefore "fits" the disputed facts. *McDowell v. Brown*, 392 F.3d 1283, 1298-99 (11th Cir. 2004) (quoting *Daubert*, 509 U.S. at 591); *see also Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 ("[T]he evidence must have a valid scientific connection to the disputed facts in the case."). Expert testimony does not "fit" when there is "too great an analytical gap" between the facts and the proffered opinion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146-47 (1997); *see also Daubert*, 509 U.S. at 591-92 ("[S]cientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes. . . . Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.").

The proffering party has the burden on a motion to exclude to show that these requirements are met. *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238, n.2 (11th Cir. 2005).

## IV.   ARGUMENT

The Butler Survey was designed to produce Toyota's desired result and must be excluded under Rule 702. While certain flaws in Butler's report evidence that the report should be given little weight—such as Butler's use of a third party review site as a source of the disclosure (rather than direct communications from Toyota)[3]—other flaws in her survey are so profound that they

---

[3] Ex. 1, Gaskin Rebuttal at ¶¶ 24-25.

5

completely undermine the validity of the Butler Survey and warrant the exclusion of the Butler Report and the opinions and conclusions expressed therein.

Significantly, the Butler Survey improperly hides the "HVAC Disclosure" in a lengthy product review and, even where respondents actually noticed and read the purported "HVAC Disclosure" language, fails to disclose the HVAC Defect alleged by Plaintiffs.[4] These flaws invalidate the Butler Survey, its purported results, and Butler's conclusions. Accordingly, Butler's opinions are unreliable, do not assist the trier of fact, and should be precluded under Rule 702.

### A. The Court Should Exclude Butler's Opinions Because Her Survey Reflects a Patently Flawed Methodology and Is Unreliable

Survey evidence is inadmissible where the survey "reflects a patently flawed methodology striking at the very heart of the survey's validity." *Hi Ltd. P'ship v. Winghouse of Fla., Inc.*, 2004 WL 5486964, at *8 (M.D. Fla. Oct. 5, 2004). Such deficiencies "are fundamental; they do not merely affect the weight of the survey." *Id*. See also *Sabal Trail Transmission, LLC v. 13.386 Acres of Land in Lake Cty. Fla.*, 2018 WL 8583439, at *8 (M.D. Fla. Aug. 13, 2018). With respect to the Butler Survey, that is certainly the case.

Butler's conclusions are completely unreliable due to serious flaws in her survey methodology and her interpretation of the results. As Gaskin explains:

> The fundamental flaw in Ms. Butler's survey is that she has failed to rule out a highly likely alternative cause (or "confounding factor") for the effects observed; namely, that ***only a small minority of the respondents likely noticed or read the HVAC disclosure, and none of the respondents read the full HVAC Disclosure***, which was only accessible by clicking a hyperlink and otherwise formed a very small and inconspicuous part of a very long review.

Ex. 1, Gaskin Rebuttal at ¶ 14. "Naturally, if respondents did not notice or read the HVAC Disclosure, it could have no effect on their opinions" and "Ms. Butler's survey results are entirely consistent with this alternative cause." *Id*. Moreover, even if a respondent initially noticed the HVAC disclosure, it is far from guaranteed that the respondent would remember that information by the time the survey respondent answered the survey questions.[5] *Id.* at ¶ 21. As in other cases

---

[4] In fact, Butler even failed to include the HVAC disclosure "above the fold" on the first viewable webpage as she had intended. Ex. 1, Gaskin Rebuttal at ¶¶ 19-20. Butler also used impossibly small font in the thumbnails shown to respondents throughout the survey. *Id.* at ¶ 23.

[5] Moreover, when respondents provided answers that could conceivably be referring to different things, Butler interpreted the respondents' answers to favor Toyota's defense, rather than designing the study to eliminate possible ambiguities. For example, when a respondent indicated

where survey evidence has been excluded, "[i]t is the very substance−not the format−of the survey questions that renders the survey unreliable." *Superior Consulting Servs., Inc. v. Shaklee Corp.*, 2018 WL 2087239, at *3 (M.D. Fla. May 4, 2018).

### 1. The Butler Survey Tests Whether Respondents Notice the "HVAC Disclosure" Language Buried in a Lengthy Review, Not Whether the HVAC Defect Is Important To Them

Butler's survey does nothing more than confirm that the vast majority of respondents never **noticed the disclosure** about HVAC odor that was buried in a lengthy product review. It does not test, as Butler claims, the *importance of* the HVAC disclosure to respondents' purchasing decisions. That is because those who never saw the disclosure could not have been affected by its content. As Gaskin explains:

> The fundamental flaw in Ms. Butler's survey is that she has failed to rule out a highly likely alternative cause (or "confounding factor") for the effects observed; namely, that ***only a small minority of the respondents likely noticed or read the HVAC disclosure, and none of the respondents read the full HVAC Disclosure***, which was only accessible by clicking a hyperlink and otherwise formed a very small and inconspicuous part of a very long review.

Ex. 1, Gaskin Rebuttal at ¶ 14.

