**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 18-cv-22798-CIV-FAM**

JAVIER CARDENAS, RODNEY BAKER,
and MICHELLE MONGE, individually and
on behalf of all others similarly situated,

      Plaintiffs,

      v.

TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR SALES, U.S.A., INC.,
TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA,
INC., and SOUTHEAST TOYOTA
DISTRIBUTORS, LLC,

      Defendants.

_____/

**PLAINTIFFS' OMNIBUS MOTION FOR ORDERS IN LIMINE**
**AND INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .................................................................................................. 1

II.   COMMON LEGAL STANDARDS ...................................................................... 2

III.  ARGUMENT ....................................................................................................... 2

    Plaintiffs' MIL No. 1: Plaintiffs' Financial Condition ....................................... 2

    Plaintiffs' MIL No. 2: Plaintiffs' Counsel's Involvement in Other Litigation or Fees ...... 3

    Plaintiffs' MIL No. 3: Unavailable Witnesses.................................................... 4

    Plaintiffs' MIL No. 4: Evidence Concerning Absent Class Members and Non-Class Members ............................................................................................ 5

    Plaintiffs' MIL No. 5: Sequestering Fact Witnesses .......................................... 7

    Plaintiffs' MIL No. 6: Evidence that Contradicts Rule 30(b)(6) Testimony ..................... 8

    Plaintiffs' MIL No. 7: Pretrial Motions .............................................................. 9

    Plaintiffs' MIL No. 8: Claims against and Dealings with Non-Parties ........................... 10

    Plaintiffs' MIL No. 9: Use of DENSO HVAC Systems in Other Vehicles ..................... 11

    Plaintiffs' MIL No. 10: Other HVAC Litigation Against Toyota ................................... 11

    Plaintiffs' MIL No. 11: Interior or Exterior Condition of Plaintiffs' Vehicles ............... 13

    Plaintiffs' MIL No. 12: Argument that HVAC Odor Is an "Industry-Wide" Problem Present in All Vehicles.............................................................. 15

    Plaintiffs' MIL No. 13: EPA Report and Validity of MSQPCR ..................................... 16

    Plaintiffs' MIL No. 14: References to Testing Performed on Plaintiffs' Vehicles by Anyone Other than Parkhurst or Hicks....................................... 18

IV.   CONCLUSION ................................................................................................... 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Anderson v. Brown Indus.*,
    2014 WL 12521732 (N.D. Ga. Mar. 14, 2014)....................................................................10

*Baker v. SeaWorld Ent., Inc.*,
    2020 WL 241441 (S.D. Cal. Jan. 16, 2020).........................................................................6

*Baker v. SeaWorld Ent., Inc.*,
    No. 14-cv-2129 (S.D. Cal. Jan. 21, 2020), ECF No. 508 ......................................................6

*Belen Jesuit Preparatory Sch., Inc. v. Sportswear, Inc.*,
    2016 WL 4718161 (S.D. Fla. Apr. 22, 2016) ............................................................9

*Buchwald v. Renco Grp., Inc.*,
    2014 WL 4207113 (S.D.N.Y Aug. 25, 2014).....................................................................4, 5

*Cardenas v. Toyota Motor Corp.*,
    2019 WL 4705843 (S.D. Fla. Sept. 26, 2019) .........................................................13

*Compaq Comput. Corp. v. Ergonome Inc.*,
    387 F.3d 403 (5th Cir. 2004) ...............................................................................12

*Craig Air Ctr., Inc. v. City of Jacksonville*,
    2012 WL 3139547 (M.D. Fla. Aug. 1, 2012) ............................................................8

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)....................................................................................18

*DeBose v. Univ. of S. Fla. Bd. of Tr.*,
    2018 WL 8919981 (M.D. Fla. Sept. 9, 2018) ............................................................9

*Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*,
    2019 WL 3307850 (W.D. Va. July 22, 2019)..............................................................4

*Est. of Thompson v. Kawasaki Heavy Indus., Ltd.*,
    291 F.R.D. 297 (N.D. Iowa 2013) ..........................................................................9

*Evans v. Mathis Funeral Home, Inc.*,
    996 F.2d 266 (11th Cir. 1993) .............................................................................15

*Gordils v. Ocean Drive Limousines, Inc.*,
    2014 WL 4954141 (S.D. Fla. Oct. 2, 2014)................................................................3

*Grace & Naeem Uddin, Inc. v. N. Broward Hosp. Dist.*,
    2013 WL 6328582 (S.D. Fla. Dec. 5, 2013) ...................................................................17

*Hernandez v. Crown Equip. Corp.*,
    2015 WL 4067695 (M.D. Ga. July 2, 2015) ...................................................................16

*In re Homestore.com, Inc.*,
    2011 WL 291176 (C.D. Cal. Jan. 25, 2011) ..................................................................3, 4

*Iorio v. Allianz Life Ins. Co. of N. Am.*,
    2009 WL 3415689 (S.D. Cal. Oct. 21, 2009) ...................................................................5

*Jablonski v. St. Paul Fire & Marine Ins. Co.*,
    2009 WL 2252094 (M.D. Fla. July 24, 2009) ................................................................12

*King v. Cath. Charities of Nw. Fla., Inc.*,
    2018 WL 3848819 (N.D. Fla. Aug. 12, 2018) ..................................................................9

*King v. Cessna Aircraft Co.*,
    2010 WL 1980861 (S.D. Fla. May 18, 2010) .................................................................15

*Luce v. United States*,
    469 U.S. 38 (1984) ...........................................................................................................2

*Miller ex rel. Miller v. Ford Motor Co.*,
    2004 WL 4054843 (M.D. Fla. July 22, 2004) .................................................................3

*Pfizer Inc. v. Teva Pharm. USA, Inc.*,
    461 F. Supp. 2d 271 (D.N.J. 2006) ...............................................................................18

*Plantation Pipeline Co. v. Cont'l Cas. Co.*,
    2008 WL 4737163 (N.D. Ga. July 31, 2008).................................................................11

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    2006 WL 2724879 (D. Del. Sept. 20, 2006) ...................................................................3

*QBE Ins. Corp. v. Jorda Enters., Inc.*,
    277 F.R.D. 676 (S.D. Fla. 2012) ..................................................................................8, 9

*R.B. Matthews v. Transamerica Transp. Servs., Inc.*,
    945 F.2d 269 (9th Cir. 1991) .......................................................................................4, 5

*Rainey v. Am. Forest & Paper Ass'n*,
    26 F. Supp. 2d 82 (D.D.C. 1998) ....................................................................................9

*Riley v. Ford Motor Co.*,
    2011 WL 3273592 (S.D. Miss. July 29, 2011) ...............................................................4

*Salinero v. Johnson & Johnson*,
  2019 WL 7753445 (S.D. Fla. Sept. 25, 2019) ......................................................................12

*Sampson v. Carnival Corp.*,
  2016 WL 11547653 (S.D. Fla. Dec. 9, 2016) ...........................................................................3

