UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-CV-22798-FAM

JAVIER CARDENAS and RODNEY
BAKER, individually and on behalf of all
others similarly situated,

                Plaintiffs,

   v.

TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR SALES, U.S.A., INC.,
TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA,
INC., and SOUTHEAST TOYOTA
DISTRIBUTORS, LLC,

                Defendants.

**MOTION FOR EARLY PRETRIAL CONFERENCE TO DETERMINE TRIAL
STRUCTURE AND ENTRY OF PRETRIAL DEADLINES**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

      A.      The Court's Class Certification Order. .................................................... 3

      B.      Class Vehicle Information And Notice. .................................................... 4

      C.      The Parties' Disputes Over Trial Structure And Class Member
             Information. ............................................................................................. 5

III.    ARGUMENT ....................................................................................................... 7

      A.      A Rule 16 Conference Is Needed To Address Core Trial Structure Issues
             And The Parties' Impasse. ...................................................................... 8

            1.      This Case Presents Unique Statute Of Limitations Issues That
                    Cannot Be Resolved On A Class-Wide Basis At Trial And
                    Defendants Are Entitled To Present Individual Evidence On These
                    Issues. ......................................................................................... 9

            2.      Damages Determinations Cannot Be Made On A Class-Wide Basis
                    At Trial. ....................................................................................... 13

            3.      Plaintiffs' Individual RICO Claims Should Not Be Tried
                    Alongside Class-Wide FDUTPA Claims. .................................... 14

            4.      Plaintiffs Offer No Manageable Plan To Address Evidence Related
                    To The "Same Circumstances" Test Under FDUTPA. .......................... 17

      B.      Defendants Are Entitled To Class Member Information In Plaintiffs'
             Possession. ............................................................................................. 18

      C.      The Court Should Set Pretrial Deadlines. ............................................. 20

      D.      A Pretrial Conference Is Needed To Address Other Critical Trial
             Logistical Issues. ................................................................................... 20

IV.     CONCLUSION .................................................................................................. 20

Pursuant to Federal Rule of Civil Procedure 16, Defendants move the Court to schedule a pretrial conference, at its earliest opportunity, in advance of the July 5, 2022 trial in this matter and to enter an order setting pretrial dates and addressing other trial structure issues.  An early pretrial conference will assist the parties by establishing the scope and issues to be determined at the upcoming trial and will advance the efficient use of the Court's and the jurors' time.

Following Plaintiffs' submission of their initial trial plan proposal attached to their motion for class certification (*see* ECF No. 181-62), and this Court's order granting certification as to a single claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") ("Order"; ECF No. 377), the Parties have met and conferred regarding certain trial plan issues for the trial of this class action.  The Parties have been unable to reach agreement on several threshold structural issues critical for a class trial.  As a result, Defendants move the Court to schedule a prompt pretrial conference, so the Court can provide much-needed guidance and set a pretrial schedule commensurate with a class trial and the Parties can properly prepare for trial.

## I.    <u>INTRODUCTION</u>

There are key differences between a class certification determination and actually "try[ing] the case."  4 Newberg on Class Actions § 11.6 (5th ed.).  While a judicial finding that common issues predominate over individualized issues is "one thing," the specifics of what issues can be tried on behalf of all class members in one trial and what issues must or should be addressed at a later stage through consideration of individual evidence is "another."  *Id.*

A class certification order does not eliminate individual issues from the case and cannot preclude a defendant from having the jury consider individualized evidence relevant to the claims and defenses.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366-67 (2011) (recognizing that any class trial cannot deny defendant the individual right to litigate its "defenses to individual claims").  A class certification order simply determines that, as a matter of efficiency, the Court

believes the action should proceed as a class action and that certain important issues may be susceptible to class-wide proof. Importantly, in jury cases, while "the court may consider trying common issues first, preserving individual issues for later determination[, s]uch orders must be carefully drawn to protect the parties' right to a fair and balanced presentation of their claims and defenses and their right to have the same jury determine separate claims." Manual for Complex Litigation § 21.5 (4th ed.) at 306 & n.943 (collecting cases).

The class certification order in this case does not hold that there are no individual issues relevant to liability or damages. And the approved class notice recognizes that the Court "has not yet determined what issues will be decided on a class-wide basis at trial." (Notice 1, 5, ECF No. 393-1.) Defining the issues for—and scope of—trial is critical.

The Parties have reached an impasse over several threshold trial structural issues: (1) whether and how statute of limitation issues will be addressed, for example Plaintiffs' burden to show fraudulent concealment tolling, including due diligence, as to each class member; (2) whether and how damages issues regarding each class member's claims for actual injury and the amount of any injury will be addressed; (3) whether Plaintiffs' individual RICO claims will be tried with the FDUTPA class claims; and (4) whether and how individual evidence about class members' circumstances will be addressed. The Court's resolution of these core issues is *necessary* for the parties to prepare for trial and to inform the nature of trial.

In addition, there are other case management issues that require the Court's immediate attention. Plaintiffs have refused to provide class member information recently received from the Department of Motor Vehicles necessary for Defendants to evaluate the scope of the class, specific purchases that took place outside of the four-year limitation period, and which class members may be subject to arbitration. Moreover, while the Court has set the two-week period commencing July

5 for trial, it has not yet set pretrial deadlines in accordance with its October 12 Order (ECF No.

