UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 18-22798-CIV-MORENO

JAVIER CARDENAS and RODNEY BAKER,
individually and on behalf of all others simiarly
situated,

   Plaintiffs,

vs.

TOYOTA MOTOR CORPORATION;
TOYOTA MOTOR SALES, U.S.A., INC.;
TOYOTA MOTOR ENGINEERING &
MANUFACTURING, INC.; and
SOUTHEAST TOYOTA DISTRIBUTORS,
LLC,

   Defendants.
_____/

## ORDER DENYING PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT SARAH BUTLER

THIS CAUSE came before the Court upon Plaintiffs' Renewed Motion to Exclude Defenndants' Expert Sarah Butler **(D.E. 389)**, filed on **April 8, 2022**. The Court has considered the motion, the response in opposition, the reply, pertinent portions of the record, and being otherwise fully advised in the premises, it is **ADJUDGED** that the motion is **DENIED** for the following reasons.

**I. Background**

Javier Cardenas and Rodney Baker (referred throughout just as Cardenas) are the representatives in this class action against Toyota about how the company produced cars that stink and then concealed that fact from purchasers. This order concerns Cardenas's renewed motion to strike the expert opinions, report, and testimony of Toyota's expert named Sarah

Butler. Butler is a managing director of a firm that provides expert statistical, survey, economic, and financial research analysis.

The so-called "Butler report" attempts to evaluate how potential purchasers would respond to a disclosure from Toyota regarding the potential for odor from an HVAC design defect. Butler surveyed 412 respondents. In the "non-disclosure group," 207 individuals were shown Kelley Blue Book reviews of certain 2020 model Toyota Camry vehicles. In the "disclosure group," 205 individuals were shown a modified version of the same review that contained an additional disclosure: "Toyota has disclosed that the HVAC system in the [class vehicles] may emit a musty, damp, and/or sour odor. HVAC system odor has many causes, and may be caused by a design that allows condensing water to accumulate and for naturally occurring organic materials to be trapped in the system." Based on this survey, Butler concluded that potential purchasers would have cared little about the disclosure and the possible defect. Cardenas now moves to exclude Butler for reasons that are discussed below.

## II. Legal Standard

Federal Rule of Evidence 702 governs the admission of expert witnesses. Under that Rule, four conditions must be satisfied before an expert may testify: (1) the expert's scientific, technical, or otherwise special knowledge will help the jury to understand the evidence or determine a disputed fact; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; (4) the expert has reliably applied those principles and methods to the facts of the case. Fed. R. Evid. 702. Through the application of this Rule, the district court acts as a gatekeeper to make sure that speculative or unreliable expert evidence is not presented to the jury. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005).

The Supreme Court's decision in *Daubert v. Merrell Down Pharmaceuticals, Inc.* provides a three-part inquiry that district courts undertake in applying Rule 702. 509 U.S. 579 (1993). That case requires a "rigorous inquiry to determine whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Rink*, 400 F.3d at 1291–92 (simplified). We refer to these three elements as "qualification, reliability, and helpfulness." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Reliability is determined by considering whether the reasoning or methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts of the case. *Id.* at 1262. Helpfulness means that testimony must be "relevant to the task at hand," or in other words, it must "logically advance[] a material aspect" of the party's case and have a "valid scientific connection to the disputed facts." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (simplified). As a result, this requirement is sometimes called "fit." *Id.*

### III. Discussion and Conclusion

Cardenas's first argument is that the Butler survey does nothing more than confirm that most respondents did not notice the disclosure about HVAC odor because it was buried in a lengthy product review. The survey therefore does not, as Butler suggests, test the importance of the HVAC disclosure to the respondents. To support this argument, Cardenas points out that the product review, when printed, is over ten feet long; and the disclosure itself occupied only a

small portion of the review. Further, Cardenas explains that zero out of 205 respondents clicked the hyperlink that provided more information about the disclosure.

The Court agrees with Toyota that this argument is weak. First, the disclosure was presented to respondents in a real-world format that permitted them to attach whatever significance that they deemed appropriate to the disclosure. That no respondents clicked the hyperlink to additional information is consistent with (but not irrefutable evidence of) Butler's conclusion that respondents did not find the disclosure important. Second, Cardenas's characterization of the disclosure as only occupying a small part of a ten-foot-long review is misleading: the disclosure was not shown on paper, but rather on a survey presented on a computer, where it occupied a reasonable portion of the screen. Finally, Cardenas has not identified an actual survey principle or method that was violated. On the contrary, Butler designed the survey to avoid "focalism bias," consistent with a well-accepted survey principle that counsels against asking leading questions that "prime" or "focus" respondents on the particular feature being tested. *See, e.g., Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1049 (C.D. Cal. 2018).

Cardenas disagrees, of course, explaining that the survey is flawed because Butler "failed to rule out a highly likely alternative cause . . . for the effects observed; namely, that only a small minority of the respondents likely noticed or read the HVAC disclosure." Cardenas and his experts may have—in their view—a better or more plausible interpretation of the data collected by the Butler survey. But these objections go to weight, not admissibility. *See Cardenas v. Toyota Motor Corp.*, 2021 WL 5811741, at *4-5 (S.D. Fla. Dec. 6, 2021) (collecting cases). As other judges in this district have acknowledged: "While there will be occasions when the proffered survey is so flawed as to be completely unhelpful to the trier of fact and therefore

4

inadmissible, such situations will be rare." *Taylor v. Trapeze Mgmt., LLC*, 2019 WL 1977514, at *2 (S.D. Fla. Feb. 28, 2019).

Cardenas next argues that Butler did not test a legitimate disclosure about the defect because the disclosure language in the survey more closely tracked Toyota's defense than his theory of the case. The language in issue said: "HVAC system odor has many causes" and "may be caused by a design that allows . . . for naturally occurring organic materials to be trapped in the system." This phrasing, according to Cardenas, is similar to the language that Toyota used in its technical service bulletins, which he says were misleading.

The Courts finds this argument similarly unpersuasive. First, this language tracks the language that Cardenas's own expert used in his report: "musty, damp, or sour odor *may be emitted* from the HVAC system of some of the vehicles." (D.E. 406-5 at 19) (emphasis added). But either way, the sufficiency of the language used in a survey is again the type of objection that goes to weight and not admissibility. *See Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, 2020 WL 1666763, at *13 (S.D. Fla. Apr. 3, 2020).

Cardenas's last argument stands on the shoulders of his first two: because the Butler survey does not answer what weight respondents accorded the disclosure but instead whether they noticed it, the survey will not assist the jury in this case and should thus be excluded. This argument is a re-branded iteration of the first two. Because the first two arguments do not provide sufficient grounds for exclusion, this argument similarly fails.

The motion to exclude is thus **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this 15 of August 2022.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record