UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 18-22798-CIV-MORENO

JAVIER CARDENAS and RODNEY BAKER,
individually and on behalf of all others simiarly
situated,

        Plaintiffs,

vs.

TOYOTA MOTOR CORPORATION;
TOYOTA MOTOR SALES, U.S.A., INC.;
TOYOTA MOTOR ENGINEERING &
MANUFACTURING, INC.; and
SOUTHEAST TOYOTA DISTRIBUTORS,
LLC,

        Defendants.
_____/

## ORDER DENYING PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT RONALD WILCOX

THIS CAUSE came before the Court upon Plaintiffs' Renewed Motion to Exclude Defendants' Expert Ronald Wilcox **(D.E. 400)**, filed on **April 8, 2022**. The Court has considered the motion, the response in opposition, the reply, pertinent portions of the record, and being otherwise fully advised in the premises, it is **ADJUDGED** that the motion is **DENIED** for the following reasons.

**I.**    **Background**

This is a class action case brought under Florida's Deceptive and Unfair Trade Practices Act. The named plaintiffs, Javier Cardenas and Rodney Baker, allege that various Toyota entities concealed a defect in the Heating, Ventilation, and Air Conditioning units of 2012 – 2014 Toyota Camry vehicles. Toyota offers Professor Ronald Wilcox as an expert in consumer

behavior. In general, he seeks to testify that even if Toyota disclosed the alleged defect, consumer purchasing decisions would not have changed. Cardenas seeks to exclude Wilcox under Federal Rule of Evidence 702 and *Daubert*.

Ronald Wilcox is a professor of business administration at the University of Virginia's Darden Graduate School of Business Administration. There, he conducts research and teaches classes related to marketing and consumer behavior. Toyota asserts, and Cardenas does not dispute, that Professor Wilcox has extensive expertise in consumer behavior, surveys, and statistical modeling of consumer choice. Toyota retained Wilcox to demonstrate that Cardenas's "core contention" is wrong: it is *not* the case that class members either would not have purchased their class vehicles or would have paid significantly less if Toyota had disclosed the alleged defect. To that end, Wilcox provides three main opinions, which are elaborated upon in his report:

1. Consumers vary in how they make vehicle purchase decisions, and, as a result, any additional disclosure from Toyota would have affected each class member's purchase decision differently.

2. Consumers vary in whether they would have received or reviewed an additional disclosure from Toyota about the potential for HVAC odor.

3. Even if received and reviewed, an additional disclosure about the potential for HVAC odor likely would not have mattered to many consumers for multiple reasons, including: (1) consumers value information sources differently; (2) consumers value vehicle features differently; (3) the incidence of HVAC odor is low; (4) HVAC odor is an industry-wide issue, making it an unlikely differentiator in the vehicle purchase decision; (5) the potential for HVAC odor is known prior to purchase by some consumers; (6) the vast majority of consumers were satisfied with their Class Vehicles; and (7) consumers vary in the perception of HVAC odor and would vary in their response to a disclosure as a result.

As Cardenas points out, much of the data underlying Wilcox's opinions is from surveys completed by Toyota and third-party companies. Those surveys include Maritz's New Vehicle

Customer Survey, J.D. Power's Initial Quality Survey, Toyota's 30-Day Product Quality Survey, Toyota's 90-Day Product Quality Survey, and Toyota's Durability and Product Quality Survey. Wilcox also consults and includes academic literature on consumer behavior and related topics. This is all, of course, in addition to relying on his own expertise in the area.

Cardenas moved to exclude Wilcox's opinions, reports, and testimony in January 2021. In September 2021, the Court denied the motion with leave to refile after the Court's ruling on class certification. In April 2022, Cardenas renewed the motion.

## II. Legal Standard

Federal Rule of Evidence 702, as understood in *Daubert*, governs the admission of expert evidence. District courts, to fulfill their gatekeeping function, must determine three things. First, the expert must be qualified to testify competently regarding the matters he intends to address. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir. 2005). An expert, to be qualified as such, must possess relevant scientific, technical, or otherwise special knowledge on the subject of their testimony. Fed. R. Evid. 702(a). Second, the expert must employ a methodology that is sufficiently reliable. *Rink*, 400 F.3d at 1292. An expert's methodology is reliable where it is based on scientifically valid principles, reasoning, and methodology that are correctly applied to the facts in issue. *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1286 (N.D. Fla. 2017) (citing Frazier, 387 F.3d at 1261-62). The Eleventh Circuit has identified several non-exhaustive factors to guide this inquiry: "(1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; (4) whether the technique is generally accepted by the scientific community. *Rink*, 400 F.3d at 1292. Third and finally, the expert's testimony must assist the jury by application of relevant expertise to understand the

evidence or to determine a fact in issue. *Id.* This requirement, often referred to as "fit," simply means that the expert's testimony must logically advance a material aspect of the offering party's case or defense. *See McDowell v. Brown*, 392 F.3d 1283, 1298–99 (11th Cir. 2004).

