**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 18-CV-22798-FAM**

JAVIER CARDENAS and RODNEY
BAKER, individually and on behalf of all
others similarly situated,

               Plaintiffs,

     v.

TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR SALES, U.S.A., INC.,
TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA,
INC., and SOUTHEAST TOYOTA
DISTRIBUTORS, LLC,

               Defendants.

---

**DEFENDANTS' MOTION TO NARROW THE CLASS BASED UPON THE STATUTE**
**OF LIMITATIONS, OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**
**AS TO ALL ABSENT CLASS MEMBERS WHO PURCHASED CLASS VEHICLES**
**<u>FIRST SOLD BEFORE JULY 12, 2014</u>**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 4

     A.     The Court Certified A Fdutpa Class But Recognized That The Class May
           Need To Be Amended To Address Defendants' Affirmative Defenses. ............... 4

     B.     Fdutpa Carries A Four-Year Limitation Period That Runs From The Date
           Of Each Vehicle Purchase. ................................................................................... 4

     C.     More Than 85% Of Class Vehicles Were First Sold Outside The Four-
           Year Limitations Period. ...................................................................................... 5

     D.     Plaintiffs Rely Upon Fraudulent Concealment Tolling, But Have Not
           Provided And Cannot Provide Either Class-Wide Evidence Or A
           Manageable Plan To Address Individual Statute Of Limitations Issues At
           Trial. ..................................................................................................................... 6

III.    THE COURT SHOULD NARROW THE CERTIFIED CLASS TO EXCLUDE
       ABSENT CLASS MEMBERS WHO PURCHASED VEHICLES FIRST SOLD
       BEFORE JULY 12, 2014. ................................................................................... 6

     A.     Resolution Of Fraudulent Concealment Tolling At Trial Will  Require
           Individual Proof And Countless Mini-Trials. ...................................................... 8

     B.     Plaintiffs' Contradictory Arguments For Trying To Prove Fraudulent
           Concealment Tolling Are Foreclosed As A Matter Of Florida Law. ................. 14

     C.     In Similar Circumstances, Courts Have Narrowed Classes To Avoid
           Individual Mini-Trials On Statute Of Limitations Issues. ................................. 16

IV.    ALTERNATIVELY, THE COURT SHOULD GRANT SUMMARY
       JUDGMENT TO DEFENDANTS ON THE CLAIMS OF ABSENT CLASS
       MEMBERS WHO PURCHASED CLASS VEHICLES FIRST SOLD BEFORE
       JULY 12, 2014. ................................................................................................. 18

V.     CONCLUSION ................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adderley v. Three Angels Broad. Network, Inc.*,
   2019 WL 7189887 (S.D. Fla. Dec. 26, 2019) .................................................................8, 9, 12

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ...................................................................................................................7

*Barnes v. Am. Tobacco Co.*,
   161 F.3d 127 (3d Cir. 1998) .......................................................................................................7

*Berisford v. Jack Eckerd Corp.*,
   667 So. 2d 809 (Fla. 4th DCA 1995) .......................................................................................12

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
   155 F.3d 331 (4th Cir. 1998) ...................................................................................................16

*Brown v. Electrolux Home Prods., Inc.*,
   817 F.3d 1225 (11th Cir. 2016) ...............................................................................................16

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) .....................................................................................................................3

*Ezell v. Mobile Hous. Bd.*,
   709 F.2d 1376 (11th Cir. 1983) .................................................................................................6

*Fisher v. Harley-Davidson Motor Grp., LLC*,
   2019 WL 8014364 (S.D. Fla. Oct. 18, 2019) .........................................................................10

*Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Se.*,
   492 F. App'x 16 (11th Cir. 2012) ...........................................................................................19

*Haley v. Kolbe & Kolbe Millwork Co.*,
   2015 WL 9255571 (W.D. Wis. Dec. 18, 2015) ......................................................................16

*Hall v. Burger King Corp.*,
   1992 WL 372354 (S.D. Fla. Oct. 26, 1992)................................................................12, 14, 17

*Heuer v. Nissan N. Am., Inc.*,
   2017 WL 3475063 (S.D. Fla. Aug. 11, 2017)......................................................................9, 15

*Hill v. Texaco, Inc.*,
   825 F.2d 333 (11th Cir. 1987) ...................................................................................................8

ii

*In re Engle Cases*,
  2012 WL 12904243 (M.D. Fla. Nov. 26, 2012) ....................................................................9

*In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*,
  2012 WL 379944 (D.N.J. Feb. 6, 2012) ...........................................................................16

*Jin v. Shanghai Original, Inc.*,
  990 F.3d 251 (2d Cir. 2021).............................................................................................6

*Koski v. Carrier Corp.*,
  347 F. Supp. 3d 1185 (S.D. Fla. 2017) ............................................................................4

*Lewis v. Mercedes-Benz USA, LLC*,
  530 F. Supp. 3d 1183 (S.D. Fla. 2021) (Ruiz, J.) ...................................................2, 9, 14

*Licul v. Volkswagen Grp. of Am., Inc.*,
  2013 WL 6328734 (S.D. Fla. Dec. 5, 2013) ....................................................................15

*Major League Baseball v. Morsani*,
  790 So. 2d 1071 (Fla. 2001)............................................................................................8

*Marlo v. United Parcel Serv., Inc.*,
  639 F.3d 942 (9th Cir. 2011) ...........................................................................................7

*Martel v. Writers Guild of Am. W. Inc.*,
  2021 WL 6618617 (C.D. Cal. Dec. 7, 2021) ..............................................................11, 16

*Minter v. Wells Fargo Bank, N.A.*,
  2013 WL 1795564 (D. Md. Apr. 26, 2013) ................................................................17, 18

*Padilla v. Porsche Cars N. Am., Inc.*,
  2020 WL 1472301 (S.D. Fla. Mar. 26, 2020).........................................................9, 12, 14

*Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*,
  215 F.R.D. 523 (E.D. Tex. 2003), *aff'd*, 100 F. App'x 296 (5th Cir. 2004)...........................17

