UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-CV-22798-FAM

JAVIER CARDENAS and RODNEY
BAKER, individually and on behalf of all
others similarly situated,

        Plaintiffs,

v.

TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR SALES, U.S.A., INC.,
TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA,
INC., and SOUTHEAST TOYOTA
DISTRIBUTORS, LLC,

        Defendants.

**DEFENDANTS' RULE 16.1(j) MEMORANDUM OF LAW
FOR THE FEBRUARY 27, 2023 TRIAL**

In advance of the upcoming February 21, 2023 calendar call and pursuant to Local Rule 16.1(j), Defendants identify the following unusual or otherwise important questions of law that should be addressed prior to trial: (1) if the Court is planning to try both liability and damages on a class-wide basis (and it should not), recent events make clear that separate trials on those issues will not be efficient or appropriate; and (2) the Court's decision to modify its prior ruling excluding references to arbitration and lemon law, which has been the law of the case for more than a year, necessitates that Defendants file amended exhibit lists to add a few exhibits on these issues.[1]

---

[1] Defendants do not purport to raise in this Memorandum all legal issues that may arise during trial, but flag for the Court's attention certain key legal issues that may require the Court's attention in advance of trial.

**I.     INTRODUCTION**

On August 16, 2022, the Court ordered that the "trial shall be bifurcated. Trial on liability shall proceed first, followed by a short recess and then, if defendants are found liable, a trial with the same jury on damages." (ECF No. 446 ("Bifurcation Order").) The Court did not at that time address the structure of any damages trial. Nor did Plaintiffs present a plan for proving damages on a class-wide basis. Defendants continue to maintain that damages determinations cannot be made on a class-wide basis, because there are predominating individual issues. Less than two weeks from trial, Plaintiffs still have not presented any plan for trying damages issues on a class-wide basis or submitted an updated damages model after the Court's December 7, 2023 Order narrowing the class.

Nonetheless, if the Court remains inclined to try both liability and damages issues on a class-wide basis, bifurcation of those issues for trial would not be efficient or appropriate. The class has recently been narrowed (Order Narrowing Class, ECF No. 481) and the parties have submitted final witness lists (ECF Nos. 464–68, 500–04). Only *one* witness is identified to testify about damages exclusively—Plaintiffs' damages expert, Mr. Colin Weir. By contrast, the parties have identified four witnesses (three who do not reside in Florida) who would offer testimony about both liability and damages and, thus, need to testify twice if the trial is bifurcated. Because liability under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") requires proof of "actual damages," *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097 (11th Cir. 2021), there would be substantial overlap in the testimony presented by those witnesses in each phase. In addition, bifurcation runs the significant risk of losing jurors between trials and, potentially, creating a mistrial. Accordingly, the Court should not hold separate class-wide trials on liability and damages.

Lastly, during the February 7, 2023 conference, the Court stated that it was going to amend its September 30, 2021, ruling precluding any "[r]eferences and/or documents relating to arbitrations and/or lemon law disputes arising out of complaints made for alleged HVAC odor." (ECF No. 359.) The Court has not yet entered an order setting forth the parameters of that modification. However, Defendants' previous exhibit lists adhered to the Court's ruling. Now that the Court is going to permit certain evidence relating to these issues, Defendants have the due process right to introduce exhibits on these issues. Accordingly, Southeast Toyota Distributors, LLC ("SET") has amended its exhibit list (attached) to reflect additional exhibits that Defendants plan to introduce on these issues.[2]

## II.   RELEVANT BACKGROUND

In its class certification ruling, the Court recognized that it may not be appropriate or manageable to try damages-related issues in a class-wide trial. (Order, ECF No. 377, at 29.) The Court explained it had the option to "appoint a special master to preside over individual damages proceedings, decertify the class after the liability trial and provide notice to class members about how they may proceed to prove damages, amend the class definition, and more." (*Id.*)

Beginning in May 2022, Defendants requested a pretrial conference with the Court to address, among other things, how "statute of limitations and damages issues will be addressed" at any trial. (Defs.' Mot. For Pretrial Conf., ECF No. 410, at 4.) Defendants explained that certifying and trying class claims are two different things, and that resolving issues pertaining to damages will require individual inquiries, evidence, and determinations specific to each class member and vehicle. (*Id.*, at 5–7, 13–14; Defs.' Reply ISO Mot. For Pretrial Conf., ECF No. 419, at 5–6; Defs.'

---

[2] Consistent with the Court's directive not to duplicate exhibits across exhibit lists, Toyota Defendants have not amended their exhibit list to add these same exhibits but retain the right to use those exhibits or any others listed on SET's (or Plaintiffs') exhibit list at trial.