While Butler includes screenshots in the body of her report implying that all respondents in the Disclosure Group were clearly shown the HVAC disclosure (*see* Butler Report at ¶ 40), the HVAC disclosure was actually part of a much longer KBB review spanning several pages. Ex. 1, Gaskin Rebuttal ¶ 21. For context, a printout of the full review from Exhibit F is below, with the tape dispenser included to give a sense of scale.

---

that the vehicle's "Cons" were important to them, Butler interpreted that result as indicating that HVAC odor was not an important consideration for the consumer *even though the HVAC odor language appeared under the "Cons" section in the survey*. Ex. 1, Gaskin Rebuttal at ¶ 27 ("In Ms. Butler's analysis, if somebody just listed 'pros and cons,' they would not be counted as somebody who found the HVAC odor to be important to them, because they may have been referencing something else in the cons, as opposed to necessarily the HVAC odor. Had Ms. Butler been interested in accurately and thoroughly assessing what was important to respondents, she would have probed respondents to answer specifically which 'pros and cons' in Q1-Q2 they found to be important."). "[I]f the crucial question is sufficiently ambiguous or unclear, it may be the basis for rejecting the survey." *1-800-Contacts, Inc. v. Lens.com, Inc.*, 2010 WL 5186393, at *7 (D. Utah Dec. 15, 2010) (quoting Shari Seidman Diamond, *Reference Guide on Survey Research*, Reference Manual on Scientific Evidence, at 248 (Fed. Judicial Ctr. 2d ed. 2000)).



*Id.* In fact, when the full KBB review shown to survey respondents is printed out, the KBB review is nearly 10 feet long, with the HVAC disclosure occupying about 1/444th (less than 0.3%) of the entire review's surface area, as seen by the respondents in the survey. *Id.* Respondents were not

required to read the full review or the HVAC disclosure, but rather were only required to stay on the screen containing this lengthy KBB review for just *five seconds* before being asked what in the review was important to them. *Id.* With so much information in the KBB review, "[i]t is by no means guaranteed that a typical survey respondent would notice and remember the third out of three 'cons,' where the link to the HVAC Disclosure appears, by the time he/she has reached the bottom of the review." *Id.*

Indeed, a comparison of the survey results on follow-up questioning Butler included at the end of her survey undermines Butler's conclusion. Specifically, at the end of the survey, Butler asks, "Did the product description you reviewed include information about any of the following features," and then lists a number of attributes such as HVAC Systems, Fuel Economy, Horsepower, Interior Style, Infotainment and Exterior Style. *Id.* at ¶ 30. Noticeably, Butler omits any mention this portion of her survey in the body of her Report. *Id.* This is for good reason, as 49% of the respondents in the "Non-Disclosure Group"—the test population who received *no information* about HVAC systems—responded that the product description they reviewed *included information* about HVAC systems. *Id.* at ¶¶ 30-32. The fact that survey participants responded in this manner not only invalidates the results of this question for both the Disclosure and Non-Disclosure groups, as it shows the responses to this question are unreliable (and presumably the reason why Butler did not address this data in her report), but also shows that the survey itself included so much "noise" that it confused survey respondents and led to unreliable results. *Id.* at ¶¶ 32-37.

Indeed, this is not the first time Butler has designed a study that was so flawed that it warranted exclusion. In *Nike, Inc. v. Sketchers U.S.A., Inc.*, Butler conducted a similar "test and control" survey as she employed here, where she had respondents review images of two nearly identical products and then purported to offer an opinion on the importance of certain attributes based on whether or not the respondents noticed the attributes. Order at 29-30, No. 17-cv-08509 (C.D. Cal. Oct. 26, 2020), ECF No. 380. There, Butler found no change in customer preference between the test and control groups because, like here, the information in the test and control groups was nearly identical and it was unlikely that the respondents actually noticed the difference Butler was purporting to study. *Id.* at 28-30. The Court excluded Butler's testimony, finding that "[t]here is an insufficient analytical link between prominence and the difference in preference measured by Butler's study." *Id.* at 30. The same result is warranted here, as there an insufficient

9

analytical link between survey respondents' preference for a vehicle without HVAC odor and the responses Butler collected in her survey. Accordingly, Plaintiffs respectfully request that the Court exclude the Butler Report and the opinions expressed therein under Rule 702.

### 2. Butler Did Not Test a Disclosure About the HVAC Defect.

Butler also misleadingly suggests that her survey assesses the "degree to which *any HVAC* Disclosure would adversely impact a consumer's view of the Putative Class Vehicles." Butler Report at ¶ 10 (emphasis added). This, by Butler's own admission, is false. As Butler conceded at her deposition, she only tested *a single* HVAC disclosure—the specific HVAC disclosure language she chose to include in her survey. Ex. 14, Butler Dep. Tr. at 78:8-79:9. This purported "disclosure" language is woefully deficient, as it more closely tracks Toyota's defenses than Plaintiffs' theory of liability and none of the respondents evens saw the full HVAC disclosure language Butler purports to test.