*Sanderson v. Winner*,
  507 F.2d 477 (10th Cir. 1974) ..................................................................................................3

*Scott v. Hess Retail Operations, LLC*,
  2015 WL 4602605 (M.D. Fla. July 29, 2015) ...........................................................................3

*Slantis v. Capozzi & Assoc., P.C.*,
  2010 WL 3122868 (M.D. Pa. Aug. 9, 2010) .............................................................................3

*Smith v. Cnty. of Riverside*,
  2018 WL 7500278 (C.D. Cal. Nov. 14, 2018) ..........................................................................4

*Soto v. Geico Indem. Co.*,
  2014 WL 3644247 (M.D. Fla. July 21, 2014) ...........................................................................2

*Stern v. NCL Bah. Ltd.*,
  2020 WL 6822979 (S.D. Fla. Sept. 23, 2020) (Louis, J.) .........................................................2

*Sugar Ass'n, Inc. v. McNeil-PPC, Inc.*,
  2008 WL 4755611 (C.D. Cal. Jan. 7, 2008) ...........................................................................12

*In re Terazosin Hydrochloride Antitrust Litig.*,
  220 F.R.D. 672 (S.D. Fla. 2004) ...............................................................................................6

*United States v. Frazier*,
  387 F.3d 1244 (11th Cir. 2004) ...............................................................................................14

*United States v. Ubieta*,
  630 F. App'x 964 (11th Cir. 2015) ...........................................................................................7

**Rules**

Fed. R. Civ. P. 30(b)(6).............................................................................................................8, 9

Fed. R. Civ. P. 45(c) .......................................................................................................................4

Fed. R. Evid. 103 ............................................................................................................................2

Fed. R. Evid. 104 ............................................................................................................................2

Fed. R. Evid. 401 ...................................................................................................................*passim*

Fed. R. Evid. 402 ...................................................................................................................*passim*

Fed. R. Evid. 403 ................................................................................................ *passim*

Fed. R. Evid. 611 .................................................................................................... 4, 5

Fed. R. Evid. 615 .................................................................................................... 7, 8

## I.     INTRODUCTION[1]

Pursuant to the Court's Order of Continuance and Order Revising Pretrial Deadlines (ECF No. 96), Plaintiffs Javier Cardenas, Rodney Baker, and Michelle Monge (collectively, "Plaintiffs"), respectfully move the Court for an Order granting 14 Motions in Limine ("MIL"), as set forth below, with respect to various anticipated arguments or pieces of evidence at the upcoming trial. Plaintiffs seek to preclude Defendants Toyota Motor Corporation ("TMC"), Toyota Motors Sales, U.S.A., Inc. ("TMS"), and Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") (collectively "Toyota" or the "Toyota Defendants"), and Defendant Southeast Toyota Distributors, LLC ("SET," and collectively with Toyota, "Defendants"), their counsel, experts, and any and all of their corporate representatives and witnesses from offering at trial information or evidence in any form questioning, contradicting or negatively referencing the matters set forth in the MILs and from presenting to the jury in any manner, whether in voir dire, opening statements, questions to witnesses, objections, closing arguments, or otherwise, any of the information set forth in the MILs.

Plaintiffs further move the Court to order attorneys for Defendants to inform and counsel their experts, clients, and witnesses not to volunteer, inject, disclose, state, or mention to the jury any of the matters set forth below until specifically questioned thereon after a prior ruling by the Court.

The matters set out below would be inadmissible for any purpose on proper and timely objection because they (i) have no bearing on the issues in this case or the rights of the parties to this suit, (ii) would be inadmissible pursuant to the Federal Rules of Evidence, and/or (iii) would be unsupported by any evidence. Permitting interrogation of witnesses, comments to jurors or prospective jurors, or offers of evidence concerning any of the matters set forth below would prejudice the jury, and sustaining objections to such questions, statements, or evidence introduced by counsel or witness will not prevent prejudice, but will reinforce the development of questionable evidence. If any of these matters are brought to the attention of the jury or jury panel, the jury or jury panel would be tainted and Plaintiffs would be compelled to move for a mistrial.

In accordance with the Federal Rules of Evidence, and for the reasons set forth below, Plaintiffs move to bar argument and evidence as set forth in paragraphs 1-xx below.

---

[1] Unless otherwise indicated, all internal citations and quotations are omitted and all emphases are added.

1

## II.      COMMON LEGAL STANDARDS

"A motion in limine presents a trial court with pretrial issues regarding admissibility of evidence that a party is likely to present at trial." *Soto v. Geico Indem. Co.*, 2014 WL 3644247, at *1 (M.D. Fla. July 21, 2014). "The purpose of a motion *in limine* is to give the court notice of the movant's intent in order to avoid the introduction of damaging evidence, which could affect the fairness of the trial." *Stern v. NCL Bah. Ltd.*, 2020 WL 6822979, at *1 (S.D. Fla. Sept. 23, 2020) (Louis, J.). Indeed, under Federal Rule of Evidence 103(d), this Court has a duty—to the extent practicable—"[to] conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." Fed. R. Evid. 103(d). This Court has authority to adjudicate motions in limine pursuant to its "inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

Certain of the Federal Rules of Evidence are particularly relevant to the instant motions. Under Rule 104, the Court "must decide any preliminary question[s]" about, among other things, the admissibility of evidence. Fed. R. Evid. 104(a). "In so deciding, the [C]ourt is not bound by evidence rules, except those on privilege." *Id.* Under Rule 402, only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make a fact . . . of consequence in determining the action . . . more or less probable than it would be without the evidence[.]" Fed. R. Evid. 401. However, even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. A matter is particularly suited for an order in limine when a limiting instruction would likely prove ineffective. *See* Fed. R. Evid. 403, advisory committee's note on proposed rules. Under these standards, and those cited below, Plaintiffs respectfully request the Court grant the following motions in limine.

## III.     ARGUMENT

**Plaintiffs' MIL No. 1: Plaintiffs' Financial Condition.** Plaintiffs move to preclude Defendants from presenting any testimony, documents, evidence, argument, or referencing Plaintiffs' financial conditions. Such reference is irrelevant, or if relevant, any such relevance would be outweighed by the prejudice and confusion it would cause the jury. *See* Fed. R. Evid. 402, 403.