370), stating that it would do so after a class certification ruling.  Finally, a pretrial conference will

be important to address the length of trial, the amount of time to be allotted to each side, and other

related logistical issues.  Accordingly, Defendants seek the Court's assistance to require Plaintiffs

to provide the class member information and to set a pretrial schedule for this complex matter.

## II.   <u>BACKGROUND</u>

### A.   <u>The Court's Class Certification Order</u>.

On December 6, 2021, the Court certified a class "under the Florida Deceptive and Unfair

Trade Practices Act of all persons who purchased a 2012–2014 model year non-hybrid Toyota

Camry [("Class Vehicles")] from an authorized Toyota dealer in the state of Florida."  (Order 2.)

The Court declined "to certify a class under Racketeer Influenced and Corrupt Organizations

[("RICO")] Act for purchasers of the same vehicles."  (*Id.*)  Thus, the only class claims that remain

in this case are the FDUTPA claims.  Named Plaintiffs Javier Cardenas and Rodney Baker

("Plaintiffs") also have individual civil RICO claims.

In its Order, the Court recognized the existence of several individual issues that, although

they did not predominate over common issues in the Court's view, must still be addressed at some

point in these proceedings.  For example, with respect to affirmative defenses, such as statute of

limitations (including tolling), arbitration, and damages, the Court explained:

> The Court is mindful that if evidence later shows that an affirmative defense is
> likely to bar claims against some class members, there are adequate procedural
> mechanisms at its disposal. . . .  For example, the Court could appoint a special
> master to preside over individual damages proceedings, decertify the class after the
> liability trial and provide notice to class members about how they may proceed to
> prove damages, amend the class definition, and more.

(*Id.* at 29 (citations omitted); *see also* Notice 6 ("Depending on the outcome of the class action

trial, it is possible that you will have to present evidence or information to secure money.  The

Court has not yet determined this issue.").)[1]  How statute of limitations and damages issues will be addressed are fundamental questions that must be decided in advance of the class trial.

      **B.**     **<u>Class Vehicle Information And Notice</u>.**

      Following class certification, Plaintiffs obtained from Defendant Southeast Toyota Distributors, LLC ("SET") a list of Vehicle Identification Numbers ("VINs") for the potential universe of Class Vehicles on February 1, 2022.  SET voluntarily provided this information.

      SET does not sell or lease vehicles to consumers, so the VIN information from SET is a list of potential class vehicles only and does not provide information specific to the purchase, such as purchaser identity or circumstance.  Information collected by SET indicates that approximately 22,000 of the 95,000 vehicles at issue were leased and therefore not part of the certified class.[2] The VIN information collected by SET for class notice purposes also reflects that approximately **_87%_** of Class Vehicles were purchased prior to July 12, 2014, and, therefore, those purchases fall outside the four-year limitations period applicable to FDUTPA.  *See Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1192 (S.D. Fla. 2017); Fla. Stat. § 95.11(3)(f).

      In accordance with the Court's Class Notice Order (ECF No. 395), Plaintiffs presumably used the VIN information to obtain current and former owner information for all Class Vehicles ("Class Member Information") from the Florida Department of Motor Vehicles ("DMV").  As discussed further below, however, Plaintiffs have thus far repeatedly refused to provide that Class Member Information to Defendants.  Plaintiffs have refused to provide any legal basis for not doing so.  This information is necessary for Defendants to understand or confirm critical aspects

---

[1]     The Court also "acknowledge[d] that arbitration may bar the litigation of some class members' claims," but noted that Defendants had not yet provided information as to "how many class members have signed such agreements." (Order, at 28–29.)

[2]     Plaintiffs dropped lessees from their class definition in their motion for class certification and lessees are not included in the certified class definition. (*See* Order 2, 34.)

of the composition of the FDUTPA class, including its size, which purchases were made at dealerships prior to July 12, 2014, how many purchasers there may be per vehicle, and whether subsequent purchases were from an authorized dealership, and to evaluate whether and which class members may have entered arbitration agreements when purchasing their vehicles.  Obtaining this information **before** the Court's Order certifying a revised class was not possible—as the precise definition of class membership could not previously been known.

### C.    <u>The Parties' Disputes Over Trial Structure And Class Member Information</u>.

On March 25, 2022, counsel for Toyota sent Plaintiffs' counsel a letter outlining the case management and scheduling issues that must be resolved in advance of the upcoming trial, raising six primary issues:

(1)    whether Plaintiffs intend to address the statute of limitations in the class-wide trial, and again, if so whether and how they intend to offer individual evidence on which Defendants believe Plaintiffs bear the burden of proof;

(2)    whether Plaintiffs anticipate trying damages along with liability issues in one trial, whether they seek to offer an aggregate damages calculation or some other measure of damages, and how and when Plaintiffs contemplate Defendants would be permitted to offer individual evidence relevant to damages;

(3)    how the trial would address individual evidence as to class member "circumstances," as required under FDUTPA;

(4)    whether Plaintiffs intend to try their individual RICO claims in the same trial as their class-wide FDUTPA claims, and if so, how they intend to do so;

(5)    how arbitration issues can be resolved to exclude class members subject to such agreements; and

(6)    what specific questions should be submitted to the jury.