### III. Discussion

#### A. Opinion 1

Cardenas first argues that the Court should exclude what he defines as Wilcox's opinion 1—that even if Toyota had provided a disclosure of the defect, many consumers may not have received. Cardenas offers three bases for exclusion: (1) the opinion in effect says that consumers would not have "relied" on the disclosure, but "reliance" is not an element of a claim under Florida's Deceptive and Unfair Trade Practices Act; (2) the opinion is based only on unsupported speculation because Wilcox did not do any of his own surveys, nor did he otherwise communicate with consumers; and (3) the opinion will confuse the jury because Wilcox defines "receive" as meaning both to physically receive the disclosure from Toyota, not from any other source, and to mentally comprehend the disclosure's contents.

These are not adequate bases for exclusion. First, while Cardenas is correct that he needn't prove actual reliance for each class member, he still needs to prove causation. Unlike reliance, causation is an element of a FDUTPA claim. *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006). The Court previously observed in its class certification order that Cardenas must show that the alleged deceptive conduct would have caused a reasonable person to overpay for their vehicle. *See Cardenas v. Toyota Motor Corp.*, 2021 WL 5811741, at *12 (S.D. Fla. Dec. 6, 2021). This means Wilcox's testimony does "fit" the case—if Toyota, through Wilcox, can establish that a reasonable person would still have purchased a class

4

vehicle at the same price in the face of a disclosure, then Cardenas cannot establish that the class suffered damages "as a result" of Toyota's deceptive conduct. Fla. Stat. § 501.211(2).

Next, it is not the case, as Cardenas asserts, that Wilcox only supports opinion 1 with his own say so. To the contrary, Wilcox cites and relies upon academic research on consumer behavior in reaching his conclusions. And Wilcox deploys his own expertise and experience in the field to apply the research to this case. It is true that Wilcox did not perform his own testing, but Cardenas does not cite any authority suggesting that this constitutes per se unreliability. Neither has Cardenas suggested that the underlying data is unreliable.

Finally, Cardenas may disagree with the definition of "receive" that Wilcox uses in his opinion, but it isn't that confusing—it makes sense that "receive" in the context of a defect disclosure would mean to both physically receive and to understand the defect. Even if the definition were confusing, it is so confusing that Wilcox must be precluded from testifying. If anything, Wilcox's unorthodox definitions provide Cardenas with fodder for cross examination. *Cf. FCOA, LLC v. Foremost Title & Escrow Servs., LLC*, 2019 WL 416817, at *4 (S.D. Fla. Feb. 1, 2019).[1]

### B. Opinion 2

Cardenas seeks to exclude what he deems Wilcox's opinion 2—that even if consumers did receive a disclosure, it likely would not have mattered to many of them—on two separate grounds. First, Cardenas argues that the opinion should be excluded because it does not "fit" his claims: this case is about a design defect, not merely HVAC odor, yet Wilcox assumed that the

---

[1] Cardenas also quarrels with the fact that Wilcox only considered the disclosure "received" if it came directly from one of the Toyota-entity defendants (Wilcox did not consider scenarios where the disclosure reached a consumer through a third-party). First, it is not clear why this would be so confusing to the jury as to constitute a ground for exclusion. Second, this method fits Cardenas's theory of the case: it is the Toyota defendants that are being sued for not providing a disclosure, so it makes sense that Wilcox examines the impact of them providing that disclosure.

disclosure would relate to the potential for HVAC odor instead of a defect specifically. Second, Cardenas argues that opinion 2 is unreliable because Wilcox did not base his conclusions on any specific disclosure language, he only assumed that the disclosure would relate to HVAC odor.

Neither is a sufficient ground to exclude him. First, Cardenas himself has not offered any specific disclosure language; although Toyota has offered another expert, Sarah Butler, that opines on the effect of specific language. In any event, Wilcox was not hired to test the effect of different disclosure semantics—he was hired to opine on the *a priori* reasons that a disclosure would not have materially changed consumer purchasing decisions (in view of his expertise on consumer behavior), regardless of how the disclosure was worded.