*Ramos v. U.S. Bank Nat. Ass'n*,
  2009 WL 3834035 (D. Or. Nov. 16, 2009).....................................................................20

*Ray v. Equifax Info. Servs., LLC*,
  327 F. App'x 819 (11th Cir. 2009) ..................................................................................19

*Razor Cap., LLC v. CMAX Fin. LLC*,
  2017 WL 3481761 (S.D. Fla. Aug. 14, 2017)...................................................................8

*Richardson v. Byrd*,
  709 F.2d 1016 (5th Cir. 1983) ........................................................................................7

*Salas v. Toyota Motor Sales, U.S.A., Inc.*,
  No. 2:15-cv-08629-FMO-E (C.D. Cal.)..................................................................12, 13

*Shin v. Cobb Cnty. Bd. of Educ.*,
  248 F.3d 1061 (11th Cir. 2001) ........................................................................................7

*Shiver v. Chertoff*,
  549 F.3d 1342 (11th Cir. 2008) ......................................................................................19

*Speier-Roche v. Volkswagen Grp. of Am. Inc.*,
  2014 WL 1745050 (S.D. Fla. Apr. 30, 2014) (Moreno, J.) ...........................4, 8, 15

*Wagner v. Cent. Louisiana Elec. Co.*,
  99 F.R.D. 279 (E.D. La. 1983).......................................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)...................................................................................................10, 16

STATUTES

Fla. Stat. § 95.051(2).............................................................................................................8

Fla. Stat. § 501.2105(1).......................................................................................................18

RULES

Fed. R. Civ. P. 23 .......................................................................................................... passim

Fed. R. Civ. P. 56(a) ..........................................................................................................18

At the August 15, 2022 Pretrial Conference, the Court invited Defendants to file a motion addressing how the four-year statute of limitations applicable to claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") impacts the forthcoming class trial.  (Ex. 1, August 15, 2022 Pretrial Conference Transcript ("Transcript"), at 63:17–25, 67:17–68:10, 75:3–7.)  Consistent with the Court's invitation, Defendants now move the Court:  (1) to narrow the class to exclude absent class members who purchased 2012–2014 Toyota Camry vehicles at authorized Toyota dealerships in Florida ("Class Vehicles") that were first sold outside the limitations period pursuant to Rule 23; or (2) alternatively, to grant summary judgment for Defendants on the statute of limitations as to those absent class members pursuant to Rule 56.[1]

## I.   **INTRODUCTION**

The Court previously recognized that affirmative defenses may require narrowing of the FDUTPA class, "particularly where they raise individual questions and could ***apply to the vast majority of class members***."  (Class Certification Order ("Order"), ECF No. 377, at 28 (emphasis added; *citing Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1241 (11th Cir. 2016)).)  The evidence shows that ***more than 85%*** (65,323) of Class Vehicles were purchased ***outside*** the four-year FDUTPA limitations period.  A list of those cars is attached as Exhibit 2(B).

As a matter of Florida law, the claims of class members who purchased Class Vehicles first sold before July 12, 2014 are time-barred.  Plaintiffs can overcome the statute of limitations for each class member only if they can prove each element of fraudulent concealment tolling. Fraudulent concealment tolling requires evidence specific to each class member, including unique proof that each class member ***both*** was duped by some affirmative act by Defendants into not

---

[1]      Defendants continue to maintain and preserve their positions that:  (1) class certification was improper for the reasons Defendants put forward at class certification; and (2) summary judgment should have been granted in favor of Defendants on the named Plaintiffs' claims.

bringing a timely claim *and* exercised reasonable diligence in trying to discover the facts to support

such a claim.  (Order, at 28); *see, e.g.*, *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183,

1228 (S.D. Fla. 2021) (Ruiz, J.).

The inclusion of tens of thousands of potentially time-barred class members would overrun

trial and undercuts the Rule 23 requirements of manageability and predominance.  As a result, the

Court should narrow the class to exclude class members (apart from Plaintiff Baker) who

purchased Class Vehicles first sold before July 12, 2014 pursuant to Rule 23, or, alternatively, it

should grant summary judgment on the statute of limitations as to those class members pursuant

to Rule 56.

*First*, the Court should narrow the class to exclude absent class members who purchased a

Class Vehicle first sold before July 12, 2014.  Plaintiffs' arguments as to how they intend to prove

fraudulent concealment tolling are foreclosed by controlling law and hinge upon individual

determinations that cannot be made in a class trial.  Fraudulent concealment cannot be based on

an omission.  And there is no evidence of a class-wide affirmative misrepresentation regarding

tolling.  Only the small percentage of owners who experienced and then complained about HVAC

odor could possibly have been exposed to the allegedly fraudulent post-purchase statements upon

which Plaintiffs base their fraudulent concealment theory, and the Court has recognized there is

no evidence of any affirmative fraudulent statement that was received by (much less impacted)

each class member.  (Order, at 29.)  Nor is there any class-wide evidence capable of showing what

reasonable steps, if any, different class members took to pursue their claims diligently.  And

regardless of how Plaintiffs try to prove fraudulent concealment tolling, Defendants have the

substantive and due process rights to challenge tolling as to each class member through individual

evidence.[2]

There is no manageable way of resolving these issues in a class trial.  Narrowing the class to exclude absent class members who purchased Class Vehicles first sold outside the limitation period will avoid having to engage in countless individual mini-trials on fraudulent concealment tolling.  It also allows those excluded on this basis to pursue individual FDUTPA claims with their **own** individual evidence if they believe they have a claim and can show tolling.