3

Renewed Mot. For Pretrial Conf., ECF No. 438, at 3–4; Defs' Reply ISO Renewed Mot. For Pretrial Conf., ECF No. 444, at 2–4.)  Defendants further explained that Plaintiffs have never offered a plan for manageably resolving damages at trial on a class-wide basis.  (*Id.*)

During the pretrial conference on August 15, 2022, the Court *sua sponte* chose to bifurcate the trial of liability and damages.  The Court did not specify how damages would be tried on a class-wide basis—just that the order would be "[l]iability first, damages second."  (8/15/22, Hr'g Tr., ECF No. 458, at 179:16.)

Following that pretrial conference, and after extensive briefing by the parties, the Court narrowed the class to exclude absent class members whose claims are subject to a statute of limitations defense.  (ECF No. 481, at 3, 8–9.)  The Court recognized that Defendants have the due process right to present individual evidence at trial in support of their defenses and that resolving statute of limitations issues would present predominating individual issues for the vast majority of class members.  (*Id.* at 8 (citing and quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366–67 (2011).)

Although the size of the class has changed substantially, Plaintiffs have yet to provide an updated damages model from their damages expert (Mr. Weir), and still have yet to provide any manageable way of addressing individualized damages issues in any class trial.

### III.  LEGAL ISSUES

#### A.  If The Court Is Inclined To Try Liability And Damages On A Class-Wide Basis (And It Should Not), The Court Should Vacate Its Decision To Bifurcate Liability And Damages.

Defendants maintain that damages cannot be tried on a class-wide basis because individual minitrials will be necessary to resolve questions of damages for each class member.[3]  Nonetheless,

---

[3] These individual issues include, but are not limited to, the number of class members, what those class members paid for their vehicles, whether each class member experienced any issue

if the Court is inclined to proceed by trying both liability and damages on a class-wide basis, over Defendants' objection, the Court should vacate its Bifurcation Order and do so in one trial.

It is well-settled that bifurcation "must be grounded upon a clear understanding between the court and counsel of the issue or issues involved in each phase and what proof will be required to pass from one phase to the next." *State of Ala. v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 319 (5th Cir. 1978) (internal quotation marks omitted). "The crucial inquiry" as to whether bifurcation is appropriate "is whether separation would further convenience, avoid prejudice, and be conducive to expedition and economy." *Title Cap. Mgmt., LLC v. Albertelli*, 2017 WL 5956841, at *2 (S.D. Fla. Oct. 18, 2017) (citing Fed. R. Civ. P. 42(b)). When bifurcation will not simplify or expedite the case, courts deny motions to bifurcate or vacate previous orders bifurcating issues. *See, e.g., Lopez v. Zoll Servs., LLC*, 2022 WL 10189029, at *1 (S.D. Fla. Oct. 17, 2022) (denying motion to bifurcate where overlap of evidence meant there would be no economy or convenience); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Becton, Dickinson & Co.*, 2018 WL 627378, at *5–7, *13 (D.N.J. Jan. 30, 2018) (vacating previous order to bifurcate).

Here, if the Court is inclined to try both liability and damages issues on a class-wide basis, bifurcation would be inefficient, inappropriate, and inconvenient because: (1) only one of the parties' many witnesses is identified to testify exclusively on damages issues; (2) multiple out-of-state witnesses would have to incur the burden and expense of having to testify at both the liability and damages trials; (3) there is a risk of losing jurors; and (4) Plaintiffs' evidence of class-wide liability and damages overlaps, given that "actual damages" is an element of FDUTPA liability.

---

related to HVAC odor, whether each class member sold or traded in his or her vehicle and, if so, whether that price was impacted by the alleged HVAC defect. (ECF Nos. 410, 419, 438, 444.)

***First*,** only ***one witness*** is exclusively identified for the damages trial—Mr. Weir (Plaintiffs' damages expert). (*See* ECF No. 465, at 4; ECF No. 501, at 4.) Any efficiency in removing Mr. Weir from the liability trial would be lost by having two trials, with two sets of opening arguments, two sets of closing arguments, and only one unique witness in the later trial. Indeed, as Plaintiffs' counsel pointed out at the August 15, 2022, hearing, bifurcation between class-wide liability and damages trials would not be efficient because, among other things, "you'd have essentially two openings, two closings." (ECF No. 458, 8/15/22, Hr'g Tr. at 180:24–25; *see also id* at 180:17 ("The trial may be longer if you bifurcate."); *id.* at 181:8–11 (agreeing that damages trial would only include experts but stating "our preference is . . . liability and an aggregate number of damages [in one trial]").)