First, Butler's survey did not disclose the HVAC Defect. Rather than disclose that the HVAC systems in the Camry Vehicles contain a defect leading to accumulation of moisture, microbial growth and malodors, the so-called "disclosure" Butler included in the "Cons" section of the survey states: "HVAC system odor *has many causes*, and may be caused by a design that allows condensing water to accumulate and for naturally occurring organic materials to be trapped in the system." Butler Report at ¶ 38 (emphasis added). As Gaskin explains:

> This additional language suggests that the HVAC odor in the Camry could be naturally occurring and not directly caused as a result of the design defect that Plaintiffs allege. By informing survey respondents that "HVAC system odor has many causes," Ms. Butler suggests to survey respondents that that HVAC odor may not be caused by a design defect, which thus does not match Plaintiffs' theory of liability.

Ex. 1, Gaskin Rebuttal at ¶ 12. As such, if anything, the "disclosure" language in the Butler Survey more closely matches Toyota's TSB language, which Plaintiffs contend is false and misleading. Indeed, at her deposition, Butler conceded that she based the "disclosure" language on the very same TSBs that Plaintiffs allege are affirmative misrepresentations. Ex. 14, Butler Dep. Tr. at 80:21-81:3; 128:17-129:10; 138:13-139:4.

Second, parsing Butler's data reveals that *zero respondents* saw the full HVAC disclosure language that Butler claims to study. As described above, in addition to the language about HVAC odor included in the "Cons" section, Butler's HVAC disclosure also included a hyperlink which,

10

if clicked, led to a pop-up screen with the full HVAC disclosure language. This full disclosure language was not available if the respondent did not click the hyperlink. However, what Butler completely ignores in her report is that, of the 205 respondents in the Disclosure Group who were shown the KBB review with the purported HVAC disclosure, ***zero respondents*** saw and clicked the hyperlink to access this additional information. Ex. 1, Gaskin Rebuttal ¶¶ 12, 14, 16, 21.

### B. The Court Should Exclude Butler's Opinions Because They Will Not Assist The Trier Of Fact

Even reliable expert testimony will be excluded if it does not assist the factfinder in determining material factual questions relevant to the litigation. Under *Daubert*'s relevance requirement, the Court must "ensure that the proposed expert testimony is 'relevant to the task at hand,' . . . i.e., that it logically advances a material aspect of the proposing party's case." *Daubert II*, 43 F.3d at 1315. Thus, the evidence must have a valid scientific connection to the disputed facts in the case. *Daubert*, 509 U.S. at 591-92, ("Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility"). *See also Allison*, 184 F.3d at 1312.

In addition to being unreliable, Butler designed and implemented her survey in a way that provides no useful information to the trier of fact. As described above, the Butler Report does not answer any questions relevant to this litigation. The survey does not answer whether potential consumers of the Class Vehicles would consider a disclosure of the HVAC Defect material to their purchasing decisions; rather, Butler's survey merely assesses whether respondents noticed the disclosure buried in a very, very long KBB review. Because of the way Butler intentionally designed this survey to drive a particular result, and failed to ensure that respondents even noticed the disclosure or read the additional information contained in the hyperlink, the respondents' answers to the survey questions are so lacking in reliability that they are effectively meaningless. *AstraZeneca LP v. Tap Pharm. Prods., Inc.*, 444 F. Supp. 2d 278, 292-293 (D. Del. 2006) (excluding expert opinion testimony where "responses are so lacking in reliability as to be effectively meaningless" such that "[t]here is no evidence on which the jury could draw an inference" regarding facts relevant to the litigation).

Accordingly, because Butler's study fails of its essential purpose, her opinions will not assist the trier of fact and must be excluded as irrelevant.

11

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant their Motion to Exclude Defendants' expert Sarah Butler.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Counsel for Plaintiffs have conferred with Defendants' counsel who indicated Defendants' opposition to the relief requested herein.

Date: January 22, 2021

Respectfully submitted,

**PODHURST ORSECK, P.A.**

*/s/ Peter Prieto*
Peter Prieto (FBN 501492)
pprieto@podhurst.com
John Gravante, III (FBN 617113)
jgravante@podhurst.com
Matthew Weinshall (FBN 84783)
mweinshall@podhurst.com
Alissa Del Riego (FBN 99742)
adelriego@podhurst.com
SunTrust International Center
One S.E. 3rd Avenue, Suite 2300
Miami, FL 33131
Tel.: (305) 358-2800/Fax: (305)358-2382

**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
Joseph H. Meltzer
jmeltzer@ktmc.com
Melissa L. Troutner
mtroutner@ktmc.com
Tyler S. Graden
tgraden@ktmc.com
Natalie Lesser
nlesser@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Attorneys for Plaintiffs and the
Proposed Classes*

12

**KIESEL LAW LLP**
Paul R. Kiesel
kiesel@kiesel.law
Jeffrey A. Koncius
koncius@kiesel.law
Nicole Ramirez
ramirez@kiesel.law
8648 Wilshire Boulevard Beverly Hills,
CA 90211-2910
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

*Additional Counsel for Plaintiffs and the Proposed Classes*

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on January 22, 2021, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

                                       */s/ Peter Prieto*
                                       Peter Prieto