"The general rule is that, during trial, no reference should be made to the wealth or poverty of a party, nor should the financial status of one party be contrasted with the other's." *Sampson v. Carnival Corp.*, 2016 WL 11547653, at *1 (S.D. Fla. Dec. 9, 2016). Here, Plaintiffs' financial conditions are clearly irrelevant to their claims—namely, whether Defendants misrepresented and fraudulently concealed the HVAC Defect and whether Plaintiffs were injured as a result. *See, e.g.*, *Sanderson v. Winner*, 507 F.2d 477, 479-80 (10th Cir. 1974); *Slantis v. Capozzi & Assoc., P.C.*, 2010 WL 3122868, at *3 (M.D. Pa. Aug. 9, 2010) (finding evidence of plaintiff's financial obligations irrelevant); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2006 WL 2724879, at *6-7 (D. Del. Sept. 20, 2006) (evidence of plaintiff's earnings irrelevant); *In re Homestore.com, Inc.*, 2011 WL 291176, at *1 (C.D. Cal. Jan. 25, 2011) ("Evidence of a party's financial condition is generally not relevant and can be unduly prejudicial, as it can distract the jury from the real issues in the case.").

Accordingly, Defendants should be prevented from presenting any testimony, documents, evidence, arguments, or referencing Plaintiffs' financial condition. *See* Fed. R. Evid. 402, 403.

**Plaintiffs' MIL No. 2**: **Plaintiffs' Counsel's Involvement in Other Litigation or Fees.** Plaintiffs move to preclude Defendants from presenting any testimony, documents, evidence, argument, or referencing other litigation involving Plaintiffs' counsel, or to Plaintiffs' counsel's fee arrangements in this or any other litigation. Such reference is irrelevant, or if relevant, any such relevance would be outweighed by the prejudice and confusion it would cause the jury. *See* Fed. R. Evid. 402, 403.

Attorneys' fees and costs are exclusively post-trial matters and, if presented at trial, may cause confusion to the jury. Indeed, "there is no legal basis for referring to attorneys' fees and costs at trial." *Gordils v. Ocean Drive Limousines, Inc.*, 2014 WL 4954141, at *1 (S.D. Fla. Oct. 2, 2014) (granting plaintiff's motion in limine requesting exclusion of referring to attorneys' fees and costs during trial). Further, evidence of Plaintiffs' counsel's fee arrangement in this or any other litigation is also irrelevant. *See Miller ex rel. Miller v. Ford Motor Co.*, 2004 WL 4054843, at *6 (M.D. Fla. July 22, 2004) (granting plaintiff's motion in limine to exclude evidence of contingency fee arrangement); *Scott v. Hess Retail Operations, LLC*, 2015 WL 4602605, at *4 (M.D. Fla. July 29, 2015) (same).

Finally, Defendants also should be prevented from presenting evidence referencing other litigation involving Plaintiffs' counsel. Such evidence is irrelevant and inadmissible under Rules

401 and 402 and its probative value is substantially outweighed by the potential prejudice under Rule 403. *See, e.g.*, *Riley v. Ford Motor Co.*, 2011 WL 3273592, at *2, *6 (S.D. Miss. July 29, 2011) (granting motion in limine to exclude evidence concerning counsel's "roles in other lawsuits"); *Smith v. Cnty. of Riverside*, 2018 WL 7500278, at *5 (C.D. Cal. Nov. 14, 2018) (excluding evidence "about Defendants' law firm, other litigation involving defendants" among other things). *See also Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 2019 WL 3307850, at *6 (W.D. Va. July 22, 2019) (granting motion in limine to the extent that defendant attempts to introduce evidence of other litigation to portray plaintiff as a serial litigant); *In re Homestore.com, Inc.*, 2011 WL 291176, at *1 ("[R]eference to or evidence of Plaintiff's involvement in other litigation prior to this Action is also irrelevant and carries with it a high risk of prejudice.").

Accordingly, Defendants should be prevented from presenting any testimony, documents, evidence, arguments, or referencing other litigation involving Plaintiffs' counsel, or to Plaintiffs' counsel's fee arrangements in this or any other litigation.

**Plaintiffs' MIL No. 3**: **Unavailable Witnesses.** Plaintiffs move to preclude Defendants from calling any witness in their case-in-chief if the witness was unavailable for Plaintiffs' case-in-chief. The Court should exercise its discretion under Federal Rule of Evidence 611(a) to prevent Defendants from calling any witness in their case-in-chief if the witness was unavailable for Plaintiffs' case-in-chief.

Plaintiffs anticipate that Defendants will disclose certain employee witnesses who are outside of this Court's subpoena power, and thus, Plaintiffs will be unable to secure their live testimony at trial. *See* Fed. R. Civ. P. 45(c). Of the 12 depositions Plaintiffs took of Defendants' employees, only three reside or are employed in Florida. Plaintiffs will be unfairly prejudiced if they are forced to rely on deposition testimony of the employee witnesses in their case-in-chief while Defendants call those witnesses live in their case-in-chief. *See R.B. Matthews v. Transamerica Transp. Servs., Inc.*, 945 F.2d 269, 273 (9th Cir. 1991). "Courts have properly denounced this strategy as 'gamesmanship'" and "numerous courts have held that a party may not limit a witness that the party intends to call at trial from testifying only during its own case in chief." *Buchwald v. Renco Grp., Inc.*, 2014 WL 4207113, at *1 (S.D.N.Y Aug. 25, 2014). If Defendants intend to offer live testimony at trial, those witnesses should be produced live for Plaintiffs' case-in-chief. To the extent Defendants do not produce employee witnesses live for

Plaintiffs' case-in-chief, they should be barred from presenting those witnesses live in their own case-in-chief.

Under Federal Rule of Evidence 611(a), the Court may "exercise reasonable control over the mode and order of examining witnesses" and, in doing so, preclude Defendants from calling witnesses live during their own case when they refuse to make those same individuals available for Plaintiffs' case-in-chief. *See* Fed. R. Evid. 611(a). Indeed, in *R.B. Matthews*, the Ninth Circuit affirmed a district court's decision to bar defendants from calling witnesses they refused to produce, or bring within the subpoena power of the court, for examination during plaintiff's case-in-chief, recognizing that otherwise, defendant would be "engaged in gamesmanship" forcing plaintiff to rely on depositions while presenting live testimony of the same witnesses. 945 F.2d at 273. Such gamesmanship is disfavored because of the inherent disparity between deposition testimony in Plaintiffs' case and live testimony in the Defendants' case, "especially when credibility is at issue as in the case of fraud allegations" because that "would result in inequitable treatment." *Iorio v. Allianz Life Ins. Co. of N. Am.*, 2009 WL 3415689, at *5-6 (S.D. Cal. Oct. 21, 2009) (holding "if Plaintiffs are forced to show the videotaped depositions or read the transcript into the record of any [witnesses] . . . because Defendants have failed to produce them, Defendants will thereafter be precluded from producing the same witnesses in person."). *See also Buchwald*, 2014 WL 4207113, at *3 (denying defendants' motion for a protective order to prevent plaintiff from compelling testimony from certain witnesses and holding that "any such witness from which Defendants wish to elicit live testimony must be made available to testify in the [plaintiffs'] case in chief.").

Plaintiffs ask the Court to apply this straightforward approach here and prevent Defendants from calling any witness in their case if that witness refused to testify live in Plaintiffs' case-in-chief. To allow otherwise would encourage the type of "gamesmanship" that courts routinely seek to prevent.