(*See* Exhibit A, Mar. 25, 2022, Ltr. from B. Ercole to J. Meltzer, at 2–3.)  Toyota also requested—on numerous occasions—that Plaintiffs provide Defendants the Class Member Information obtained by the notice administrator.  (*See* Exhibit B, March 17 and Apr. 14, 2022, emails.)

On April 8, 2022, counsel for Plaintiffs responded.  (*See* Exhibit C, Apr. 8, 2022, Ltr. from

T. Graden to B. Ercole.)  Plaintiffs' April 8 letter did not address the difference between a class certification determination, which can permit a class action to proceed even where there are relevant individual issues, and the plan for actually "try[ing] the case," which requires careful consideration of how and when individual issues will be addressed.  4 Newberg on Class Actions § 11.6 (5th ed.).  Rather than discussing the issues raised by Toyota, Plaintiffs took the position that many of the issues "have already been decided by the Court, have been waived, or are premature at this time."  (Ex. C, at 1.)  Plaintiffs' letter provided no meaningful plan to address the trial-related questions raised by Toyota.

Counsel for Toyota then requested a meeting with Plaintiffs' counsel and sent a further letter in advance of the Parties' meet and confer.  (*See* Exhibit D, Apr. 19, 2022, Ltr. from B. Ercole to J. Meltzer.)  That letter reiterated Defendants' position on the structure of the anticipated trial and again requested a meaningful proposal from Plaintiffs to address core individual issues at the July 5 trial, including with respect to statute of limitations and damages.

On April 20, 2022, the parties met and conferred regarding trial planning.  That meeting resulted in an impasse on the following issues:

(1) ***Statute of Limitations***.  Plaintiffs did not take a clear position on this issue, but appear to believe that all statute of limitations issues (including whether Plaintiffs can show fraudulent concealment tolling and the component of due diligence for each class member) should be resolved for all class members during the July 5 trial. Plaintiffs, however, have offered no plan for doing so.  Given the need for class member-specific showings by Plaintiffs as to tolling, Defendants do not see how this issue can be resolved for all class members in one class trial.[3]

(2) ***Damages***.  Plaintiffs contend that liability and damages under FDUTPA should be tried in the July 5 trial, but have offered no plan for doing so, including whether they intend to seek a class-wide damages determination, how individual damages can be determined based upon class-member specific information, and how and

---

[3]     This is particularly the case where Plaintiffs seek to preclude Defendants from "introduce[ing] evidence regarding, or making reference to members of the FDUTPA Class." (ECF No. 381, at 5.)

when Defendants could offer evidence specific to individual class members regarding the absence of actual harm and amount of damages. Defendants respectfully submit that the necessary factual determinations pertaining to actual injury and damages cannot be made in a single class trial.

(3)     ***Individual RICO Claims***. Plaintiffs intend to try their individual RICO claims in a class trial with no class-wide RICO claims. Defendants believe that trying the individual RICO claims will be confusing, prejudicial, and unmanageable, and raises serious adequacy concerns regarding the Plaintiffs, who plan to present and try individual clams that are different than the rest of the class.

(4)     ***Same Circumstances***. Plaintiffs have not offered any plan for how the class trial can address individual evidence regarding the varying "circumstances" of class members, as required under FDUTPA to measure whether an objectively reasonable consumer in those "same circumstances" was likely to be misled.

(5)     ***Arbitration***. Plaintiffs claim that Defendants have waived any right to compel arbitration on behalf of absent class members. Defendants submit that Plaintiffs' position is inconsistent with the Order, *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230 (11th Cir. 2018), and Defendants' answers preserving this defense.

(6)     ***Class Member Information***. Plaintiffs currently have refused to provide the Class Member Information obtained from the DMV and have provided no legal authority to support their position. Defendants believe this information is critical to many issues in this case and the upcoming trial and must be provided immediately.

(7)     ***Pretrial Dates***. Plaintiffs believe that the default Federal and Local Rules should govern pretrial deadlines for jury instructions, jury verdict forms, and witness/exhibit lists. Defendants believe that the Parties should coordinate by exchanging drafts in advance of any deadlines, and, at a minimum, the Court should set pretrial deadlines consistent with its prior scheduling orders.

As a result of these differences, Defendants seek an early case management conference under Rule 16 to discuss these important threshold issues and to clarify the contours of the July 5 trial, sufficiently in advance, so that they may properly prepare.

## III.  ARGUMENT

The Court can require the parties to appear for one or more pretrial conferences. Fed. R. Civ. P. 16(a). One of the core purposes of such a pre-trial conference is to improve the "quality of the trial through more thorough preparation." Fed. R. Civ. P. 16(a)(4). A Rule 16 pretrial conference is appropriate where necessary, among other things, to help simplify the issues for trial,

to adopt "procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems," and to facilitate "the just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P. 16(c)(2).