It is the same story with Cardenas's "HVAC odor" vs. "HVAC defect" objection. The difference between "HVAC odor" and "odor caused by an HVAC defect" is not clear; it is even less clear how it would meaningfully undermine Wilcox's reliability. At bottom, this is a semantic disagreement and, like the objection over the specificity of the disclosure language, it is directed at an alleged technical deficiency that goes to weight, not admissibility. *See Cardenas*, 2021 WL 5811741, at *4.

Cardenas also takes objection to Wilcox's testimony that the incidence rate of HVAC odor is "low" in general and "lower" than the incidence rate in non-Toyota vehicles. Cardenas asserts that this contention suffers from several flaws that render it unreliable and a poor fit for this case: it ignores record evidence to the contrary and it does not consider the severity of the incidents.

The record evidence to which Cardenas refers is internal Toyota documents identifying HVAC odor as a high priority problem for the company. These documents do not create a conflict with Wilcox's conclusion about the incidence rate, which is based upon survey data

from Toyota and third parties, collected from owners of class vehicles. It is possible that HVAC odor remained a priority for Toyota while the incidence rate remained "low" in Wilcox's opinion. Cardenas is not entitled to exclude experts that merely disagree with his factual contentions. Toyota's remaining objections concern the scope of the surveys and the proper interpretation of the underlying data. Again, however, these are mere disagreements that should be submitted to the jury, not excluded by the Court as "junk science." *In re Abilify (Aripiprazole) Prod. Liab. Litig.*, 299 F. Supp. 3d 1291, 1372 (N.D. Fla. 2018). "As the ultimate fact-finder, it is the jury that must determine, finally, where the truth in any case lies, and the district judge as gatekeeper may not usurp this function." *United States v. Frazier*, 387 F.3d 1244, 1272 (11th Cir. 2004).[2]

Cardenas's final objection is that a low incidence rate bears no relation to the impact of a disclosure on consumer behavior. But Wilcox explains the relation in his report: "Academic research (in the context of consumers evaluating insurance) shows that individuals consider the probability of some events to be 'too low' to insure against, while they do consider it worthwhile to purchase insurance for higher-probability events." (D.E. 405-1 at 31-32). He goes on: "Because the incidence of any complaints about HVAC odor in the Class Vehicles varies across individuals, and is consistently low on average, an additional disclosure would likely not have mattered to all putative class members." *Id.* at 32. To the extent Cardenas disagrees with these principles or conclusions, he is free to offer his own expert or cross examine Wilcox. The testimony nevertheless fits within the Wilcox's opinions and is relevant to the issues in this case.

---

[2] The parties engage in satellite skirmishes about the admissibility of the underlying survey data. The Court withholds ruling until the issue is more directly before it. Until then, Wilcox is permitted to rely on data of the type reasonably relied upon in his field when forming an opinion. *See United States v. Scrima*, 819 F.2d 996, 1002 (11th Cir. 1987).

C.  **Miscellaneous Arguments**

Cardenas next argues that Wilcox should be precluded from testifying that some consumers were aware of the potential for HVAC odor before they purchased the vehicle and that class members consulted a variety of sources of information when deciding to purchase their vehicle. To support these arguments, Cardenas insists that an expert may not testify on another's state of mind; more importantly, Wilcox's opinions here did not require any expertise because they are just a distillation of survey data that any lay juror could accomplished on their own.

These arguments are unpersuasive. Wilcox is not testifying on the state of mind of any consumer. He merely points to evidence like internet websites, prior lawsuits, and Toyota's own technical service bulletins to suggest that some consumers had knowledge of the HVAC issue before they purchased the vehicles. (D.E. 405-1 at 34-35). And in view of the sources and data relied upon by Wilcox, it is obvious that a lay juror could not simply review them on their own and reach similarly sophisticated conclusions. Also, the threshold to qualify as an expert is not particularly high. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999).

Finally, Cardenas objects to the part of Wilcox's report where he explains that consumers are likely to vary in their perception of HVAC odor. The stated ground is that he is not qualified as an odor expert. It is true that Wilcox possesses none of the qualifications that would permit him to opine on odor perception, like Toyota's expert Dr. Pamela Dalton. But Wilcox is not ultimately opining on the human perception of odor; rather, in forming his opinion on consumer behavior as it relates to odor in vehicles, he cites the academic literature in that field. (D.E. 405-1 at 40-42). For that reason, his report does not exceed the scope of his expertise.

## IV.     Conclusion

Cardenas has not provided any solid ground to exclude Professor Wilcox's opinions, testimony, or report. The motion to exclude is thus **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this ___16___ of August 2022.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record