***Second***, in the alternative, the Court should grant summary judgment as to the claims of all absent class members who purchased a Class Vehicle first sold before July 12, 2014.  Apart from testimony specific and unique to Mr. Baker, Plaintiffs have ***no evidence*** capable of showing each element of fraudulent concealment tolling as to ***any*** class member.  Nor is there any class-wide evidence that class members were misled into not bringing a claim by any supposedly false information from any Defendant after their respective purchases.  Accordingly, if the Court does not narrow the class, it should grant summary judgment to Defendants on the time-barred claims of all absent class members who purchased Class Vehicles first sold before July 12, 2014.[3]

---

[2]     The class should be narrowed to exclude not only those who purchased Class Vehicles before July 12, 2014, but also all subsequent purchasers of Class Vehicles first sold before July 12, 2014.  Plaintiffs have no damages model applicable to subsequent purchasers of used Class Vehicles, since Plaintiffs' experts acknowledge the alleged harm occurs at the time and point of "first purchase" or "first sale."  (ECF No. 340-17 (Gaskin Report), at ¶¶ 10–11; ECF No. 340-18 (Weir Report), at ¶¶ 14, 30.)  As a result, for used car purchasers there are predominating individual issues concerning fact of injury and the amount of any damage. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013).  And inclusion of those used car purchasers also raises significant additional manageability and predominance problems, requiring individual evidence of when they purchased the vehicle, what they knew or observed about HVAC odor in the used vehicle at the time of the purchase, whether they purchased the used vehicle "as is" (from an authorized Toyota dealership), what they paid for the vehicle, how that price was negotiated, and whether any alleged overpayment by the original purchaser was passed on to them.

[3]     Defendants do not seek to exclude named Plaintiff Baker from the class or relitigate the issue of summary judgment as to Mr. Baker.  However, as described below, the jury will have to evaluate Mr. Baker's specific circumstances and testimony as relevant to fraudulent concealment

## II.    **BACKGROUND**

### A.    **The Court Certified A FDUTPA Class But Recognized That The Class May Need To Be Amended To Address Defendants' Affirmative Defenses**.

The Court certified a single Rule 23(b)(3) class limited to Florida purchasers of Class Vehicles under FDUTPA.  (Order, at 23, 33–34.)  The Court appointed Plaintiff Cardenas and Baker as class representatives.  (*Id.* at 34.)  In certifying the class, the Court also recognized that later narrowing of the class was a possibility, stating that it was "mindful that if evidence later shows that an affirmative defense is likely to bar claims against some class members, there are adequate procedural mechanisms at its disposal . . . [including] amend[ing] the class definition, and more."  (*Id.* at 29 (citing *Brown*, 817 F.3d at 1241, *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001)).)

### B.    **FDUTPA Carries A Four-Year Limitation Period That Runs From The Date Of Each Vehicle Purchase**.

FDUTPA has a four-year limitations period.  (Order at 27.)  The four-year statute of limitations for FDUTPA claims "accrues at the time the product at issue is purchased."  *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1192 (S.D. Fla. 2017); *see also Speier-Roche v. Volkswagen Grp. of Am. Inc.*, 2014 WL 1745050, at *6 (S.D. Fla. Apr. 30, 2014) (Moreno, J.).

Plaintiffs filed this lawsuit on behalf of a putative class on July 12, 2018.  (ECF No. 1.) Plaintiffs and their experts claim that the alleged damage occurs "at the time and point of first purchase" of each Class Vehicle.  (ECF No. 340-17 (Gaskin Report), ¶¶ 10–11 (conjoint analysis measures alleged overpayment from nondisclosure "at the time and point of first purchase"); ECF No. 340-18 (Weir Report), at ¶ 14 (same); *id.* ¶ 30 (same).)  Each Defendant asserted the statute

---

tolling.  These facts are unique to Mr. Baker and show why this issue cannot be resolved for all class members in one trial.

of limitations as an affirmative defense.  (ECF No. 55, at 26; ECF No. 56, at 28; ECF No. 57, at 28; ECF No. 58, at 29.)  As a result, the FDUTPA claims of all purchasers of Class Vehicles first sold prior to July 12, 2014, are time-barred as a matter of law, absent tolling.

### C.   More Than 85% Of Class Vehicles Were First Sold Outside The Four-Year Limitations Period.

Vehicle sales can be tracked by a unique Vehicle Identification Number ("VIN").  Data transmitted from Florida dealerships to Defendant Southeast Toyota Distributors, LLC ("S.E.T.") shows that 75,423 Class Vehicles were sold at authorized dealerships in Florida.  (*See* Ex. 2, Declaration of C. McWilliams, ¶ 11; Defs.' Statement of Undisputed Material Facts ("SOF"), at ¶¶ 1–2.)  Of those, 65,323, or 86.6%, were sold prior to the July 12, 2014 statutory cutoff period. (Ex. 2, at ¶ 11; Ex. 2(B) (listing those Class Vehicles by VIN); SOF, at ¶ 3.)

The attached Declaration from Christopher McWilliams, Senior Operations Analyst at S.E.T., explains in detail how S.E.T. made these calculations.  S.E.T. "retriev[ed], organiz[ed] and analyz[ed] the Vehicle Transaction Data maintained by SET for every new 2012–2014 non-hybrid Toyota Camry sold and leased at authorized Toyota dealerships in Florida." (Ex. 2, McWilliams Decl. ¶ 9.)  After calculating the total number of Class Vehicles (97,894), S.E.T. subtracted the number of leased Class Vehicles (22,471) because they are not part of the certified class.  (Order, at 34 (certified class limited to "purchasers").)  This yielded 75,423 Class Vehicles sold at authorized dealerships in Florida.  (Ex. 2, McWilliams Decl. ¶¶ 11–12.)  65,323 Class Vehicles were first sold prior to July 12, 2014, while 10,100 were first sold on or after July 12, 2014.  (Ex. 2, McWilliams Decl. ¶ 12; SOF ¶ 3.)[4]

---

[4]     Plaintiffs appear to have sent class notice to 190,305 individuals and entities.  Plaintiffs, however, sent notice to individuals and entities that are not part of the putative class, such as purchasers of Class Vehicles from non-authorized dealerships, lessees of Class Vehicles, and companies (not individuals) who purchased Class Vehicles.  (ECF No. 444-1.)