***Second***, where "separate trials would require [the parties] to recall several out-of-state witnesses," courts recognize that "bifurcation would actually inhibit, rather than promote, efficient judicial administration." *Brown v. Advantage Eng'g, Inc.*, 732 F. Supp. 1163, 1171 (N.D. Ga. 1990). Likewise, the "need to recall these witnesses also indicates that the issues of liability and damages are not significantly different." *Id.*; *see also R.E. Linder Steel Erection Co. v. Wedemeyer, Cernik, Corrubia, Inc.*, 585 F. Supp. 1530, 1534 (D. Md. 1984) (denying motion to bifurcate when the parties intended to call the same witnesses in the liability and damages proceedings). That is the case here. The parties' revised witness lists provide that, if the Court were to hold a damages trial, they would need to recall and present testimony from four witnesses (Mr. Baker, Mr. Cardenas, Mr. Gaskin, and Professor Rossi) who previously testified during the liability trial. (ECF No. 465, at 2–3; ECF Nos. 470, at 5 & n.3; 500-1 at 3 & n.2.) And Mr.

6

Cardenas, Mr. Gaskin, and Professor Rossi all reside outside of Florida. This is not efficient and would waste, rather than conserve, resources.

***Third***, while the Court may anticipate only a short delay between the liability and damages trial before the same jury, the risk that jurors will be lost increases with bifurcation. *See, e.g.*, *F & G Scrolling Mouse, L.L.C. v. IBM Corp.*, 190 F.R.D. 385, 387–88 (M.D.N.C. 1999) (recognizing risk "because bifurcation raises the possibility that any delay between separate trials may result in the loss of one or more jurors which would require the selection of a new jury"). The Court has said that the same jury will preside over any liability and damages trial. (ECF No. 458, 8/15/22, Hr'g Tr. 46:19–22 (recognizing need for "same jury").) If the Court loses jurors after the liability trial (due to any number of reasons), the same jury may not be able to preside over a damages trial, to the extent one is necessary. This is, in turn, may result in a mistrial.

***Lastly,*** as a general matter, "[b]ifurcation of proceedings into separate trials concerning liability and damages is appropriate when 'the evidence pertinent to the two issues is ***wholly unrelated***' and the evidence relevant to the damages issue could have a prejudicial impact upon the jury's liability determination." *Helminski v. Ayerst Labs., a Div. of Am. Home Prod. Corp.*, 766 F.2d 208, 212 (6th Cir. 1985) (quoting 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2390 (1971)) (emphasis added). Stated differently, bifurcation is ***not appropriate*** where the "evidence on the issues of liability and damages overlap; indeed, [where] damages are an element of Plaintiffs' cause of action." *Est. of Carrillo v. Fed. Deposit Ins. Corp.*, 2012 WL 13013081, at *2 (S.D. Fla. Apr. 25, 2012).

Here, Plaintiffs must prove "actual damages" as an element of their FDUTPA claim. *Marrache*, 17 F.4th at 1097 (FDUTPA liability requires proof of "actual damages"); *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 n.25 (11th Cir. 2012) (same). Under FDUTPA, "actual

7

damages" has a specific meaning. For each class member, Plaintiffs must show "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Marrache*, 17 F.4th at 1098 (internal citations omitted); *see also Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)).

Given these FDUTPA requirements, Plaintiffs' proposed evidence of liability and damages is intertwined. Contrary to Plaintiffs' representation to the Court that they will not be introducing any survey evidence at trial, Plaintiffs' evidence regarding both the fact and amount of "actual damages" consists almost *entirely* of a conjoint survey.[4] Mr. Gaskin is identified as a liability witness. He used a conjoint survey to attempt to show that class members suffered "actual damages" by overpaying for their vehicles by 25% (*i.e.*, the market value of each vehicle was 25% less than what each class member paid). (ECF No. 340-17 (Gaskin Report), ¶¶ 10–12).)[5] Mr. Weir, who is exclusively identified as a damages witness, then relies almost exclusively on the 25% overpayment percentage from Mr. Gaskin's conjoint analysis to purportedly calculate the amount of damages. (*See* ECF No. 340-18 (Weir Report), at ¶ 59 & tbl.2.)[6] As a result, because

---

[4]   This was the exchange during the February 7, 2023 conference:

   THE COURT:  Are you going to introduce surveys in your case?
   MR. GRADEN: We are *not*, Your Honor.

(Attached as Ex. A, 02/07/23 Hr'g Tr., at 16:13–15 (emphasis added).)

[5]   Notably, Mr. Gaskin relies extensively upon the "economic" opinions of Mr. Weir to reach that overpayment opinion. (*Id.* ¶ 21 (relying upon conversations with Mr. Weir to reach opinions regarding conjoint analysis and results); *id.* at ¶ 24 ("I also consulted with Plaintiffs' counsel and with Colin Weir.").)