**Plaintiffs' MIL No. 4**: **Evidence Concerning Absent Class Members and Non-Class Members.** Plaintiffs move to preclude Defendants from presenting any testimony, documents, evidence, or argument referencing names of members of the Classes, other than the named Plaintiffs, or any non-Class members, or from presenting any testimony, documents, evidence, or argument that any absent member of the Classes or non-Class member has any claim or is subject to any defense that is different from any of the Plaintiffs' claims. Such reference is irrelevant, or

if relevant, any such relevance would be outweighed by the prejudice and confusion it would cause the jury. *See* Fed. R. Evid. 402, 403.

In the upcoming trial, Plaintiffs intend to present the named Plaintiffs and not reference each and every absent Class member or non-Class member. Assuming Plaintiffs prevail on their pending Motion for Class Certification, the issues before the jury will be classwide liability issues concerning Defendants' conduct. Further, assuming the Court grants class certification, any issues concerning adequacy and typicality will be decided and whether Defendants would be found liable for the claims of the members of the Classes hinges wholly upon whether Defendants would be found liable for the claims of the named Plaintiffs:

> The main principle behind typicality is that the plaintiff will advance the interests of the class members by advancing her or his own self-interest. The alignment of interest is not the test for typicality. It is the result. The plaintiffs and class members have similar interests because they have similar claims. **The plaintiff whose claim is typical will ordinarily establish the defendants' liability to the entire class by proving his or her individual claim.**

*In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 687 (S.D. Fla. 2004) (quoting 6 Alba Conte & Herbert Newberg, Newberg on Class Actions §18:8 (4th ed. 2002)).

Defendants were afforded ample opportunity to challenge class certification, contest the adequacy of Plaintiffs as Class representatives, and attack the typicality of their claims. By trial, class certification will be decided and absent class members will be irrelevant. *See, e.g.*, *Baker v. SeaWorld Ent., Inc.*, 2020 WL 241441, at *1 (S.D. Cal. Jan. 16, 2020) (tentatively granting motion in limine to exclude argument concerning the absence of plaintiffs from liability phase of bifurcated securities class action trial holding "the absence of Plaintiffs is irrelevant"); Minute Entry, *Baker v. SeaWorld Ent., Inc.*, No. 14-cv-2129 (S.D. Cal. Jan. 21, 2020), ECF No. 508 (affirming tentative ruling).

Given the above, any testimony, documents, evidence, or argument concerning members of the Classes, other than named Plaintiffs, or non-Class members, or that any absent Class member or non-Class member has any claim (or is subject to any defense) that is different from any of the Plaintiffs' claims should be excluded as irrelevant. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). Indeed, after a class is certified, the success or failure of the Class claims must be based on the success or failure of the Class representative's claims. If not, there is little purpose in certifying the Class in the first place; the parties could have achieved the same result by treating each Class members' claim as an individual matter ripe for individual adjudication.

Accordingly, any belated attempt by Defendants to present evidence concerning, or making reference to, unnamed members of the Classes or non-Class members and the circumstances underlying their claims would undermine the class action mechanism and affront the Court's forthcoming determination of class certification in this case. For these reasons, Plaintiffs ask that the Court exclude any attempt by Defendants to introduce evidence regarding, or make reference to, members of the Classes, other than the named Plaintiffs, or non-Class members or that any absent member of the Classes or any non-Class member has any claim (or is subject to any defense) that is different from any of the Plaintiffs' claims.

**Plaintiffs' MIL No. 5**: **Sequestering Fact Witnesses.** Plaintiffs move to exclude Defendants' fact witnesses from the courtroom during trial and preclude Defendants' fact witnesses from reading transcripts or discussing proceedings with other witnesses and Defendants' employees while the trial is ongoing.

Under Federal Rule of Evidence 615, at Plaintiffs' request, the Court must exclude Defendants' fact witnesses from the courtroom during trial. Fed. R. Evid. 615. Federal Rule of Evidence 615 provides that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." *Id.* "The authority of the judge [to sequester witnesses] is admitted, the only question being whether the matter is committed to his discretion or one of right. The rule takes the latter position." Fed. R. Evid. 615, advisory committee's note on proposed rules.

"The rule of sequestration serves to: (1) exercise a restraint on witnesses attempting to tailor their testimony to that of earlier witnesses; and (2) it aids in detecting testimony that is less than candid." *United States v. Ubieta*, 630 F. App'x 964, 972 (11th Cir. 2015). Preventing a fact witness from hearing ongoing testimony of other witnesses reduces the risk of fabrication, collusion, and inaccuracy. *See* 4 Weinstein's Federal Evidence § 615.02 (2020). Sequestration under Federal Rule of Evidence 615 properly extends to opening and closing statements in order to fulfill the Rule's purpose of promoting truthful and accurate testimony that is not shaped by the remarks or testimony of others.

Plaintiffs will be severely prejudiced if the Court were to allow adverse fact witnesses to observe each other's testimony and/or consult with other witnesses, Defendants' employees, or counsel before testifying. The failure to exclude such witnesses will particularly handicap and prejudice Plaintiffs who will present their case, in part, through adverse witnesses. Indeed, many

7

of the witnesses are current or former employees of Defendants. Likewise, an order excluding fact witnesses from the courtroom for the purpose of insulating them from others' testimony would be meaningless if they nonetheless learned of the testimony from others, including other witnesses, employees, or Defendants' counsel.

For these reasons, Plaintiffs ask that this Court exclude Defendants' fact witnesses from the courtroom (except while testifying) and, also, preclude them from reading transcripts or discussing the proceedings with other witnesses, Defendants' employees, or counsel while trial is ongoing. Further, because Federal Rule of Evidence 615 permits only one "officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney" to avoid sequestration, Plaintiffs also requests that the Court allow no more than one party representative from each Defendant to attend the trial. *See* Fed. R. Evid. 615. Each party needs no more than one party representative to appear and allowing more than one would undercut the rule that fact witnesses should not be present in the courtroom.

**Plaintiffs' MIL No. 6**: **Evidence that Contradicts Rule 30(b)(6) Testimony.** Plaintiffs move to preclude Defendants from presenting any testimony, documents, evidence, or argument that questions, contradicts, or negatively references Federal Rule of Civil Procedure 30(b)(6) testimony. Any relevance of this information would be outweighed by the prejudice and confusion it would cause the jury. *See* Fed. R. Evid. 403.

On October 14, 2020, Plaintiffs took the deposition of a TMC representative pursuant to Federal Rule of Civil Procedure 30(b)(6). As required by this rule, TMC designated Stefan Young on its behalf to testify on topics designated by Plaintiffs. Plaintiffs are entitled to rely on this testimony, which is binding on Defendants. *Craig Air Ctr., Inc. v. City of Jacksonville*, 2012 WL 3139547, at *7 n.22 (M.D. Fla. Aug. 1, 2012) (determining that testimony from a 30(b)(6) witness "constitutes the official testimony of the corporation").