Indeed, the Court "may hold a final pretrial conference to formulate a trial plan, including a plan to facilitate the admission of evidence." Fed. R. Civ. P. 16(e); *see also Buffington v. Wood*, 351 F.2d 292, 298 (3d Cir. 1965) ("One of [pretrial procedure's] principal functions is to ascertain the real points in dispute, to strip the controversy of non-essentials, and to mold it into such form as will make it possible to dispose of the contest properly with the least possible waste of time and expense."); *see also* Manual for Complex Litigation §§ 11.61, 21 (4th ed.) (Rule 16 "takes on special importance for complex litigation" which includes class actions and Rule 16(d) "requires that . . . the parties formulate a plan for trial . . . ."). In a class action, a pretrial conference is critical to formulate an appropriate and comprehensive trial plan.[4]

Here, as set forth below, the parties are at impasse regarding core trial structure issues for a trial currently set for July 5. Defendants request that the Court enter an Order that schedules a Rule 16 pretrial conference at the Court's earliest convenience and that adopts Defendants' proposed trial structure, requires Plaintiffs to provide recently-obtained Class Member Information immediately, and sets forth pretrial dates consistent with its prior scheduling orders.

## A.     A Rule 16 Conference Is Needed To Address Core Trial Structure Issues And The Parties' Impasse.

Plaintiffs have not provided any manageable plan for how the July 5 trial with respect to Plaintiffs' FDUTPA class claims can resolve the following issues: (1) statute of limitations and

---

[4]     The Court's initial scheduling order noted that the parties could request a pretrial conference. (*See* ECF Nos. 46, at 2.) For the reasons stated herein, Defendants respectfully request that the Court hold such a conference at its earliest convenience prior to calendar call.

fraudulent concealment; (2) damages determinations; (3) Plaintiffs' individual RICO claims; and (4) evidence regarding the varying "circumstances" of class members.  Nor have Plaintiffs shown that Defendants have waived their arbitration defense.  It is therefore crucial that the Court and the parties address these trial planning issues through a Rule 16 conference.

> ### 1.    This Case Presents Unique Statute Of Limitations Issues That Cannot Be Resolved On A Class-Wide Basis At Trial And Defendants Are <u>Entitled To Present Individual Evidence On These Issues.</u>

FDUTPA is subject to a four-year limitations period that runs from the date of purchase. *See Koski*, 347 F. Supp. 3d at 1192.  ("Pursuant to Florida Statute § 95.11(3)(f), the statute of limitations for a FDUTPA claim is four years. . .  The statute of limitations accrues at the time the product at issue is purchased."); *Speier-Roche v. Volkswagen Grp. of Am. Inc.*, 2014 WL 1745050, at *6 (S.D. Fla. Apr. 30, 2014) (Moreno, J.) ("A FDUTPA claim accrues at the time of purchase or lease of a product, not upon discovery of an alleged defect."); *Collins v. Quincy Bioscience, LLC*, 2020 WL 3268340, at *17 (S.D. Fla. Mar. 19, 2020) (same).

Here, SET records indicate that the overwhelming majority of Class Vehicles—that is, approximately 85,000 of the more than 97,000 Class Vehicles, or 87% of them, were acquired[5] prior to July 12, 2014, and are therefore outside the four-year limitations period applicable to FDUTPA.  Thus, the claims of approximately 87 % of class members are barred unless Plaintiffs can show fraudulent concealment as to each of those class members.

In the Order, the Court explained that Plaintiffs intend to "raise fraudulent concealment as a tolling doctrine."  (Order 28.)  As with any type of equitable tolling doctrine, Plaintiffs bear the

---

[5]    It is unclear precisely how many of the 97,000-plus vehicles are leases, as opposed to purchases, and therefore fall outside the definition of the class. SET records indicate that approximately 22,000 are leases, but SET would need additional Class Member Information in Plaintiffs' possession to ascertain the precise number. Regardless, SET does not expect the percentage of vehicles purchased prior to July 12, 2014, to deviate significantly from 87%.

burden of proof as to the elements of fraudulent concealment.  *See Fedance v. Harris*, 1 F.4th 1278, 1287 (11th Cir. 2021) (listing elements a "plaintiff must show").  Under Florida law, "the plaintiff must show (1) successful concealment of the cause of action; (2) fraudulent means to achieve that concealment and (3) that the plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of the claim."  *Adderley v. Three Angels Broad. Network, Inc*., 2019 WL 7189887, at *4 (S.D. Fla. Dec. 26, 2019); *see also Razor Cap., LLC v. CMAX Fin. LLC*, 2017 WL 3481761, at *4 (S.D. Fla. Aug. 14, 2017) (same).  This doctrine requires proof that each class member received an affirmative post-purchase fraudulent misstatement from Toyota, as well as one from SET, and relied upon each of those misstatements to avoid bringing his or her claims in a timely manner.  *See, e.g.*, *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1229 (S.D. Fla. 2021) ("concealing conduct must occur" after accrual of action on "the date of purchase").

Plaintiffs have not provided any manageable way of addressing individual issues associated with several elements needed to prove fraudulent concealment.  *See Fedance*, 1 F.4th at 1287; *Speier-Roche*, 2014 WL 1745050, at *7.  For example, although nondisclosure of an alleged defect may be the basis for a FDUTPA claim, it is ***insufficient*** to show successful concealment or fraudulent means for purposes of tolling.  *Speier-Roche*, 2014 WL 1745050, at *7 (rejecting "a claim of mere 'nondisclosure' which, under Florida law, is legally insufficient to toll the statute of limitations"); *see also Lewis*, 530 F. Supp. 3d at 1229 (same); *Fisher v. Harley-Davidson Motor Grp.*, LLC, 2019 WL 8014364, at *3 (S.D. Fla. Oct. 18, 2019) ("affirmative conduct required").