**D.    Plaintiffs Rely Upon Fraudulent Concealment Tolling, But Have Not Provided And Cannot Provide Either Class-Wide Evidence Or A Manageable Plan To Address Individual Statute Of Limitations Issues At Trial.**

Plaintiffs rely upon fraudulent concealment tolling as their "defense" to the statute of limitations bar.  (Ex. 1, Transcript, at 55:10–14, 63:10–11.)  At the Pretrial Conference, Plaintiffs acknowledged that they need to show the elements of fraudulent concealment tolling as to "all" class members.  (*Id.* at 55:10–16.)  Rather than presenting a manageable way of doing so, Plaintiffs stated that they intend to rely upon:  (1) Defendants' failure to admit a defect exists (*id.* at 56:8–13); (2) statements by non-party dealerships allegedly made to only some individuals, in response to their complaints, that HVAC odor is normal (*id.* at 55:16–20); and (3) facts unique to Mr. Baker (*id.* at 74:6–11, 70:4–23).

As described below, Plaintiffs' arguments are foreclosed by controlling law and raise insurmountable predominance and manageability problems.  As a result, the class should be narrowed to exclude those class members (apart from Mr. Baker) who purchased Class Vehicles first sold prior to July 12, 2014.  Alternatively, the Court should grant summary judgment on FDUTPA claims brought by those class members.

**III.    THE COURT SHOULD NARROW THE CERTIFIED CLASS TO EXCLUDE ABSENT CLASS MEMBERS WHO PURCHASED VEHICLES FIRST SOLD BEFORE JULY 12, 2014.**

Plaintiffs bear the burden of showing that the Rule 23 requirements for certification are met ***at all times***—not only when certification is first sought.  *See, e.g.*, *Ezell v. Mobile Hous. Bd.*, 709 F.2d 1376, 1380 (11th Cir. 1983) (plaintiffs "failed to satisfy their burden of proof that class certification was proper"); *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 262 (2d Cir. 2021) ("district courts must ensure that a certified class satisfies Rule 23 throughout the litigation"); *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011) (plaintiff bears burden of showing class certification requirements are met in response to decertification motion).  As the

parties have prepared for trial, it has become apparent that Plaintiffs cannot meet that burden for purchasers of Class Vehicles that were first sold outside the four-year statute of limitations period.

Class certification is interlocutory and can be revised at any time. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *see also* 1996 Amendment Advisory Committee Notes (providing that altering certification is appropriate "upon fuller development of the facts"). Indeed, the Court "retains the ability, and perhaps even a duty, to alter or amend a certification decision." *Shin v. Cobb Cnty. Bd. of Educ.*, 248 F.3d 1061, 1064–65 (11th Cir. 2001) ("The district judge may review his certification order at any time and may consider redefined or more narrowly tailored classes or subclasses[.]"); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 479 n.9 (2013) (recognizing duty to reassess class certification "based on circumstances developing as the case unfolds"); *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 149 (3d Cir. 1998) (affirming decertification because "determining whether each class member's claim is barred by the statute of limitations raises individual issues that prevent class certification"); *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) ("The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts.").

At class certification, the Court contemplated the potential necessity of narrowing the class depending on further development of the evidence, noting that it was "mindful that if evidence later shows that an affirmative defense is likely to bar claims against some class members, there are adequate procedural mechanisms at its disposal . . . [including] amend[ing] the class definition, and more." (Order, at 29 (citing *Brown*, 817 F.3d at 1241).) Based on the scope of the statute of limitations issue, and Plaintiffs' inability to formulate a viable way to try that issue on a class-wide basis, the time to amend the class definition is now.

7

A. **Resolution Of Fraudulent Concealment Tolling At Trial Will Require Individual Proof And Countless Mini-Trials.**

The limitations period for FDUTPA claims is four years and it runs from the date of purchase. *See, e.g.*, *Speier-Roche*, 2014 WL 1745050, at *6. More than 85% of Class Vehicles were purchased prior to July 12, 2014. (Ex. 2, at ¶ 11.) Absent some tolling doctrine, all claims based upon purchases of those Class Vehicles are time-barred. Plaintiffs seek to invoke fraudulent concealment tolling,[5] but addressing individual issues of fraudulent concealment tolling would cause individual issues to predominate and render unmanageable any class trial.

Plaintiffs bear the burden of proof to show ***each*** of the three requirements for fraudulent concealment tolling. *See Hill v. Texaco, Inc.*, 825 F.2d 333, 335 (11th Cir. 1987); *Adderley v. Three Angels Broad. Network, Inc.*, 2019 WL 7189887, at *4 (S.D. Fla. Dec. 26, 2019). These requirements include: (1) successful concealment of the cause of action from each class member; (2) affirmative fraudulent means to achieve that concealment from each class member; and (3) that each class member exercised reasonable care and diligence in seeking to discover the facts that form the basis of the claim. *See, e.g.*, *Adderley*, 2109 WL 7189887, at *4; *Razor Cap., LLC v. CMAX Fin. LLC*, 2017 WL 3481761, at *4 (S.D. Fla. Aug. 14, 2017) (same); *Lewis*, 530 F. Supp. 3d at 1229–30 (same).

Here, Plaintiffs must show that each class member was duped by an affirmative post-

---

[5] Defendants maintain that Florida law does not permit "fraudulent concealment" tolling for a FDUTPA claim. It is not a basis for tolling in Florida Statute Section 95.051. Fla. Stat. § 95.051(2) ("a disability or other reason does not toll the running of any statute of limitations except those specified in this section"); *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1075 (Fla. 2001) ("Section 95.051 delineates an ***exclusive list*** of conditions that can 'toll' the running of the statute of limitations" (emphasis added)). And the Florida Supreme Court has not recognized its applicability to a FDUTPA claim. Nonetheless, even if the Court allows Plaintiffs to invoke fraudulent concealment tolling, the class should be narrowed to make trial more manageable, because individual evidence would be required to resolve this issue for each class member.

purchase statement by each Defendant that they claim was misleading and caused him or her not to bring a timely claim, despite reasonable diligence.  These elements cannot be resolved for each class member without individual evidence and mini-trials that would overrun any class trial.