[6]   Mr. Weir has not provided any updated class-wide damages model or calculations to account for the Court's original class certification decision (ECF No. 377) or its narrowing of the class to exclude vehicles first sold before July 12, 2014 (ECF No. 481).

8

the evidence Plaintiffs presumably will present to support their claim of "actual damages" is inextricably intertwined with the evidence they propose to present to support the amount of damages, bifurcation would not be efficient or appropriate.

Put simply, if the Court is inclined to try liability and damages issues on a class-wide basis (and it should not), the Court should vacate its Bifurcation Order.[7]

### B. Defendants Are Amending Their Exhibit Lists In Response To The Court's Recent Modification Of Its Order Excluding References To Arbitration And Lemon Law.

At the February 7, 2023, telephonic hearing, the Court indicated that it was going to modify its prior ruling from September 30, 2021, excluding any reference to arbitration and lemon law. (ECF No. 359.) That ruling has been the law of the case for more than a year. Defendants prepared their exhibit lists based upon that exclusion ruling. Now that the Court has indicated an intention to modify that ruing, Defendants are exercising their due process right to amend their exhibit lists to incorporate a small number of exhibits that address arbitration and lemon law issues. SET's amended exhibit list is attached as Exhibit B. Consistent with the Court's directive to avoid including duplicative exhibits across exhibit lists, Toyota Defendants have not submitted an amended exhibit list, but maintain their right to use the newly-added exhibits to SET's exhibit list at trial, all of which are in the possession of and were produced to Plaintiffs during the course of discovery.

---

[7] *See, e.g., Fed. Trade Comm'n v. Adept Mgmt. Inc.*, 2018 WL 893803, at *2 (D. Or. Feb. 13, 2018) (denying bifurcation because "a significant amount of overlap exists between the facts the FTC will have to show to prove liability and the facts it will have to show to determine the appropriate remedy"); *New York v. Kasper*, 2009 WL 10702947, at *7 (E.D.N.Y. Oct. 22, 2009) (same); *Hale v. Ne. Vermont Reg'l Hosp., Inc.*, 2011 WL 133760, at *1 (D. Vt. Jan. 14, 2011) (same); 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2390 (3d ed. 2010) ("Bifurcation is inappropriate if the evidence on liability and damages overlap[s]." (internal quotation marks omitted)).

## IV.   CONCLUSION

For the legal reasons stated above, the Court should vacate the Bifurcation Order and proceed with a single trial on liability and damages.

Dated:  February 14, 2023                                          Respectfully submitted,

| | |
|---|---|
| s/ Robert E. Sacks | s/ Brian M. Ercole |
| Robert E. Sacks | Brian M. Ercole (Florida Bar No. 102189) |
| Florida Bar No. 110019 | brian.ercole@morganlewis.com |
| rsacsks@sbwh.law | Melissa M. Coates (Florida Bar No. 111420) |
| Joshua L. Zipper | melissa.coates@morganlewis.com |
| Florida Bar No. 0045247 | Matthew M. Papkin (Florida Bar No. 106565) |
| jzipper@sbwh.law | matthew.papkin@morganlewis.com |
| SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A. | Morgan, Lewis & Bockius LLP |
| 7777 Glades Rd., Suite 400 | 600 Brickell Avenue, Suite 1600 |
| Boca Raton, FL 33434 | Miami, Florida  33131-3075 |
| Telephone:  561.477.7800 | Tel:  305.415.3000 |
| Fax: 561 477-7722 | Fax:  305.415.3001 |
| | |
| *Attorneys for Defendant Southeast Toyota Distributors, LLC* | David L. Schrader (admitted *pro hac vice*) |
| | david.schrader@morganlewis.com |
| | Morgan, Lewis & Bockius LLP |
| | 300 South Grand Avenue |
| | Twenty-Second Floor |
| | Los Angeles, CA 90071-3132 |
| | Tel: +1.213.612.2500 |
| | Fax: +1.213.612.2501 |
| | |
| | Brent Hawkins (admitted *pro hac vice*) |
| | Mark Feller (admitted *pro hac vice*) |
| | mark.feller@morganlewis.com |
| | Morgan, Lewis & Bockius LLP |
| | One Market, Spear Street Tower |
| | San Francisco, CA  94105-1126 |
| | Tel: +1.415.442.1000 |
| | Fax: +1.415.442.1001 |
| | |
| | *Attorneys for Defendants Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., and Toyota Motor Engineering & Manufacturing North America, Inc.* |

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2023, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*s/ Brian M. Ercole*
Brian M. Ercole