Rule 30(b)(6) plainly states that the witness designated by an organization "must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). This means that an organization must produce a witness who has "been prepared to provide testimony to ***bind*** the entity and to explain the corporation's position." *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012). Further, because an organization has an opportunity to select its Federal Rule of Civil Procedure 30(b)(6) deponent and prepare the witnesses for noticed topics, "some extraordinary explanation must be required before a

corporation is allowed to retreat from binding admissions in the testimony of its Rule 30(b)(6) designee." *Est. of Thompson v. Kawasaki Heavy Indus., Ltd.*, 291 F.R.D. 297, 304 (N.D. Iowa 2013). *See also Belen Jesuit Preparatory Sch., Inc. v. Sportswear, Inc*., 2016 WL 4718161, at *3 (S.D. Fla. Apr. 22, 2016) (excluding testimony of witness because, *inter alia*, the testimony contradicted 30(b)(6) witness' testimony). Allowing Defendants to question or contradict their prior Federal Rule of Civil Procedure 30(b)(6) testimony would serve as an impermissible ambush on Plaintiffs and their strategy at trial. *See Rainey v. Am. Forest & Paper Ass'n*, 26 F. Supp. 2d 82, 95 (D.D.C. 1998) (precluding introduction of affidavit contradicting corporate designee's testimony because Rule 30(b)(6)"aims to prevent a corporate defendant from thwarting inquiries during discovery, then staging an ambush during a later phase of the case").

Because TMC is bound by the testimony proffered by its Federal Rule of Civil Procedure 30(b)(6) witness, it should not be prevented from presenting any testimony questioning, contradicting, or negatively referencing 30(b)(6) testimony. *See QBE Ins. Corp.*, 277 F.R.D. at 690 (noting that 30(b)(6) testimony "can be binding on the corporation and prohibit it from offering evidence at trial on those points").

**Plaintiffs' MIL No. 7: Pretrial Motions.** Plaintiffs move to preclude Defendants from presenting any testimony, documents, evidence, or argument that reference the fact that this Court has granted or denied any pretrial motions or portions thereof including, without limitation, this Court's ruling on Defendants' Motions for Summary Judgment. Any reference to the Court's ruling on Defendants' Motions for Summary Judgment is irrelevant, or if relevant, any such relevance would be outweighed by the prejudice and confusion it would cause the jury. *See Fed. R. Evid. 402, 403*. As to any granted pretrial motion, such ruling necessarily removes the issue from the jury's consideration and "courts routinely exclude evidence and argument related to previously dismissed claims as irrelevant and prejudicial." *DeBose v. Univ. of S. Fla. Bd. of Tr.*, 2018 WL 8919981, at *2 (M.D. Fla. Sept. 9, 2018) (granting motion in limine to exclude reference to any claims resolved on summary judgment). Any references to rulings on pretrial motions would only serve to confuse the jury or prejudice Plaintiffs and therefore such a reference must be excluded. *See Fed. R. Evid. 403. See also King v. Cath. Charities of Nw. Fla., Inc*., 2018 WL 3848819, at *2 (N.D. Fla. Aug. 12, 2018) (finding that "the Court's summary judgment ruling [has] no probative value on the remaining claim in this case").

**<u>Plaintiffs' MIL No. 8</u>**: Claims against and Dealings with Non-Parties. Plaintiffs move to preclude Defendants from presenting any testimony, documents, evidence, or argument referencing: (1) that Plaintiffs have not sued non-parties, including without limitation, manufacturers, suppliers, distributors or other unnamed co-conspirators such as DENSO International, Inc. ("DENSO") (the manufacturer of the HVAC systems at issue); and (2) Plaintiffs' relationship or dealings with any such non-party.

Given Plaintiffs' decision to only sue certain co-conspirators, Defendants may seek to make arguments or assertions at trial about Plaintiffs' failure to bring suit against certain non-parties and unnamed members of the Racketeer Influenced and Corrupt Organizations Act ("RICO") association-in-fact enterprise, including other distributors, dealerships, DENSO, and any employees of those companies. Such information is irrelevant at trial and should be excluded. Plaintiffs' decision regarding which entities to sue has no bearing on any fact of "consequence in determining" the issues in this action, which strictly concern ***Defendants'*** misconduct in misrepresenting and concealing a known HVAC Defect from the public in order to defraud over 200,000 purchasers of Camry Vehicles. Fed. R. Evid. 401.

Moreover, even if somehow deemed relevant, any such relevance would be heavily outweighed by the prejudice and confusion it would cause the jury. *See* Fed. R. Evid. 402, 403. Defendants have not filed any motion alleging Plaintiffs failed to name a necessary party to this action under Federal Rule of Civil Procedure 19 and this issue will not be before the jury. Any potential inference or suggestion that Plaintiffs have targeted or selected only Defendants among other potentially culpable parties would be prejudicial and should not be admitted into evidence. Such evidence or argument should also be excluded because it could confuse and mislead the jury to believe that Plaintiffs' decision not to sue those non-parties limits Plaintiffs' ability to prove facts or claims at issue here—which is wholly incorrect. *See, e.g*., *Anderson v. Brown Indus*., 2014 WL 12521732, at *10 (N.D. Ga. Mar. 14, 2014) (given limited relevancy of evidence, evidence excluded because it would waste time and confuse jury).

Additionally, Plaintiffs neither pled nor advanced any claims arising from a relationship or dealings with any non-party distributor or unnamed co-conspirator, including DENSO, with whom Plaintiffs have no relationship. Defendants have made no counterclaim concerning any such relationship or dealings either, as none exist. Because Plaintiffs' claims—and Defendants' defenses—concern Plaintiffs' relationship and dealings with ***Defendants only***, any inquiry or

reference into Plaintiffs' relationship or dealings with any non-party, including DENSO, or other unnamed co-conspirator, is irrelevant and would confuse the jury.

As such, Defendants should be prevented from presenting evidence or argument referencing either Plaintiffs' failure to sue non-parties, including DENSO, or Plaintiffs' (non-existent) relationship or dealings with any such non-party.

**Plaintiffs' MIL No. 9**: **Use of DENSO HVAC Systems in Other Vehicles.** Plaintiffs move to preclude Defendants from presenting any testimony, documents, evidence, or argument referencing whether other automakers use or have used in their vehicles the DENSO HVAC systems at issue here and/or that other automakers' use of those HVAC systems is evidence that the HVAC systems in the Class Vehicles were not defective. Defendants should not be permitted to suggest that its use of the HVAC systems in the Class Vehicles was proper, or that those HVAC systems were free of any design defect, because of unrelated decisions made by third-party automakers. This type of argument, based not on evidence but on stereotypes and assumptions, can have no relevant purpose, is quintessentially prejudicial, and should be precluded because it would lead the jury to make decisions on an improper basis.