Plaintiffs must show that each of the Defendants individually "deliberately and actively concealed the material facts" that induced each class member not to assert his or her claims in a timely manner.  *Speier-Roche*, 2014 WL 1745050, at *7. As the Court recognized in the Order,

there is no uniform affirmative misstatement to which each class member was exposed.  (*See* Order 20–21 ("Based on the evidence Plaintiffs offer, it was **only** those people who already owned a Class Vehicle **and** brought it to a dealership complaining of odor who were the **potential** victims of a misrepresentation-i.e., they were the only people told that the odor was normal." (emphasis added)); *see also id.* at 21, n.3.)  As a result, each class member will need to show that he or she received a false statement from each Defendant after purchase that prevented him or her from asserting a claim.  Defendants contend that the potential number of Class Members who received any statement at all about HVAC odor or the HVAC systems is very small, and Defendants have the right to challenge any contention that any statements made to these individuals were false.  Plaintiffs offer no proposal for how they can meet their burden on this issue of fraudulent concealment during the class trial.  *See Lewis*, 530 F. Supp. 3d at 1229 ("Applying these standards to FDUTPA claims stemming from alleged defects in motor vehicles, courts have consistently held that even assuming the defendants knew of the defect, the nondisclosure itself does not toll the statute of limitations" and that allegedly false statements made by a car manufacturer "could not establish fraudulent concealment" unless relied upon by class member after purchasing vehicle.).

In addition, for tolling to apply, each class member must show that he or she has "'pursued [his or her] rights diligently;' in other words, 'the tolling ceases when those facts are, or should have been, discovered by the plaintiff.'"  (Order 28 (quoting *Fedance*, 1 F.4th at 1287)); *see also Berisford v. Jack Eckerd Corp.*, 667 So. 2d 809, 812 (Fla. Dist. 4th DCA 1995) (under Florida law, "a party seeking to avail itself of the doctrine of fraudulent concealment must have exercised reasonable care and diligence in seeking to learn the facts which would disclose the fraud").  This element also requires plaintiffs to come forward with class member specific showings, such as (1) what alleged statements were made to them, if any, upon which they relied; and (2) what actions

the class member subsequently took to diligently pursue any claims.  *Id.*; *see also Lewis*, 530 F.
Supp. 3d at 1229 (explaining plaintiff must rely on affirmative misstatement after cause of action
accrues).  Take Plaintiff Baker, for example.  Mr. Baker took no action to bring any claim against
Defendants for alleged issues with either of his two Camrys until late 2018, when one day he was
surfing the internet, while bored during recovery from surgery, and happened to find the website
for one of the Plaintiff firms with information about this lawsuit.  (*See* Baker Dep., ECF No. 205-
6, at 168:23–170:3 ("I really couldn't do much of anything.  And so I spent a lot of time just
surfing, looking up everything, mostly history, but anything that I came across. ").)

Plaintiffs have suggested that Defendants are trying to relitigate the summary judgment
ruling regarding statute of limitations.  Plaintiffs confuse the standards that govern summary
judgment and trial.  On summary judgment, the Court did not determine that Mr. Baker (or any
other class member) is immune from the four-year statute of limitations.  Rather, the Court merely
found that there was a disputed issue of material fact with respect to Mr. Baker's fraudulent
concealment contention, on which he bears the burden of proof.  The issue is alive and well for
trial, and Defendants have every right to assert and pursue it.

Given that approximately 87% of class members purchased their vehicles outside the four-
year limitation period for FDUTPA claims, the absence of any affirmative class-wide
misrepresentations, and Plaintiffs' burden to present class-member specific issues concerning
fraudulent concealment, Defendants respectfully submit that statute of limitations issues cannot be
resolved for all class members at the class trial.  *See Hall v. Burger King Corp.*, 1992 WL 372354,
at *9, n.8 (S.D. Fla. Oct. 26, 1992) ("Claims of fraudulent concealment [tolling] involve 'highly
individualized questions of fact' and ***at a minimum***, 'the questions of exercise of due diligence
and success of concealment would have to be answered on an individual basis for each class

12

member.'" (emphasis added) (collecting cases and quoting *Bill Minielli Cement Contracting, Inc. v. Richter Concrete Corp.*, 62 F.R.D. 381, 390 (S.D. Ohio 1973)).[6]  Plaintiffs have presented no plan for doing so, nor can they.  Therefore, a Rule 16 conference is required to address this issue.

### 2. Damages Determinations Cannot Be Made On A Class-Wide Basis At Trial.

There are multiple reasons why class member damages cannot and should not be determined as part of the class trial.  As just one example, the statute of limitations issues discussed above preclude Plaintiffs from seeking an aggregate class-wide damages number for their FDUTPA claims at trial, because, even if other elements of liability are proven, the number of class members whose claims are barred by the statute of limitations (and would not be entitled to damages) remains unknown.  Given the age of the vehicles covered by the certified class (2012–2014 model-year), and given the date of filing this action (July 12, 2018) the ***vast majority*** of class-member purchases are outside the four-year limitations period.  Not until the individual issues of fraudulent concealment are resolved for each class member will the number of eligible class members be known, as required to calculate damages.