> **1.    Individual Evidence Is Necessary To Resolve Whether Each Class Member Received A False Statement After Purchase, And, If So, Whether He Or She Was Misled Into Not Bringing A Timely Claim.**

To prove fraudulent concealment tolling, Plaintiffs must show, among other requirements, "that Defendants committed an affirmative act that served to dupe, trick or hoodwink [each class member] such that he or she was falsely enticed into inaction after her cause of action accrued." *In re Engle Cases*, 2012 WL 12904243, at *5 (M.D. Fla. Nov. 26, 2012).  Non-disclosure by a defendant of an alleged defect or inaction by a defendant to fix an alleged defect are insufficient to meet this standard.  *See, e.g., Padilla v. Porsche Cars N. Am., Inc.*, 2020 WL 1472301, at *3, *6 (S.D. Fla. Mar. 26, 2020); *Heuer v. Nissan N. Am., Inc.*, 2017 WL 3475063, at *3 (S.D. Fla. Aug. 11, 2017).  In other words, an omission is not sufficient to establish fraudulent concealment tolling.  *See, e.g., Adderley*, 2019 WL 7189887, at *5; *Heuer*, 2017 WL 3475063, at *3.

In addition, the affirmative "concealing conduct must occur ***after*** the plaintiff's cause of action has already accrued, which, in this case, occurred on the date of purchase."  *Lewis*, 530 F. Supp. 3d at 1229–30 (emphasis added).  The alleged fraudulent statement that supposedly caused the class member not to bring a timely claim therefore must occur after purchase of the Class Vehicle.  *Id.*

Whether a false statement by any Defendant duped class members into not bringing a claim necessarily hinges upon individual proof, including whether the class member was exposed to an affirmative misstatement after purchase.  For example, the vast majority of class members who experienced no HVAC odor could not have been misled by some fraudulent post-purchase statement into not bringing a claim, because they never would have brought their vehicle to a

dealership, or contacted any Defendant, to discuss a concern about HVAC odor.  And for those few who did experience HVAC odor, it would be necessary to evaluate whether they received a false statement by one or more Defendants about HVAC odor, when they did so, and whether it lulled them into not bringing a claim.  At a minimum, Defendants are entitled to challenge any testimony or other proof put forward by any such class member claiming that he or she was tricked into not asserting a claim.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366–67 (2011) (class trial cannot deny defendant's due process right to litigate its "defenses to individual claims").

This Court itself has recognized that there is ***no evidence*** of an affirmative class-wide misrepresentation that reached all class members in this case:

> Based on the evidence Plaintiffs offer, it was ***only*** those people who already owned a Class Vehicle and brought it to a dealership complaining of odor who were the ***potential*** victim of a misrepresentation-i.e., they were the only people told that the odor was normal.

(Order, at 20–21) (emphasis added).  In other words, there is no evidence of the very thing Plaintiffs must prove to establish fraudulent concealment tolling.  While this Court found that inaction and omissions may support a FDUTPA claim, they are ***not*** sufficient to establish fraudulent concealment tolling.  *See, e.g.*, *Fisher v. Harley-Davidson Motor Grp., LLC*, 2019 WL 8014364, at *3 (S.D. Fla. Oct. 18, 2019) ("mere nondisclosure" insufficient to establish fraudulent concealment tolling and finding no tolling because plaintiff did not rely upon statements in user manuals, advertisements, or product describers after purchase of vehicle).

Plaintiffs contend that the statute of limitations was tolled as to ***all*** class members because Plaintiffs intend to show Defendants "developed a uniform script to tell customers[] that HVAC odor is 'normal.'"  (ECF No. 415, at 7.)  Although Defendants disagree with Plaintiffs' characterization, it does not follow that all class members actually received this information.  No evidence demonstrates that they did.  At most, any messages based on the alleged "script" would

have been received only by the small percentage of class members who experienced HVAC odor and then took their vehicle to an authorized Toyota dealer.[6]  This Court specifically recognized this point in its class certification order, finding that "there is *no class wide evidence* to suggest that individuals who already owned a Class Vehicle and brought it in for odor issues were *actually* told that the odor was due to natural causes."  (Order, at 21, n.3 (emphasis added)); *see, e.g.*, *Martel v. Writers Guild of Am. W. Inc.*, 2021 WL 6618617, at *4 (C.D. Cal. Dec. 7, 2021) ("individualized analysis is necessary" to resolve fraudulent concealment tolling where class members "received different communications").

Put simply, individual evidence as to each time-barred class member will be necessary to resolve whether he or she was affirmatively misled by Defendants during the limitation period into not bringing a claim.  And because this issue affects more than 85% of Class Vehicles, any trial will be swamped with individual evidence and mini-trials on fraudulent concealment. Accordingly, the class should be narrowed to avoid this significant problem.

> ### 2.    Individual Analysis Is Needed To Resolve Whether Each Class Member Exercised Reasonable Care And Diligence.

To prove fraudulent concealment tolling, Plaintiffs also must show that each class member exercised reasonable care and diligence in seeking to learn the facts of his or her claim.  *See, e.g.*, *Berisford v. Jack Eckerd Corp.*, 667 So. 2d 809, 812 (Fla. 4th DCA 1995) (under Florida law, "a party seeking to avail itself of the doctrine of fraudulent concealment must have exercised reasonable care and diligence in seeking to learn the facts which would disclose the fraud." (citing

---

[6]     As Magistrate Judge Louis found, "JD Power survey data also reflects that less than 5 percent of Class Vehicle owners reported HVAC odor three years following their purchase of the vehicle, while 99 percent of those surveyed owners were at least 'satisfied' with the HVAC system."  (ECF No. 334, at 6; *see also* ECF No. 405-1, Wilcox Aff. Report. at ¶ 95 & Ex. 14A; ECF No. 405-2, Wilcox Rebuttal Report, at ¶¶ 20–22 & Ex.1.)

*Nardone v. Reynolds*, 333 So. 2d 25, 35 (Fla. 1976), *modified on other grounds*, *Tanner v. Hartog*,

618 So. 2d 177 (Fla. 1993)); *see also Adderley*, 2019 WL 7189887, at *4 (same); *Padilla*, 2020

WL 1472301, at *5–7 (rejecting fraudulent concealment tolling because no showing of reasonable

diligence).  This is true for each individual class member.  *See, e.g.*, *Hall v. Burger King Corp.*,

1992 WL 372354, at *9 & n.8 (S.D. Fla. Oct. 26, 1992) ("Claims of fraudulent concealment

involve highly individualized questions of fact," including exercise of due diligence by each class

member (internal quotation omitted)).