Whether other automakers may have used the same or similar HVAC systems in their vehicles has *de minimis* relevance, at best, to the facts "of consequence in determining" the issues in this trial. *See* Fed. R. Evid. 401. The jury will not be asked to decide anything concerning vehicles other than the Class Vehicles or the design actions of automakers other than Toyota. Moreover, the manufacture and design decisions of other automakers with respect to non-Class Vehicles say virtually nothing about the usability or propriety of the HVAC systems in the Class Vehicles. Any arguments suggesting the jury make findings based on actions of non-Toyota automakers are unfounded and inappropriate given their lack of relevance and speculative nature, and would create a severe risk of prejudice to Plaintiffs. Such arguments would lead the jury to confuse the issues, and to render findings on an improper basis, and should therefore not be permitted in any form. *See Plantation Pipeline Co. v. Cont'l Cas. Co.*, 2008 WL 4737163, at *2 (N.D. Ga. July 31, 2008) ("Evidence is unfairly prejudicial when it has an undue tendency to suggest a decision on an improper basis.").

**Plaintiffs' MIL No. 10: Other HVAC Litigation Against Toyota.** Plaintiffs move to preclude Defendants from presenting any testimony, documents, evidence, or argument referencing other HVAC litigation against Toyota or any expert reports or opinions provided/or

arguments made in those litigations as well as any rulings or decisions issued in those litigations. This information is not relevant and any possible probative value is outweighed by the prejudice and confusion it would cause the jury. *See* Fed. R. Evid. 402, 403. Specifically, Plaintiffs anticipate that Defendants will attempt to make reference at trial to expert reports or opinions and/or arguments made in the following actions: *Stockinger v. Toyota Motor Sales, U.S.A., Inc*., Case No. 17-cv-0035 (C.D. Cal.) and *Salas v. Toyota Motor Sales, U.S.A., Inc*., Case No. 15-cv-8629 (C.D. Cal.), which include different parties, different claims, different geographic regions, and in some cases, different vehicles.

Given that TMC, TEMA, and SET were not parties in *Stockinger* or *Salas*, different documents and different deposition testimony has been produced in those actions. The plaintiffs in *Stockinger* brought claims on behalf of vehicle owners across the United States, and the plaintiffs in *Salas* only sought certification of vehicles owners in California; accordingly, unlike here, the relationship between the Toyota Defendants and SET—a key component to Plaintiffs' RICO claims—was not at issue in this other litigation. If Defendants are permitted to reference or use evidence or expert reports submitted in these other lawsuits, Plaintiffs will thus need to explain the differences between these other lawsuits and how that impacts the issues being litigated here. As such, any potential probative value of these other lawsuits is substantially outweighed by the danger of unfair prejudice, as the jury may incorrectly believe that the outcome, rulings, or expert reports specific to other litigation are determinative of Plaintiffs' allegations and Defendants' liability here.

For these reasons, courts routinely exclude reference to other lawsuits, pursuant to Rule 403. *See Salinero v. Johnson & Johnson*, 2019 WL 7753445, at *2 (S.D. Fla. Sept. 25, 2019) (finding evidence of other lawsuits had "limited probative value, which is far outweighed by the risk of undue prejudice, confusion of the issues, and misleading the jury"); *Jablonski v. St. Paul Fire & Marine Ins. Co.*, 2009 WL 2252094, at *4 (M.D. Fla. July 24, 2009) (finding exclusion of evidence of prior lawsuit appropriate because the "probative value was substantially outweighed by the danger of unfair prejudice and confusion of the issues"); *Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 408-09 (5th Cir. 2004) (finding exclusion of evidence of prior lawsuit appropriate because the probative value "was outweighed by its prejudicial and inflammatory nature and by its tendency to confuse the jury with tangential litigation"); *Sugar Ass'n, Inc. v. McNeil-PPC, Inc.*, 2008 WL 4755611, at *2 (C.D. Cal. Jan. 7, 2008) (excluding

evidence of other litigation because, even if it were found to be "marginally relevant," the "dangers of unfair prejudice or confusing or misleading the jury substantially outweigh any probative value").

Indeed, at the outset of this litigation, this Court properly denied Defendants' attempt to transfer this case to California to be litigated alongside *Salas* and *Stockinger*, finding "the proposed classes in this lawsuit differ significantly from the narrow certified-class in *Salas*, and the proposed classes in *Stockinger*." *Cardenas v. Toyota Motor Corp.*, 2019 WL 4705843, at *2 (S.D. Fla. Sept. 26, 2019). This Court recognized that, not only did *Stockinger* omit the Camry from the class, but that "to the extent this lawsuit is similar to *Salas* because it also involves Toyota Camry models, other compelling reasons for not transferring this case to the Central District of California are immediately apparent: such as the chronology of the lawsuits, the composition of the defendants, and the claims involved." *Id.* at *3. Accordingly, for the same reasons, reference to these other lawsuits or any expert opinions offered therein will be confusing and misleading to the jury, as these other cases involve different parties, different claims, different geographic regions, different discovery, and in some cases, different vehicles.

**__Plaintiffs' MIL No. 11__: Interior or Exterior Condition of Plaintiffs' Vehicles.** Plaintiffs move to preclude Defendants from presenting any testimony, documents, evidence, or argument referencing that the HVAC odor was caused by the condition of Plaintiffs' vehicles, including but not limited to, introducing such evidence through experts Jeffry Hicks and Robert Kuhn. This information is not relevant and any possible probative value is outweighed by the prejudice and confusion it would cause the jury. *See* Fed. R. Evid. 402, 403. Specifically, it is anticipated that Defendants will attempt to argue that HVAC odor in Plaintiffs' vehicles came from sources other than the defective HVAC system, such as food, dirt, or other materials left inside the passenger compartment of Plaintiffs' vehicles.

This case concerns a design defect in the Class Vehicles' HVAC systems which "allows condensing water to accumulate and allows naturally present organic contaminants to be trapped, kept moist and cultivate organic matter such as microbes, bacteria, mold and fungus" (the "HVAC Defect" or "Defect").[2] Specifically, the presence of defective design features, including the evaporator core air flow, condensation and drainage design, along with the use of improper foam

---

[2] Pls' Mot. for Class Certification, ECF No. 181, at Ex. 4 (Expert Report of Murat Okçuoğlu at 24 (Oct. 20, 2020)).

and the absence of charcoal filters and Afterblow, all contribute to allow moisture to accumulate in the HVAC systems, which in turn leads to microbial growth and resulting odor. Accordingly, in determining whether the HVAC systems are defective, the jury will must decide whether the HVAC systems have a defective design that allows moisture to accumulate and traps organic materials *regardless* of whether that results in any particular Plaintiff or Class member experiencing odor.