In addition, Plaintiffs have not offered any way of establishing harm and calculating damages by class member.  Plaintiffs do not dispute that injury and damage determinations will differ by class member.  And Plaintiffs' experts have not calculated damages for any individual class member, such as, for instance, where there are multiple purchasers of a single vehicle, where the purchaser later traded in or resold her vehicle without ever experiencing any problem, or where the purchaser accounted for any allegedly problematic features as part of the vehicle price

---

[6]    *In re Checking Acct. Overdraft Litig.*, 307 F.R.D. 656, 680 (S.D. Fla. 2015), cited in the Order (Order 28), did not address the fraudulent concealment tolling elements or how they could be proven class-wide, where, like here, no common evidence exists as to affirmative misstatements or due diligence of absent class members.

negotiation.  The Order contemplates the possibility of "individual damages proceedings."  (Order, at 29); *see also* 4 Newberg on Class Actions § 11:6 (5th ed.) (stating that while "individual damage issues [generally] should not defeat class certification . . . to say that is one thing, to try the case another" and that "[c]ourts have employed either issue certification (certifying only the question of liability for class treatment) or bifurcation (separating liability from damages and trying liability first, then damages) as the means to effectuate the goal of aggregated treatment").  And Plaintiffs' experts presumed a post-trial claims process.  (*See, e.g.*, Exhibit E, Weir Dep. 14:16–15:16.)

Moreover, Defendants have a due process right to present evidence showing that individual class members suffered no or little harm based on class member-specific proof.  For example, Defendants are entitled to show that class members who experienced no HVAC odor and then recouped any alleged overpayment in a subsequent sale of their class vehicles have suffered no actual damages, and, therefore, have no right to recover under FDUTPA.  *See Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *5 (S.D. Fla. Dec. 5, 2013) ("[Plaintiff] purchased the Jetta at a price that did not take account of the defect, and she sold the Jetta at a price that did not take account of the defect. She therefore did not suffer the loss of any value in the Jetta that could constitute 'actual damages [under FDUTPA].'").  Defendants similarly have the right to present evidence that in the limited occasions in which a purchaser actually complained of HVAC odor to an authorized Toyota dealer, the complaint was resolved via warranty and/or goodwill.

During the parties' meet and confer, Plaintiffs would not advise Toyota how they plan to address damages determinations at any class trial, or how they could meet their burden on those elements that require class-member specific proof.

> **3.      Plaintiffs' Individual RICO Claims Should Not Be Tried Alongside Class-Wide FDUTPA Claims.**

Plaintiffs have now insisted that the July 5 trial not only address the FDUTPA class claims

of the Plaintiffs and the class, but also the ***individual*** claims of two Plaintiffs under civil RICO that are not shared by the class.  Defendants respectfully submit that it would be inappropriate to include Plaintiffs' individual RICO claims for several reasons.

   ***First***, trying Plaintiffs' individual RICO claims in a non-RICO class trial will unduly complicate the case and create the risk of significant jury confusion.  The jury will be forced to distinguish between the elements of RICO and FDUTPA claims based upon evidence presented by different parties (that is, Plaintiffs and the class).  Civil RICO claims are complicated, and FDUTPA and RICO involve different elements, necessitating different evidence, arguments, defenses, and complicated jury instructions.  For instance, unlike FDUTPA, civil RICO requires Plaintiffs to show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," as well as (5) the "requisite injury to 'business or property'" and (6) "that such injury was 'by reason of' the substantive RICO violation."  *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282–83 (11th Cir. 2006), abrogated on other grounds as recognized in *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 714–15 (11th Cir. 2014); *see also* 18 U.S.C. § 1962(c).  Each of these requirements has its own specific elements and nuanced distinctions.  Plaintiffs also have asserted an individual RICO civil conspiracy claim, which imposes still additional requirements.  *See, e.g.*, *Beck v. Prupis*, 162 F. 3d 1090, 1098 (11th Cir. 1998).  And RICO carries its own statute of limitations, with its own accrual rules.  *See Rotella v. Wood*, 528 U.S. 549, 554 (2000) (civil RICO subject to four-year limitations period that accrues upon discovery of injury).  Instructing the jury on civil RICO for two individual claims, followed by instructions on proving FDUTPA claims on a class-wide basis, will only confuse the jury.

   ***Second***, apart from confusing the jury, Defendants are likely to be prejudiced by trying the Plaintiffs' individual RICO claims with the FDUTPA claims.  The two claims involve wholly

different legal theories—one (RICO) requires affirmative misstatements and the Court has found the other (FDUTPA) does not.  The jury, for instance, may inadvertently consider evidence pertaining to Plaintiffs' individual RICO claims when evaluating whether Plaintiffs have met their burden of proving FDUTPA claims on behalf of all class members.  The potential for spill-over prejudice as to the FDUTPA class claims is immense.