Resolution of this requirement of reasonable diligence necessarily hinges upon evidence

specific to each class member's conduct.  This includes, for example, whether the class member

ever experienced a post-purchase odor problem and, if so, what he or she chose to do about it, if

anything.  Take the example of a purchaser who experienced HVAC odor but never investigated

the issue and never took her Camry vehicle to a dealership to have the issue evaluated and

addressed.  At a minimum, Defendants have the due process right to challenge this reasonable

diligent requirement by presenting individual evidence showing what each class member did and

did not do, including whether he or she ran a basic "google" search to look into HVAC odor issues

within the applicable 4-year limitations period.[7]

Mr. Baker exemplifies why this requirement hinges upon individual proof.  Mr. Baker

claims to have experienced odor in one Class Vehicle, yet continued to drive that vehicle every

---

[7]     Plaintiffs' Amended Complaint cites to just a "small sample of [publicly filed] consumer complaints," including many filed publicly more than four years before this lawsuit, that purportedly show "the HVAC odor problem caused by the Defective HVAC System in the Class Vehicles has persisted for several years."  (Compl., ECF No. 49, at ¶ 77.)  Moreover, as this Court is aware, a class action asserting the same allegations of an HVAC defect pertaining to 2012–2014 Camry vehicles, captioned *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:15-cv-08629-FMO-E (C.D. Cal.), was filed on November 4, 2015—nearly ***three years*** before this lawsuit was filed on July 12, 2018.  (ECF No. 25 (motion to transfer); ECF No. 25-1 (*Salas* Complaint).)

day for more than two years and then purchased a second Class Vehicle.  (Ex. 3, Transcript of R. Baker Dep. ("Baker Dep."), at 12:21–23, 59:14–16, 124:25–125:11, 202:24–203:1.)  Mr. Baker testified that he never had any HVAC maintenance done on either vehicle (*id.* at 18:2–4, 20:6–9), and that he did no research or investigation into HVAC odor.  (*Id.* at 86:19–87:1, 139:24–140:12.)  After driving his second Class Vehicle for years, he traded it in without disclosing any odor problem.  (*Id.* at 163:18–25.)  In fact, Mr. Baker did nothing to pursue any type of claim until 2019—more than seven years after purchasing his first Class Vehicle—when he was bored and surfing the internet, and happened to find a law firm website with information about this lawsuit. (*Id.* at 168:23–170:3.)  At his deposition, Mr. Baker acknowledged that rather than exercising reasonable diligence to discover the facts to support any claim, he had no evidence that any Defendant in this case did anything wrong.  (*Id.* at 193:19–23.)  While the Court found that there were disputed facts as to Mr. Baker at summary judgment, these disputed facts are unique to Mr. Baker and have no bearing on any other class member.  A separate individual analysis will be necessary for each class member to determine whether he or she exercised reasonable diligence.

As this Court recognized at the Pretrial Conference,[8] key differences exist between a class certification determination and actually "try[ing] the case."  4 Newberg on Class Actions § 11.6 (5th ed.).  While a judicial finding that common issues predominate over individualized issues is "one thing," the specifics of what issues can be tried on behalf of all class members in one trial is "another."  *Id.*  Here, at the time of class certification, the Court and the parties did not know how many Class Vehicles were impacted by Defendants' statute of limitation defense.  Now we do. And although the Court recognized that Plaintiffs must show all class members "have 'pursued [their] rights diligently[,]'" (Order, at 28 (quoting *Fedance v. Harris*, 1 F.4th 1278, 1287 (11th Cir.

---

[8]      Ex. 1, Transcript, at 65:6-7 ("I'm thinking, how do we try this class action to the jury?").

2021)), the Court did not comprehensively address how this element can be resolved without individual mini-trials. It cannot. Accordingly, the Court should narrow the class to exclude absent class members who purchased a Class Vehicle first sold before July 12, 2012.

**B.     Plaintiffs' Contradictory Arguments For Trying To Prove Fraudulent Concealment Tolling Are Foreclosed As A Matter Of Florida Law.**

At the Pretrial Conference, Plaintiffs took varying positions on how they intend to prove fraudulent concealment on a class-wide basis, including: (1) through Defendants' refusal to admit there is an alleged HVAC defect; (2) through statements by dealerships that HVAC odor is "normal"; and (3) through Mr. Baker's testimony. Each position ignores the legal standard.

*First*, Plaintiffs contend that they can show fraudulent concealment because Defendants have not admitted there is a defect. (Ex. 1, Transcript, at 55:10–56:13 ("In this case, that principle [diligent inquiry] doesn't apply because they never admitted there was a defect.").) Defendants do not have to admit to liability for a statute of limitations defense to apply; otherwise, the statute of limitations would cease to have any meaning. *See, e.g.*, *Padilla*, 2020 WL 1472301, at *5–6 (dismissing FDUTPA claim where vehicle purchased outside limitations period and rejecting fraudulent concealment theory even though car manufacturer never admitted to alleged "defect"). Nor can Plaintiffs avoid the reasonable diligence requirement by trying to tie it to an admission of liability. *Id.* Moreover, under Florida law, ***non-disclosure*** or ***inaction*** with respect to a vehicle defect does ***not*** constitute fraudulent concealment. *See Lewis*, 530 F. Supp. 3d at 1229–30; *Padilla*, 2020 WL 1472301, at *6; *Heuer*, 2017 WL 3475063, at *3; *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *6 (S.D. Fla. Dec. 5, 2013); *Speier-Roche*, 2014 WL 1745050, at *7.