Accordingly, the cleanliness of the Plaintiffs' vehicles is not relevant and would be highly prejudicial. Even assuming that Defendants were correct that food or other sources lead to certain odors in Plaintiffs' vehicles, those are not HVAC odors and that finding has no bearing on whether the HVAC systems in Plaintiffs' vehicles have a design defect that allows condensing water to accumulate and organic contaminants to be trapped. That finding should be ignored due to relevancy, and significantly, should be excluded due the strong possibility of juror confusion regarding whether HVAC odor must be experienced in order for there to be a defect. *See* Fed. R. Evid. 403.

Moreover, this prejudice is further compounded by Defendants' attempt to introduce evidence regarding the cleanliness of Plaintiffs' vehicles through the expert testimony of Robert Kuhn and Jeffrey Hicks. Nearly half of Kuhn's "expert" report consists of nothing more than Kuhn's photographs and descriptions about the interior and exterior conditions of Plaintiffs' vehicles, which purportedly served as the basis of Kuhn's finding that "no design or manufacturing defects with the HVAC systems of those vehicles were present." Expert Report of Robert Kuhn at 17-28 (Oct. 20, 2020), ECF No. 205-5, at Ex. A. Hicks similarly includes a number of "Visual and Olfactory Observations" about Plaintiffs' vehicles, including notes regarding whether his investigators perceived odors, what objects his investigators saw inside Plaintiffs' vehicles, and whether his investigators observed "soiling in the foot wells." Suppl. Expert Report of Jeffrey at 10, 14-15, 18 (Nov. 6, 2020), ECF No. 205-17, at Ex. A. None of these observations bear any relevance regarding whether an HVAC Defect exists in the Class Vehicles.

In addition, setting aside the irrelevant nature of such observations, introducing evidence about the interior and exterior conditions of Plaintiffs' vehicles through expert testimony is highly prejudicial because jurors are likely to ascribe more weight to such evidence if it is introduced through experts. *See United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) ("Because of the powerful and potentially misleading effect of expert evidence, . . . sometimes expert opinions

that otherwise meet the admissibility requirements may still be excluded by applying Rule 403."); *see also id.* (Because "expert testimony may be assigned talismanic significance in the eyes of lay jurors," a court "must take care to weigh the value of such evidence against its potential to mislead or confuse.'). The balance further weighs in favor of exclusion since jurors are well-suited to understand whether Plaintiffs' vehicles are "clean" based on their own lay understanding and Defendants' experts fail to provide any link between the HVAC odor Plaintiffs reported and the interiors of their vehicles beyond rank speculation.[3] *Evans v. Mathis Funeral Home, Inc.*, 996 F.2d 266, 268 (11th Cir. 1993) (affirming exclusion of expert testimony where testimony was within common knowledge of jurors and testimony was based on assumptions that were not supported by the record); *King v. Cessna Aircraft Co.*, 2010 WL 1980861, at *5 (S.D. Fla. May 18, 2010) ("We thus cannot cast a blind eye to such rank speculation being presented to our jury under the guise of reliable expert testimony.").

**Plaintiffs' MIL No. 12**: **Argument that HVAC Odor Is an "Industry-Wide" Problem Present in All Vehicles.** Plaintiffs move to preclude Defendants from presenting any testimony, documents, evidence, or argument that HVAC odor is an "industry-wide" problem present in all vehicles or dealt with by all auto manufacturers. This information is not relevant and any possible probative value is outweighed by the prejudice and confusion it would cause the jury. *See* Fed. R. Evid. 402, 403.

Again, this litigation concerns a specific design defect in the Class Vehicles' HVAC systems, which allows condensing water to accumulate and allows naturally present organic contaminants to be trapped, kept moist, and cultivate organic matter such as microbes, bacteria, mold, and fungus. Thus, in assessing whether the Class Vehicles are defective, the jury must consider whether Plaintiffs have satisfied their burden of proving that the HVAC systems in the Class Vehicles have design elements that allow condensing water to accumulate and organic contaminants to be trapped, kept moist, and cultivate organic growth. Plaintiffs will show that the HVAC systems have a defective design through Defendants' documents, fact witness testimony, expert witness testimony, and other evidence establishing the Defect in Class Vehicles. Whether other automakers have vehicles with defective HVAC systems or whether non-Class Vehicles have

---

[3] *See* Ex 1 Kuhn Dep. Tr. at 270:21-275:11.

HVAC odor is irrelevant to the specific question here—whether the HVAC systems in Class Vehicles are defective.

As with information about other automakers' use of DENSO HVAC systems, information suggesting that other automakers' vehicles have HVAC odor says nothing about whether the HVAC systems in the Class Vehicles are defective. Notably, Defendants have not set forth a single affirmative defense in their Answers that would conceivably allow them to evade liability here based on HVAC odor purportedly being an "industry-wide" condition in all vehicles. *See* Defs' Answers to Pls.' Am. Compl., ECF Nos. 55, 56, 57, 58. Plaintiffs have brought RICO and Florida Deceptive and Unfair Trade Practices Act claims, not strict liability product defect claims under state law, and Plaintiffs thus have no obligation to show a "feasible alternative design," nor are "state of the art" arguments as to why Defendants did not install non-defective HVAC systems relevant; rather, the jury must only decide whether Defendants misrepresented and concealed the fact that the HVAC systems in Class Vehicles allow condensing water to accumulate and organic contaminants to be trapped, kept moist, and cultivate organic growth. Any arguments suggesting the jury make findings based on actions of non-Toyota automakers are irrelevant to that task and would create a severe risk of jury confusion and prejudice to Plaintiffs. *See Hernandez v. Crown Equip. Corp.*, 2015 WL 4067695, at *5 (M.D. Ga. July 2, 2015) (excluding evidence of other manufactures' products because "what other manufacturers do or do not do in terms of design makes little difference and is not relevant to this case," only permitting defendant to explain the basis for its choice not to include the contested design elements in the vehicle at issue).

**Plaintiffs' MIL No. 13**: **EPA Report and Validity of MSQPCR.**  Plaintiffs move to preclude Defendants from presenting any testimony, documents, evidence, reference, or argument relating to the Environmental Protection Agency ("EPA") Office of the Inspector General Report No. 13-P-0356 ("EPA Report") and any testimony, documents, evidence, or argument suggesting Mold-Specific Quantitative Polymerase Chain Reaction ("MSQPCR") is invalid.

Any reference to the EPA Report is irrelevant, or if relevant, any such relevance would be outweighed by the prejudice and confusion it would cause the jury. *See* Fed. R. Evid. 402, 403. The EPA Report discusses the use of ERMI[4] with a form of DNA testing called MSQPCR. *See* EPA Report, Ex. 5 to Mot. to Exclude Expert Ops. of Murat Okçuoğlu, Steven Parkhurst, and Don

---

[4] "ERMI" means the Environmental Relative Moldiness Index developed by the EPA.