*Third*, Defendants believe Plaintiffs cannot present a viable offer of proof as to how they can move forward to trial with their individual RICO claims, given the Court's class certification decision on RICO.[7]  The Court has held that there is no duty to disclose the alleged HVAC defect under established RICO case law, absent false statements or "half truths" made to Plaintiffs *before* purchase.  (Order 22.)  And Plaintiffs have affirmatively admitted that they cannot identify any misrepresentations that they received in connection with the purchase of their vehicles.  (*See* Exhibit F, Baker Suppl. Answer to Toyota Interrog. No. 13 (stating that he "cannot recall any specific advertisements or promotional materials regarding Plaintiff's Class Vehicles" in response to interrogatory requesting specific misrepresentations made by Toyota); Exhibit G, Cardenas Suppl. Answer to Toyota Interrog. No. 13 (same as to Cardenas).)   Plaintiffs should not try their individual RICO claims in the July 5 trial given this Court's rulings and their own admissions.

*Lastly*, Plaintiffs' insistence on trying their individual RICO claims raises serious concerns about their adequacy as class representatives.  Plaintiffs cannot properly or adequately represent a FDUTPA class, while simultaneously seeking individual damages, in treble amount for themselves only, for RICO and RICO conspiracy claims.  Plaintiffs may sacrifice their pursuit of the class-

---

[7]     The Court's class certification decision addressing RICO legal issues rejected Magistrate Judge Louis' certification of a RICO class, and was issued several months after Magistrate Judge Louis' summary judgment report and recommendation permitting Cardenas' and Baker's individual RICO claims to move forward.

wide FDUTPA claim in favor of the higher damages, but more complicated RICO claim, for themselves only. Fed. R. Civ. P. 23(a)(4) (representatives must "fairly and adequately protect the interests of the class"); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987) (Rule 23(a)(4) evaluates "whether plaintiffs have interests antagonistic to those of the rest of the class." (internal quotation and citation omitted)). Plaintiffs' desire to try both individual RICO claims (with a higher individual value) and class FDUTPA claims in one trial creates such a conflict. Plaintiffs cannot obtain double recovery, and there is a clear conflict between pursuing individual RICO claims allowing for higher damages and FDUTPA class claims.

### 4. Plaintiffs Offer No Manageable Plan To Address Evidence Related To The "Same Circumstances" Test Under FDUTPA.

In trying FDUTPA liability, Defendants must be allowed to put on defenses relating to the differing circumstances of class members surrounding the purchase of Class Vehicles. This is because FDUTPA requires evidence that the "alleged practice was likely to deceive a consumer acting reasonably *in the same circumstances*." *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009) (emphasis added; internal quotations and citations omitted); *State, Off. of Att'y Gen., Dep't of Legal Affs. v. Com. Com. Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007) (stating "same circumstances" test). While the Order found that common issues predominate, that does not mean individual evidence of the varying circumstances of class members is irrelevant. To the contrary, "one can only assess reasonableness when the inquiry requires consideration of the factual circumstances that counsel a reasonable person to act in a particular way or hold a particular belief." *In re Motions to Certify Classes Against Court Reporting Firms*, 715 F. Supp. 2d 1265, 1282 (S.D. Fla. 2010), *aff'd sub nom. Webber v. Esquire Deposition Servs., LLC*, 439 F. App'x 849 (11th Cir. 2011).

Plaintiffs have not offered any manageable plan to address individual evidence regarding

the "circumstances" of class members necessary to assess whether a reasonable consumer would have been misled by any alleged omission under those circumstances. This includes, for instance, whether class members had knowledge of the potential for HVAC odor at the time of purchase, whether they previously owned a class vehicle before purchasing another one, or even whether they had any role in the purchasing decision (or merely signed paperwork or furnished money). A pretrial conference is needed to address how such evidence and this requirement can be manageably addressed at trial.

**B.     Defendants Are Entitled To Class Member Information In Plaintiffs' Possession.**

Pursuant to Court Order, the notice administrator obtained Class Member Information from the Florida DMV, including information pertaining to the size of the class, the number of Class Vehicle purchasers (*i.e.*, there may be more than one purchaser per vehicle), and when those purchases took place. Plaintiffs presumably have access to that information but refuse to share it. Defendants must be provided Class Member Information obtained by the notice administrator.

The rule is simple: While Plaintiffs bear the cost of compiling such information, both parties are entitled to receive it. *See, e.g.*, *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1100, 1102 (5th Cir. 1977) (rejecting argument that "defendants should be required at their own expense to supply the names and addresses of the class members" and instead holding that "plaintiffs would be required to furnish at their own expense the necessary class information"); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 360–61 (1978) (defendants received class member information to challenge redefinition of the class, even where plaintiff bear the costs of sending out notice); *see also Rosen v. J.M. Auto, Inc.*, 2009 WL 1033816, at *7 (S.D. Fla. Apr. 17, 2009) (plaintiffs must reimburse defendants for compiling and furnishing class list). Indeed, this rule is particularly applicable here, where SET voluntarily provided VIN information after the

18

close of discovery to facilitate the ability of the notice administrator (and Plaintiffs) to acquire a list of class members from the DMV.