*Second*, Plaintiffs argue that Defendants made false statements that HVAC is "normal" or "natural." (ECF No. 415, at 7; Ex. 1, Transcript, at 55:19–20 (reporting that Mr. Baker testified

"I knew it had an odor.  I went to the dealership and they told me it was normal."))[9]  But as described above and as this Court previously recognized, "there is ***no class wide evidence*** to suggest that individuals who already owned a Class Vehicle and brought it in for odor issues were actually told that the odor was due to natural causes."  (Order, at 21, n.3 (emphasis added).)  And there is certainly no evidence that individuals who never experienced odor were ever exposed to any such statements.  Thus, this approach also would cause any class trial to descend into individual evidence and proof.  It also ignores the reasonable diligence requirement.

***Lastly***, Plaintiffs argue that fraudulent concealment tolling for the class rises and falls on Mr. Baker's testimony.  (Ex. 1, Transcript, at 55:16–20 (citing alleged deposition testimony of Baker), 69:2–11 ("we present our case through our class representatives"), 74:6–11 ("that's why Mr. Baker is there").)  This, too, makes no sense.  Mr. Baker's evidence is specific to him, and it cannot be used to show the elements of fraudulent concealment tolling for thousands of others.  As described above, Mr. Baker purchased multiple Class Vehicles, never had any HVAC odor maintenance done, and took no steps to investigate any claim until he came across an advertisement when he was bored and surfed the internet years after the statute of limitations had run.  Each Defendant has the right to defend against this and any other class-member-specific fraudulent concealment evidence through individual proof as to those class members—just as Defendants will do with Baker.  *See Dukes*, 564 U.S. at 366–67.

Given the vast majority of Class Vehicles were first sold outside the FDUTPA limitations

---

[9]     Mr. Baker's circumstances are inconsistent with Counsel's representation and Plaintiffs' theory that all class members, including Baker, were told HVAC odor is "normal" as part of some "uniform script."  He was not.  (ECF No. 415 at 7 (citing ECF No. 213, at ¶ 41 ("Baker was told on separate occasions that there was no 'issue with the vehicle'"; "'they couldn't duplicate [the odor] . . . [and couldn't] find anything wrong'"; "'they didn't find anything'" (quoting Baker deposition) (alteration added by Plaintiffs).)

period, there is no way for the jury to resolve this issue on a class-wide basis; instead, jurors will need to evaluate whether each class member was exposed to and misled by an affirmative post-purchase misrepresentation into not filing a timely claim, despite his or her exercise of reasonable diligence. The class should be narrowed to avoid such an unworkable and unmanageable trial.

### C.     In Similar Circumstances, Courts Have Narrowed Classes To Avoid Individual Mini-Trials On Statute Of Limitations Issues.

Rule 23 recognizes the need to amend a class certification order before final disposition of a case. Fed. R. Civ. P. 23(b)(3)(C). And the Eleventh Circuit has made clear that an individual affirmative defense may make certification inappropriate or require a narrowing of a certified class in appropriate circumstances, such as where "the affirmative defense[] could apply to the vast majority of class members and raise[s] complex, individual questions." *Brown*, 817 F.3d at 1241.

Courts have recognized that any class trial would be unmanageable (and inappropriate) where, like here, many class members must rely upon fraudulent concealment tolling to save their untimely claims and the resolution of that issue requires individual evidence of due diligence and false statements specific to class members. *See, e.g.*, *Martel*, 2021 WL 6618617, at *4 (denying class certification given individualized issues associated with fraudulent concealment tolling); *Haley v. Kolbe & Kolbe Millwork Co.*, 2015 WL 9255571, at *11–12 (W.D. Wis. Dec. 18, 2015) (recognizing trial would be "unworkable" given individual issues with tolling); *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, 2012 WL 379944, at *37 (D.N.J. Feb. 6, 2012) (same); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998) (reversing grant of class certification in part due to individualized issues of tolling where "some class members might be able to point to fraudulent misrepresentations while others cannot"); *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 215 F.R.D. 523, 532 (E.D. Tex. 2003) (denying certification and recognizing fraudulent concealment tolling would involve "individual issues that

16

will require inquiry into the knowledge and actions of each Plaintiff), *aff'd*, 100 F. App'x 296 (5th Cir. 2004); *Hall*, 1992 WL 372354, at *15 n.8 (collecting cases concluding that fraudulent concealment, particularly elements of due diligence and success of concealment, present a "highly individualized" factual inquiry); *Wagner v. Cent. Louisiana Elec. Co.*, 99 F.R.D. 279, 289–90 (E.D. La. 1983) (applying principle).

In fact, other courts have decertified classes on this ground prior to trial. For example, in *Minter v. Wells Fargo Bank, N.A.*, 2013 WL 1795564 (D. Md. Apr. 26, 2013), the court certified a class consisting of approximately "150,000 class members" asserting statutory claims under RESPA. *Id.* at *1. Class members were "divided" between "Timely and Tolling Classes." *Id.* The Timely Class members brought suit within the limitations period, while the Tolling Class included members whose claims "fall outside of RESPA's one-year statute of limitations, which would thus need to be tolled for their claims to be viable." *Id.* at *3. Shortly before the start of a four-week jury trial, the Court decertified the Tolling Class because of manageability concerns. The court reasoned that because "individual class members' transactions" are "relevant to the concealment and due diligence inquiries of tolling," there is no way to manageably try those claims without individual mini-trials. *Id.* at *4. The court noted that even though it denied summary judgment, "concerns" about one of the named plaintiffs' "ability to show due diligence . . . illustrates the variety of circumstances likely to be included among the class members' transactions." *Id.* at *4 n.5. Lastly, the court reasoned that "[t]he problem is not that the circumstances of class members' transactions may create a jury question; it is that it only creates that jury question as to some class members and not others." *Id.* at *4. As a result, the Court permitted a "more narrowly-tailored class" of individuals not subject to the statute of limitations defense to move forward. *Id.* at *6.

Here, narrowing the class to exclude those individuals (apart from Baker) who purchased Class Vehicles first sold prior to July 12, 2014 will make the class trial more manageable. Narrowing the class will avoid having to engage in countless mini-trials for each of those absent class members over individualized statute of limitations issues.  It also will avoid prejudice to those class members.  Plaintiffs have no evidence capable of proving the elements of fraudulent concealing tolling for all class members, and class members' fraudulent concealment arguments should not rise and fall on the unique circumstances of Mr. Baker.  Narrowing the class would allow those individuals who purchased Class Vehicles first sold prior to July 12, 2014 to pursue FDUTPA claims through their own individual evidence, if they believe they have and can prove such a claim.[10]  Pursuant to Rule 23 and well-settled Eleventh Circuit guidance, the Court should narrow the class to exclude those absent class members.