Wright for Purposes of Class Certification and Summ. J., ECF No. 195-06. Specifically, the EPA Report takes issue with the use of MSQPCR testing *only* when it is conducted in conjunction with ERMI. The EPA Report states that its purpose is to "determine whether the EPA's ERMI tool had been properly peer reviewed and validated for public use." *Id*. at 1. According to the EPA Report, the "ERMI tool" means "the process of collecting samples in accordance with the ERMI protocol, analyzing the samples using the MSQPCR and calculating a score using the ERMI algorithm." *Id*. Accordingly, any findings expressed in the EPA Report are limited to conducting MSQPCR testing in conjunction with the use of the ERMI protocol and algorithm—none of which was done here. The EPA Report is not applicable to MSQPCR, when used without ERMI, and when conducted by an American Industrial Hygiene Association ("AIHA") accredited lab, such as the lab used here. The EPA Report also discouraged the "public use" of ERMI rather than use by researchers.

Here, Plaintiffs' expert Steven Parkhurst performed testing that was analyzed through MSQPCR *only* and did not use ERMI. Because ERMI was not used by Parkhurst, the EPA Report's discussion of MSQPCR used in connection with ERMI is wholly irrelevant and should be excluded. Here, Parkhurst used MSQPCR for research purposes as a qualified, certified expert, and the MSQPCR was conducted at a lab that is certified by the AIHA to conduct MSQPCR. In addition, Parkhurst's use of MSQPCR was not for "public use." Accordingly, the EPA's discussion of public use of MSQPCR in conjunction with ERMI is wholly irrelevant to the MSQPCR conducted here, which was performed by an AIHA accredited lab, and has no relation to the ERMI protocol or algorithm. Therefore, the EPA Report is wholly irrelevant and would only serve to confuse the jury, and thus Defendants should be prohibited from referencing the EPA Report. *See* Fed. R. Evid. 401, 402, 403.

Moreover, because the EPA Report relates to a type of testing that was not conducted by Parkhurst, to the extent the EPA Report is relevant, any relevance would be outweighed by the prejudice and confusion it would cause the jury, and for this reason alone Defendants should be prohibited from referencing the EPA Report.  *See* Fed. R. Evid. 402, 403. *See also Grace & Naeem Uddin, Inc. v. N. Broward Hosp. Dist.*, 2013 WL 6328582, at *1 (S.D. Fla. Dec. 5, 2013) (excluding evidence pursuant to FRE 402 and 403 because "any small relevance" the evidence had was "outweighed by the confusion and prejudice such information could cause.").

Further, because the EPA Report is irrelevant and should be excluded, Defendants should be precluded from making any argument that MSQPCR is invalid. MSQPCR is recognized as an

industry accepted means of conducting mold analysis and the AIHA has certified labs that conduct MSQPCR, including the lab used here. Defendants have presented no evidence to the contrary and any suggestion that MSQPCR is invalid would only serve to confuse the jury. *See* Fed. R. Evid. 402, 403. As such, Defendants should be precluded from presenting any testimony, documents, evidence, or argument relating to the EPA Report or suggesting that MSQPCR is invalid.

**Plaintiffs' MIL No. 14**: **References to Testing Performed on Plaintiffs' Vehicles by Anyone Other than Parkhurst or Hicks.** Plaintiffs move to preclude Defendants from presenting any testimony, documents, evidence, or argument referencing testing performed on Plaintiffs' vehicles by anyone other than Parkhurst or Hicks.  Such reference is irrelevant, or if relevant, any such relevance would be outweighed by the prejudice and confusion it would cause the jury. *See* Fed. R. Evid. 402, 403.

Any testing performed by experts other than Parkhurst or Hicks is irrelevant here. Plaintiffs did not submit testing or analysis performed by anyone other than Parkhurst in support of their claims, and Parkhurst did not rely on any testing or analysis other than his own. Parkhurst performed his own testing and analysis—using the superior and far more precise MSQPCR methodology—and chose not to rely on other testing performed on Plaintiffs' vehicles, which used a different methodology. *See Pfizer Inc. v. Teva Pharm. USA, Inc.*, 461 F. Supp. 2d 271, 274 (D.N.J. 2006) ("An expert must consider enough factors to make his or her opinion sufficiently reliable in the eyes of the court . . . [but the] expert need not consider every possible factor to render a 'reliable' opinion."). As a result, Defendants should not be able to present any negative inference to the jury about Parkhurst's decision not to analyze or rely on testing performed by others. Furthermore, any reference to other testing is overly prejudicial. Experts have a right to determine what testing methodology is appropriate. Parkhurst's methodology will be evaluated by the Court to determine its reliability and soundness; no assessment as to whether the testing methodologies related to mold sampling and analysis of any experts has been properly evaluated by the Court. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993) (explaining that a district court must evaluate whether the reasoning and methodology of an expert is scientifically valid). As such, any reference to testing performed by anyone other than Parkhurst or Hicks is inappropriate, irrelevant, and will only serve to confuse the jury. *See* Fed. R. Evid. 402, 403.

Accordingly, Defendants should be prevented from presenting any testimony, documents, evidence, arguments, or referencing any testing performed on Plaintiffs' vehicles by anyone other than Parkhurst or Hicks. *See* Fed. R. Evid. 402, 403.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant their MILs and order that Defendants, their counsel, experts, and any and all of their corporate representatives and witnesses, be precluding from offering at trial information or evidence in any form questioning or referencing the matters set forth in the MILs and from presenting to the jury in any manner, whether in voir dire, opening statements, questions to witnesses, objections, closing arguments, or otherwise any information regarding the matters set forth in the MILs.

### **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)**

Counsel for Plaintiffs have conferred with Defendants' counsel who indicated Defendants' opposition to the relief requested herein.

Dated: January 29, 2021                    Respectfully submitted,

**PODHURST ORSECK, P.A.**

*/s/ Peter Prieto*
Peter Prieto (FBN 501492)
pprieto@podhurst.com
John Gravante, III (FBN 617113)
jgravante@podhurst.com
Matthew Weinshall (FBN 84783)
mweinshall@podhurst.com
Alissa Del Riego (FBN 99742)
adelriego@podhurst.com
SunTrust International Center
One S.E. 3rd Avenue, Suite 2300
Miami, FL 33131
Tel.: (305) 358-2800/Fax: (305)358-2382

**KESSLER TOPAZ**
 **MELTZER & CHECK, LLP**
Joseph H. Meltzer
jmeltzer@ktmc.com
Melissa L. Troutner
mtroutner@ktmc.com
Tyler S. Graden

tgraden@ktmc.com
Natalie Lesser
nlesser@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Attorneys for Plaintiffs and the
Proposed Classes*

**KIESEL LAW LLP**
Paul R. Kiesel
kiesel@kiesel.law
Jeffrey A. Koncius
koncius@kiesel.law
Nicole Ramirez
ramirez@kiesel.law
8648 Wilshire Boulevard Beverly Hills,
CA 90211-2910
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

*Additional Counsel for Plaintiffs and the
Proposed Classes*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 29, 2021, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Peter Prieto*
Peter Prieto