In addition, withholding this information is improper because Defendants would be prejudiced without it.  Defendants are entitled to access and evaluate this information to confirm or determine:  (1) the individuals identified by the administrator comport with the certified class as defined in this Court's Order; (2) the number of class members at issue, and, thus, the size of the class, which is critical with respect to evaluating damages and what Plaintiffs must prove; (3) when particular class members purchased their class vehicles, which is critical with respect to evaluating statute of limitation issues; and (4) whether class members entered arbitration agreements in connection with their class vehicles.  Despite Defendants' representations at the April 20, 2022 meet and confer that they would not use the information to contact absent class members, Plaintiffs have not yet agreed to provide this information to Defendants.

Concerning arbitration, Plaintiffs claim that Defendants have waived any right to seek to require mandatory arbitration on behalf of absent class members.  This is contrary to Eleventh Circuit precedent, the Order, and Defendants' answers preserving this defense.  *See Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1238 (11th Cir. 2018) (reversing finding of waiver because, prior to certification, defendant "would not even have been able to identify the specific plaintiffs against which it planned to seek arbitration, much less ascertain its arbitration-related rights as to them"); Order, at 28–29 (stating that "[u]ntil" Defendants identify number of absent class members subject to arbitration and applicability of agreements, "the Court declines to find that this possibility cuts against predominance" and that "if evidence later shows that an affirmative defense is likely to bar claims against some class members, there are adequate procedural mechanisms at its disposal"); ECF No. 55, at 4th Affirmative Defense (pleading mandatory arbitration for absent

class members as affirmative defense); ECF No. 56, at 6th Affirmative Defense (same); ECF No. 57, at 6th Affirmative Defense (same); ECF No. 58, at 6th Affirmative Defense (same).  As in *Gutierrez*, Defendants cannot ascertain their arbitration rights without the Class Member Information obtained by the administrator.  889 F.3d at 1238.  To date, Plaintiffs have refused to provide Defendants with information to properly evaluate this issue.

     **C.**     **The Court Should Set Pretrial Deadlines.**

The Court has set a trial date of July 5.  However, the Court has not yet set pretrial deadlines, as the Court indicated it would do after ruling on class certification.  (*See* ECF No. 370 ("The Court will set other pretrial deadlines after its ruling on class certification.").)

Defendants proposed schedule (Exhibit H) tracks the relative exchange of pretrial materials in the Court's prior orders addressing pretrial deadlines.  (*See* ECF Nos. 46, 96, 214, 305.) Defendants' proposed schedule also builds in additional time given the complex nature of a class-trial and the need to confer on items such as jury instructions, verdict forms, and the use of special interrogatories, if necessary.

     **D.**     **A Pretrial Conference Is Needed To Address Other Critical Trial Logistical Issues.**

Defendants respectfully submit that a pretrial conference will also provide necessary guidance to the parties on other critical logistical issues with respect to trial, including, but not limited to, the length of time that the Court will give the parties to try the case, time allotments for each side, and the Court's process for *voir dire* and jury questionnaires.

## IV.     CONCLUSION

For these reasons, pursuant to Rule 16, Defendants request a pretrial conference to determine trial structure and the entry of pre-trial deadlines.  At the Court's request, Defendants can further brief any of the above-raised issues either before or after the pretrial conference.

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)</u>

As detailed above, counsel for Defendants have conferred with Plaintiffs' counsel about the issues raised in this Motion in accordance with Local Rule 7.1(a)(3), and Plaintiffs oppose the Motion.

Dated:   May 2, 2022                    Respectfully submitted,

<u>s/ Brian M. Ercole</u>
Brian M. Ercole (Florida Bar No. 102189)
brian.ercole@morganlewis.com
Melissa M. Coates (Florida Bar No. 111420)
melissa.coates@morganlewis.com
Matthew M. Papkin (Florida Bar No. 106565)
matthew.papkin@morganlewis.com
Morgan, Lewis & Bockius LLP
200 South Biscayne Boulevard, Suite 5300
Miami, Florida  33131-2339
Tel:  +1.305.415.3000
Fax:  +1.305.415.3001

J. Gordon Cooney, Jr. (admitted *pro hac vice*)
gordon.cooney@morganlewis.com
Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA  19103-2921
Tel:  +1.215.963.4806
Fax:  +215.963.5001

David L. Schrader (admitted *pro hac vice*)
david.schrader@morganlewis.com
Lisa R. Weddle (admitted *pro hac vice*)
lisa.weddle@morganlewis.com
Morgan, Lewis & Bockius LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: +1.213.612.2500
Fax: +1.213.612.2501

Brent Hawkins (admitted *pro hac vice*)
brent.hawkins@morganlewis.com
Mark Feller (admitted *pro hac vice*)
mark.feller@morganlewis.com
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel: +1.415.442.1000
Fax: +1.415.442.1001

*Attorneys for Defendants Toyota Motor
Corporation, Toyota Motor Sales, U.S.A., Inc.,
and Toyota Motor Engineering &
Manufacturing North America, Inc.*

Robert E. Sacks
rsacks@sbwh.law
Joshua L. Zipper
jzipper@sbwh.law
SHAPIRO, BLASI, WASSERMAN &
HERMANN, P.A. 7777
Glades Road, Suite 400
Boca Raton, Florida 33434
Telephone: (561) 477-7800

*Attorneys for Defendant Southeast Toyota
Distributors, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 2nd day of May 2022, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*s/ Brian M. Ercole*
Brian M. Ercole