## IV.    ALTERNATIVELY, THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANTS ON THE CLAIMS OF ABSENT CLASS MEMBERS WHO PURCHASED CLASS VEHICLES FIRST SOLD BEFORE JULY 12, 2014.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party shoulders the initial burden of demonstrating the absence of a genuine issue of material fact. *See, e.g.*, *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).

If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, "the non-moving party must make a sufficient showing

---

[10]     Individuals also can recover attorneys' fees if they successfully bring a FDUTPA claim. Fla. Stat. § 501.2105(1).  Moreover, the cost of each Camry vehicle is significant.  Therefore, if the class is narrowed, individuals have incentives to bring their own claims.

on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Se.*, 492 F. App'x 16, 26 (11th Cir. 2012).

Here, the FDUTPA claim of each purchaser of the 65,323 Class Vehicles first sold before the July 12, 2014, cut-off date is barred by the statute of limitations.  While the Court's summary judgment decision found genuine issues of fact as to whether Mr. Baker could demonstrate fraudulent concealment tolling for his claim, Plaintiffs have ***no evidence*** to meet their burden of showing fraudulent concealment for ***any*** other class member who purchased a Class Vehicle first sold before the statutory cutoff.  No testimony from those class members.  No evidence showing they were duped into not bringing a claim by some affirmative false statement by any Defendant.  And no evidence about what steps, if any, they took to investigate and pursue any claim.

Contrary to Plaintiffs' position at the Pretrial Conference, Plaintiffs cannot rely upon Mr. Baker's individual facts to meet their summary judgment burden ***on fraudulent concealment as to other class members***.  Unlike the vast majority of absent class members, Mr. Baker claims that he experienced odor in his two Class Vehicles and raised the issue with dealerships.  (Pls.' Opp'n to Toyota Defs.' Mot. For Summ. J., ECF No. 211, at 29.)  As a result, Mr. Baker cannot offer any competent evidence of fraudulent concealment applicable to the vast majority (more than 95%) of class members who were satisfied with their HVAC system, never experienced any HVAC odor, and therefore never were lulled into not bringing a claim based upon some post-purchase statement about HVAC odor.

Likewise, whether Mr. Baker exercised reasonable diligence by choosing to purchase a second Class Vehicle after experiencing odor in his first Class Vehicle, or by trading in both Class Vehicles without ever testing their HVAC systems or doing any research into vehicle odor, or by only considering a lawsuit more than seven years after his first purchase when he came upon an advertisement while surfing the internet, says nothing about whether any other class member exercised reasonable diligence, based upon his or her unique facts. There is no such evidence in this case capable of showing reasonable diligence as to each class member.

In short, Plaintiffs must prove the claims of all class members at trial. This includes proving fraudulent concealment tolling for most of those class members. Because Plaintiffs do not have evidence capable of showing fraudulent concealment tolling for absent class members, summary judgment should be granted in favor of Defendants on the claims of all absent class members who purchased a Class Vehicle first sold before the statutory cut-off. *See Ramos v. U.S. Bank Nat. Ass'n*, 2009 WL 3834035, at *3 (D. Or. Nov. 16, 2009) (granting summary judgment as to absent class members for claims barred by the statute of limitations).

## V.   <u>CONCLUSION</u>

For the reasons stated above, Defendants request that the Court narrow the FDUTPA Class to exclude purchasers of Class Vehicles first sold before July 12, 2014, as shown by S.E.T.'s Vehicle Transaction Data and identified by VIN in Exhibit 2(B). Alternatively, Defendants request that the Court grant summary judgment as to those purchasers.

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)</u>

Counsel for Defendants have conferred with Plaintiffs' counsel about the issues raised in

this Motion in accordance with Local Rule 7.1(a)(3), and Plaintiffs oppose the Motion.

Dated:   August 31, 2022

Respectfully submitted,

_s/ Robert E. Sacks_

Robert E. Sacks
Florida Bar No. 110019
rsacsks@sbwh.law
Joshua L. Zipper
Florida Bar No. 0045247
jzipper@sbwh.law
SHAPIRO, BLASI, WASSERMAN &
HERMANN, P.A.
7777 Glades Rd., Suite 400
Boca Raton, FL 33434
Telephone:  561.477.7800
Fax: 561 477-7722

_Attorneys for Defendant Southeast Toyota
Distributors, LLC_

_/s/ Brian M. Ercole_

Brian M. Ercole (Florida Bar No. 102189)
brian.ercole@morganlewis.com
Melissa M. Coates (Florida Bar No. 111420)
melissa.coates@morganlewis.com
Matthew M. Papkin (Florida Bar No. 106565)
matthew.papkin@morganlewis.com
Morgan, Lewis & Bockius LLP
600 Brickell Avenue, Suite 1600
Miami, Florida  33131-3075
Tel:  305.415.3000
Fax:  305.415.3001

J. Gordon Cooney, Jr. (admitted _pro hac vice_)
gordon.cooney@morganlewis.com
Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA  19103-2921
Tel:  +1.215.963.4806
Fax:  +215.963.5001

David L. Schrader (admitted _pro hac vice_)
david.schrader@morganlewis.com
Morgan, Lewis & Bockius LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: +1.213.612.2500
Fax: +1.213.612.2501

Brent Hawkins (admitted _pro hac vice_)
Mark Feller (admitted _pro hac vice_)
mark.feller@morganlewis.com
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel: +1.415.442.1000
Fax: +1.415.442.1001

_Attorneys for Defendants Toyota Motor
Corporation, Toyota Motor Sales, U.S.A., Inc.,
and Toyota Motor Engineering & Manufacturing
North America, Inc._

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of August, 2022, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*<u>s/ Brian M. Ercole</u>*
Brian M. Ercole
