**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 18-cv-22798-MORENO**

JAVIER CARDENAS and RODNEY
BAKER, individually and on behalf of all
others similarly situated,

        Plaintiffs,

v.

TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR SALES, U.S.A., INC.,
TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA,
INC., and SOUTHEAST TOYOTA
DISTRIBUTORS, LLC,

        Defendants.

---

**TOYOTA DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendants Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Engineering & Manufacturing North America, Inc. (collectively, "Toyota") respectfully move for judgment as a matter of law.

Federal Rule of Civil Procedure 50(a) provides, "If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a). Because a reasonable jury would not have a legally sufficient evidentiary basis to find for Plaintiffs on their claims against Toyota—much less on a class-wide basis—this Court should grant judgment as a matter of law in favor of Toyota.

Under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Plaintiffs are required to prove three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985–86 (11th Cir. 2016). And because Plaintiff Cardenas has sought to try these claims on a class-wide basis, he was required to prove every element for every class member. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (explaining that "the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' 28 U.S.C. § 2072(b)).

## I.      Plaintiffs Failed to Prove a Deceptive Act or Unfair Practice

Plaintiffs' claim that Toyota engaged in a deceptive act with respect to the HVAC systems fails both legally and factually.[1] "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the

---

[1] Plaintiffs are not alleging "unfairness" and seek to recover only under a "deception" theory.

consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003). This standard requires a showing of "probable, not possible, deception" that is "likely to cause injury to a reasonable relying consumer." *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.*, 761 So.2d 1256, 1263 (Fla. 3rd DCA 2000).

Plaintiffs failed to present evidence from which a reasonable jury would have a legally sufficient evidentiary basis to find in favor of Plaintiffs on this element.

**A.      Plaintiffs Failed to Prove the Existence of the Alleged Defect.**

Plaintiffs failed to present legally sufficient evidence regarding their theory of defect.  The Complaint defines "the defect" unambiguously: "the above-described HVAC system's failure to remove all humidity and water, thereby emitting foul, noxious, and/or toxic odors in the vehicles." (ECF No. 49 at 2 ¶ 4; *see also id.* at 2 ¶ 3 (asserting that the HVAC system "fails to properly remove all humidity and water and emits foul, noxious, and/or toxic odors").)  And in Opening Statement, Plaintiffs' counsel promised to prove that "approximately 10,000 Floridians who bought 2012, 2013, and 2014 Toyota Camrys . . . got a foul smell").

Even if their evidence were credited by the jury, Plaintiffs made no showing that Toyota's HVAC design actually led to HVAC odor.  Plaintiffs presented no evidence that this defect (retained moisture leading to microbial growth leading to odor) was actually present in any vehicle owned by a class member (that is, that there was any unpleasant odor caused by microbial growth caused by retained moisture).  Plaintiffs' experts could not identify a single vehicle owned by a class member—ever—in which moisture was retained, leading to microbial growth, leading to odor.  (Feb. 28, 2023 Tr. 172:5–12; Feb. 29, 2023 Tr. 5:2–6, 7:6–12.)  Mr. Cardenas' vehicle, for example, was examined, and no odor from the HVAC system was detected by any expert on behalf

of either party.  In fact, turning on the HVAC system improved the air quality in Mr. Cardenas's vehicle.[2]  Similarly, no excess moisture was measured by any expert on behalf of either party.

And even if Plaintiffs proved that this sequence occurred in Mr. Cardenas's vehicle, they failed to prove that this sequence occurred in every Class Vehicle.

For these reasons, a reasonable jury could not find that the HVAC system in the Toyota vehicles was defective as alleged by Plaintiffs or that Toyota engaged in a deceptive act or practice by failing to disclose that this HVAC system had this alleged defect.

### B.  Plaintiffs Failed to Prove that Toyota Committed a Deceptive Act or Practice by Not Disclosing the Possibility of HVAC Odor.

Rather than the allegations of their Complaint, Plaintiffs have indicated during trial that their theory is that the defect is the potential for odors to be emitted by the HVAC system.  This theory conflicts with the allegations made by Plaintiffs in their Complaint: the HVAC system in the Class Vehicles is allegedly defective because it "emits emitting foul, noxious, and/or toxic odors."  (ECF No. 49 at 2 ¶ 3.)  Defendants object to Plaintiffs' attempt to change their theory.

But even if this Court were to consider Plaintiffs' theory that the Class Vehicles are defective because each vehicle had some (never-quantified) potential to emit some (never-quantified) amount of HVAC odor for some (never-quantified) time, such a theory is legally and factually meritless.

---

[2] Nor could any reasonable jury credit the testimony of Mr. Parkhurst regarding microbial growth, in light of the numerous errors in his methodology and conclusions identified by Mr. Hicks.  In fact, Mr. Parkhurst's measurements of Mr. Cardenas's vehicle truly demonstrated that there is no microbial growth where Plaintiffs allege it to be.  Nor did Mr. Parkhurst testify that any growth led to odor.

**1.     The potential for HVAC odor is inherent and universal in automotive HVAC systems.**

The uncontroverted evidence at trial demonstrated that the possibility of producing odor is inherent in HVAC systems, including automotive HVAC systems.  (Mar. 4, 2023 Tr. 109:4–15.) A reasonable jury could not find that the HVAC systems in the Class Vehicles have a materially higher risk of HVAC odor than vehicles produced by any other manufacturer.  To the contrary, survey evidence demonstrated that the Class Vehicles were squarely within the middle of the pack with respect to HVAC odor.  (TOY-422 at 3–4, TOY-427 at 1–2.)

**2.     Toyota disclosed the potential for HVAC odor in the Class Vehicles.**

Moreover, the uncontroverted evidence demonstrated that Toyota disclosed the possibility of HVAC odor in its 2012, 2013, and 2014 owner's manuals.  A reasonable jury would not have a legally sufficient basis to find that Toyota deceptively omitted information about the possibility of HVAC odor, when Toyota expressly acknowledged the possibility of HVAC odor.

To the extent that Plaintiffs allege that there was any omission (or deception) about the source or cause of the odor, their theory of liability fails both legally and factually.  Cases addressing FDUTPA liability focus on whether the consumer "get[s] what she bargained for." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986–87 (11th Cir. 2016).  A customer who knowingly purchased a vehicle with the potential for developing HVAC odor got what she bargained for and has not been deceived.  It is irrelevant whether that potential for HVAC odor was due to the product's design, its manufacture, or was simply inherent in the product itself.  The legal question is whether the product performed as Toyota promised, and it did, regardless of any potential for HVAC odor.  The law did not require Toyota to disclose this alleged "defect."[3]

---

[3] As a leading treatise explains, using the term "defect" in these circumstances is misleading and a misnomer.  *See* 3 Anderson U.C.C. § 2-314:158 ("Rather than using the term 'defect,' courts

For similar reasons, a reasonable jury could not find that any deception regarding a source or cause of a disclosed potential for HVAC odor caused any injury to Plaintiffs or class members. Plaintiffs' expert's conjoint analysis did not consider how consumers valued the relative potential of HVAC odor from different sources. A reasonable jury would not have a legally sufficient evidentiary basis to find that any omission or misrepresentation about the source of the (fully disclosed) potential for HVAC odor was an actionable deceptive or unfair act or practice under FDUTPA.

> **3.   Plaintiffs cannot assert a claim for defect based on "potential" without evidence of the rate and severity of its occurrence, which they never presented.**

And critically, Plaintiffs presented no evidence attempting to quantify the occurrence rate of HVAC odor as a result of the alleged design defect, much less the duration and severity of this odor. To do so, Plaintiffs would have needed to distinguish HVAC odor resulting from the alleged design defect from HVAC odor resulting from other sources. The uncontroverted evidence demonstrated that there are numerous sources of HVAC odor, which is inherent in automobile HVAC systems. Even if evidence showed the general (very low) rate of HVAC odor in Toyota vehicles, Plaintiffs failed to present any evidence that would allow a reasonable jury to find how much, if any, of this odor resulted from the alleged defect that they believe Toyota should have disclosed. Without such evidence, Plaintiffs necessarily failed to prove that a defect or that Toyota committed a deceptive act or practice.

---

should use the term 'nonconformity.' By so doing, the focus will properly be directed as to whether the goods conform to the reasonable expectations created by the contract.").

4.      **Florida would not recognize Plaintiffs' potential theory as legally valid under FDUTPA.**

Even if Plaintiffs had presented evidence that the Class Vehicles had greater potential for HVAC odor than other vehicles, Florida law would not recognize a failure to disclose this increased potential (which does not concern product safety) as a deceptive act or practice that is actionable under FDUTPA.  A theory of deceptive acts based on omissions is not legally valid.

In addition, the theory underlying classwide FDUTPA liability is that every class member was "promised one thing but w[as] given a different, less valuable thing." *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449 n.4 (5th Cir. 2001).  This claim is "rooted in basic contract law." *Id.*[4] A reasonable jury would not have a legally sufficient evidentiary basis to find that Toyota failed to deliver to any, much less every, class member what Toyota promised.

Moreover, Plaintiffs cannot demonstrate that Toyota committed a deceptive act or practice by failing to disclose (i.e., omitting) information about the HVAC system in class vehicles because, as a matter of law, Toyota had no duty to disclose such information.  And to the extent that a duty to disclose turns on underlying facts, Plaintiffs have presented no evidence from a reasonable jury would have a legally sufficient evidentiary basis to find that Toyota owed them a duty to disclose any allegedly omitted information about the HVAC system.

---

[4] To be clear, merely proving that a defendant breached a warranty could not constitute a deceptive act under FDUTPA. *Hache v. Damon Corp.*, No. 8:07CV1248T30EAJ, 2008 WL 912434, at *2 (M.D. Fla. Apr. 1, 2008) (noting that "the Florida Supreme Court cautioned that a breach of contract claim without significant allegations of unfair or deceptive conduct is insufficient to state a cause of action under FDUTPA").  At a minimum, sale of a defective product would become an actionable "deceptive act" only if the product was "systematically defective," FTC Policy Statement on Deception, https://www.ftc.gov/system/files/documents/public_statements/410531/831014deceptionstmt.pdf, as Plaintiffs have attempted (but failed) to prove here.  But it would be insufficient for Mr. Baker to prove that his vehicle, alone, was not in the condition promised by Toyota.  If that were true, Baker's claim would sound in warranty but not in FDUTPA.

In the alternative, Florida law would recognize an omission as an actionable deceptive act only in the narrow circumstances recognized by FTC in *In re International Harvester Co.*, 104 F.T.C. 949, 1057-58 (1984) ("Actionable deception theory is not limited to false or misleading statements. Under two general circumstances it can also reach omissions. First, it can be deceptive to tell only half the truth, and to omit the rest. . . . It can also be deceptive for a seller to simply remain silent, if he does so under circumstances that constitute an implied but false representation.").[5] Plaintiffs have not presented evidence from which a reasonable jury could find either of these circumstances satisfied. In particular, a reasonable jury could not find that Toyota was silent under circumstances that constituted an implied but false representation.

> ### a. Plaintiffs failed to prove their allegation that every Class Vehicle suffered from a "design defect."

Plaintiffs alleged—and continually asserted to the jury during trial—that the class vehicles suffered from a "design defect." Plaintiffs failed to prove this allegation, and a reasonable jury could not find that they did.

Florida defines "design defect" as a product that is unreasonably dangerous because of its design, either because the product "fails to perform as safely as an ordinary consumer would expect when used as intended or when used in a manner reasonably foreseeable by the manufacturer" or when "the risk of danger in the design outweighs the benefits." (To be clear, the consumer-expectations test is inapplicable to complex products such as automobiles.) Plaintiffs have presented no evidence that the HVAC systems are unsafe.

---

[5] FDUTPA should be interpreted consistently with the FTC's decisions. *See* Fl. Stat. § 501.202(3); Fl. Stat. § 501.204(2). The FTC has affirmatively rejected the proposition that "pure omissions"—like those as issue in this case—could constitute a deceptive act. *Int'l Harvester Co.*, 104 F.T.C. at 1059.

Plaintiffs have not presented evidence—and a reasonable jury could not find—that any, much less every, class vehicle possessed a "design defect" as defined by Florida law.

> **b.** **Plaintiffs failed to show that every Class Vehicle was inconsistent with any other implied representations about the condition of the Class Vehicles.**

In the alternative, even if Plaintiffs were permitted to rely on a different theory (rather than the "design defect" theory that they argued throughout trial), their claims still fail.

At a minimum, Plaintiffs must prove that Toyota broke an implied promise about what it would deliver to consumers. A well-developed body of law—the law of warranty and product defect—establishes precisely what a manufacturer impliedly promises to consumers by selling a product. Plaintiffs do not allege and have submitted no evidence from which a reasonable jury could find that any—much less every—Class Vehicle was inconsistent with any implied representation of the quality of its products (such as the implied warranty of merchantability or an implied warranty of fitness). For example, there is no evidence that any Class Vehicle, by virtue of odor emitted from the HVAC system, was not "fit for the ordinary purposes for which such [a vehicle is] used." Fla. Stat. § 672.314(c).[6]

Even if a vehicle emits odor from its HVAC system, it remains fit for the ordinary purposes of an automobile: safe and reliable transportation. There is no evidence—including the testimony of Mr. Baker and Mr. Cardenas—that any HVAC system in any class vehicle suffered from such an odor that rendered it unfit for its ordinary purpose as an automobile.

---

[6] This is the same standard adopted by the FTC, which FDUTPA must be construed to follow. *See In re International Harvester Co.*, 104 F.T.C. 949, 1058-59 (1984) (holding that a seller can commit a "deceptive act" under federal law if the seller violates the implied representation that the products "are reasonably fit for their intended uses," including "that the products are free of gross safety hazards"); *see also* Fla. Stat. § 501.202; Fla. Stat. § 501.204 (incorporating and directing courts to follow FTC law).

In addition, even if Plaintiffs could somehow show that one (or more) vehicles that actually emitted odor was unfit for its ordinary purpose, they cannot prove that every Class Vehicle was inconsistent with what Toyota promised to deliver.  Vehicles that never emitted any HVAC odor (or at least never gave rise to any customer complaints)—the vast majority of the class vehicles— were undeniably fit for the ordinary purposes for which they are used.  Because a reasonable jury could not find that every Class Vehicle was unfit for its ordinary purpose (or otherwise violated an implied warranty or other implied promise of product quality), a reasonable jury could not find that Toyota failed to keep its promises and thus committed a deceptive act or practice with respect to every class member.

Even if Plaintiffs could theoretically prove that a vehicle was unfit for its ordinary purpose because of the mere potential for HVAC odor, Plaintiffs cannot possibly do so without any evidence of the rate or severity of HVAC odor.  Proving that a potential issue would render a product unfit for its ordinary purpose turns heavily on the likelihood of HVAC odor occurring. Cases that have addressed the issue have held that the potential for failure in a product could render the product unfit for ordinary use only if that feature was "substantially certain to fail before their expected useful life has run." *Garcia v. Harley-Davidson Motor Co., Inc.*, No. 19-CV-02054-JCS, 2019 WL 6050768, at *11 (N.D. Cal. Nov. 15, 2019) (citing authorities).  No evidence would allow a reasonable jury to find that Plaintiffs satisfied this standard.  Indeed, Plaintiffs cannot even demonstrate that a Class Vehicle was more likely than not to emit HVAC odor that would render it unfit for its ordinary purpose.  Plaintiffs failed to show even a likelihood, and a reasonable jury could not find that every Class Vehicle was unfit because of the potential to emit HVAC odors demonstrated by Plaintiff.

c.      **Alternatively, Plaintiffs failed to show that every Class Vehicle failed to perform as an ordinary consumer would expect.**

This Court is charging the jury under a lesser standard, in which Plaintiffs are not required to prove that the vehicles violated an implied warranty (the only type of implicit promise that Toyota might have made) but must only prove that vehicles did not perform as an ordinary consumer would expect.  This is not the legally correct standard.  To the contrary, the law is clear that a manufacturer does not warrant (or represent or promise) "that the expectations of the buyer will be realized."  3 Anderson U.C.C. § 2-314:6 (3d. ed.); *see also id.* § 2-314:148 ("[T]he fact that the goods did not live up to the buyer's expectations does not establish that there was a defect that constituted a breach of the warranty of merchantability."); *McCormick Mach., Inc. v. Julian E. Johnson & Sons, Inc.*, 523 So. 2d 651, 656 (Fla. 1st DCA 1988) (holding that "the reasonable expectations of the buyer" is "an improper standard").

It would be irrational to read FDUTPA as requiring more of manufacturers than the law of warrant.  A manufacturer whose products fully comply with its implied warranties (i.e., its promises) to its customers does not commit a "deceptive act" by failing to disclose additional information about the products' performance.  Liability under FDUTPA requires more than breach of warranty, not less.  *See Ellenwood v. World Triathlon Corp.*, No. 8:20-CV-1182-T-60AEP, 2021 WL 62482, at *5 (M.D. Fla. Jan. 7, 2021) (holding that a defendant doing "something that is permitted by the parties' contracts" cannot constitute a FDUTPA violation); *Hache v. Damon Corp.*, No. 8:07CV1248T30EAJ, 2008 WL 912434, at *2 (M.D. Fla. Apr. 1, 2008) (dismissing a FDUTPA claim that "alleges nothing more than breach of [warranty]").

Nonetheless, even if this standard were correct, Plaintiffs have failed to satisfy it.  They did not submit evidence from which a reasonable jury could find that every class vehicle failed to satisfy consumer expectations.  As noted above, Plaintiffs failed to demonstrate that Toyota

10

vehicle's HVAC systems were any different from those of any other manufacturer. To the contrary, the uncontroverted evidence demonstrated that the vast majority of class vehicles have not emitted odor or otherwise failed to satisfy consumer expectations. Survey data confirmed this fact. Particularly given this data regarding customer satisfaction, a reasonable jury could not find that every Class Vehicle failed to operate in accordance with customer expectations.

> **C.      To the Extent that Plaintiffs' Claims Depend on Agency, a Reasonable Jury Would Not Have a Legally Sufficient Evidentiary Basis to Find that the Dealers Are Actual or Apparent Agents of Defendants.**

Plaintiffs have never pleaded, alleged, or suggested that their claims (or affirmative defenses) depend on treating dealerships as actual or apparent agents of Defendants. To the extent that they now seek to assert such a theory, no evidence was presented at trial from which a reasonable jury could find that Defendants had such control over the dealerships that the dealerships could constitute their agents, much less on a classwide basis (i.e., with respect to every dealership working with every class member). Nor is there is evidence from which a reasonable jury could find—much less on a classwide basis—that Defendants by their words or conduct caused or allowed Plaintiffs (including each individual class member) to believe that the dealership was the agent of and had the authority to act for Defendants or that each Plaintiff (including each individual class member) justifiably relied on that belief.

> **D.      Plaintiffs Failed to Show that Any Reasonable Consumer—Much Less a Reasonable Consumer in the Same Circumstances as Every Class Member—Would Be Deceived.**

A reasonable jury would not have a legally sufficient evidentiary basis to find that a reasonable consumer in the circumstances of every class member would be deceived. The uncontroverted evidence is that the potential for HVAC odor is inherent in air conditioning systems. Plaintiffs presented no evidence regarding ordinary consumers' expectations about HVAC odor or the potential for HVAC odor, which is particularly important given this potential

for HVAC odor in every vehicle. Cardenas, for example, did not testify about what his expectation was about the likelihood of a vehicle developing HVAC odor. And there is no evidence about what other consumers expected or that class members were even in the same circumstances at the time of purchase; Plaintiffs offered no survey or other such evidence. There is thus no evidence from which a reasonable jury could find that any failure by Toyota to disclose the potential for odor in its HVAC systems to was "likely to mislead [any] consumer acting reasonably in the circumstances." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003).

Much less have Plaintiffs proved that any failure to disclose the potential for odor in Toyota's HVAC systems was likely to mislead a consumer in the circumstances of **every** class member. Baker, although not a class member, illustrates circumstances in which a purchaser was fully aware of the potential for HVAC odor (and thus could not have been deceived). He previously experienced HVAC odor in two other vehicles (not manufactured by Toyota) and testified that he was thus fully aware, at the time he purchased his Toyota vehicle, of the potential for HVAC odor. (Mar. 1, 2023 Tr. 199:5–13; 202:23–203:1.) A reasonable jury could not find that a reasonable consumer in Baker's circumstances—with his admitted knowledge of the potential for HVAC odor—was reasonably likely to be deceived by Toyota not telling him (again) about the potential for HVAC odor.

*     *     *

Because a reasonable jury would not have a legally sufficient evidentiary basis to find that Toyota committed a deceptive (or unfair) act or practice, much less with respect to every class member, this Court should grant judgment as a matter of law in favor of all Toyota Defendants pursuant to Rule 50(a).

## II.    A Reasonable Jury Would Not Have a Legally Sufficient Evidentiary Basis to Find Causation, Much Less Class-Wide.

FDUTPA requires each plaintiff to prove causation.  *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013).  A plaintiff must show that she was exposed to the allegedly deceptive act and that it directly caused the alleged injury.  *Stewart Agency, Inc. v. Arrigo Enters.*, Inc., 266 So. 3d 207, 213 (Fla. 4th DCA 2019) (FDUTPA causation must be direct); *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 627 (11th Cir. 2015) (affirming dismissal of FDUTPA claim for lack of causation).  Applied here, "Plaintiffs must show that if Defendants had disclosed the alleged HVAC design defect, the Plaintiffs would not have paid a price premium for their vehicle."  (ECF No. 339 at 44.)

Plaintiffs presented no evidence that class members would have decided not to purchase a Camry vehicle or would have paid less if Toyota made some additional disclosure about HVAC odor.  The evidence is to the contrary.  Toyota Defendants' expert Sarah Butler conducted a survey to test whether a disclosure about the potential for HVAC odor would have changed consumers' purchasing decisions.  For the vast majority of consumers, the disclosure did not negatively impact their perception of the vehicle.  (Mar. 3, 2023 Tr. 31:18–22.)  And Ms. Butler found that the disclosure did not impact consumers' interest in purchasing the Camry.  (*Id.* at 33:12–16.)  Her evidence was uncontroverted.  No witness presented a contrary survey regarding purchasing decisions.

Professor Ron Wilcox analyzed third-party survey data and Toyota internal survey data on vehicle owner satisfaction.  He testified that an additional disclosure about HVAC odor would not affect most consumer's purchasing decisions because only a small percentage of Camry vehicles experience HVAC odor, competitor vehicles experience the same issue, and people love their Camry vehicles.  In addition, many consumers would have ignored an additional disclosure about

13

the potential for HVAC odor.  In short, a reasonable jury could not find that an additional disclosure about HVAC odor would have changed class members purchasing behavior.

Plaintiffs' experts' conjoint analysis cannot establish causation.  As discussed below, Gaskin assumed liability, including causation.  (Mar. 2, 2023 Tr. 37:18–38:2.)  Although Gaskin assumed that Toyota would disclose to consumers that "[a] musty, damp, or sour odor may be emitted from the HVAC system" (*id* at 49:17–21), he conceded that no manufacturer has ever made such a disclosure (*id.* at 42:15–22).  Worse yet, he did not evaluate whether his invented and artificial disclosure—divorced from the real world—would have caused class members not to purchase a vehicle or would have allowed them to pay less for those vehicles.  In other words, Gaskin did not analyze causation.  Moreover, the uncontroverted evidence at trial demonstrates that every automobile HVAC system has some possibility of emitting musty, damp, or sour odor.  As Professor Wilcox explained, a disclosure that every vehicle may emit HVAC odor would not affect consumers because it is not a differentiating factor among cars.

Even if Plaintiffs' conjoint analysis could purport to show causation (and it cannot), it would at most be akin to a fraud-on-the market theory (*i.e.*, that an omission caused an inflated price market-wide).  In securities litigation only, an inference of causation can sometimes be recognized based on a fraud-on-the market theory because "in an efficient securities market, competing judgments of knowledgeable buyers and sellers cause the market to reflect an accurate price based on all available information."  *Ross v. Bank S., N.A.*, 885 F.2d 723, 738 (11th Cir. 1989) (en banc) (Tjoflat, J., specially concurring).  The automobile market, unlike the securities market, is not a perfect market, and, thus, causation cannot be inferred in a product liability action involving automobiles based upon an allegedly deceptive marketing.  *Chudasama v. Mazda Motor*

*Corp.*, 123 F.3d 1353, 1369 n.39 (11th Cir. 1997) (rejecting fraud on the market theory in this context); *see also Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1363 (11th Cir. 2002) (same).

## III.   A Reasonable Jury Would Not Have a Legally Sufficient Evidentiary Basis to Find Actual Damages, Much Less for All Class Members.

A reasonable jury would not have a legally sufficient evidentiary basis to find that Plaintiffs (and every class member) suffered actual damages as a result of Toyota's alleged failure to disclose the potential for odor in its HVAC system.

To prove actual damages, Plaintiffs would need to submit evidence of a difference in market value between a vehicle with the ordinary potential of HVAC odor (what Toyota allegedly should have delivered) and a vehicle with the increased potential for HVAC odor (what Toyota allegedly actually delivered).   As the Eleventh Circuit has explained, this difference in market value must be proved by expert testimony; a plaintiff cannot simply invoke "common sense."   *See Reilly v. Chipotle Mexican Grill, Inc.*, 711 F. App'x 525, 528 (11th Cir. 2017) ("Reilly also argues that '[c]ommon sense dictates that' a 'non-GMO burrito . . . [is] worth more than a GMO burrito,' but the Act 'does not provide for the recovery of . . . speculative losses." (alterations and omissions in original)).   Plaintiffs failed to present this expert testimony.   As an initial matter, Gaskin's opinion was unreliable and should have been excluded for the reasons detailed in Toyota's *Daubert* motion and those explained by Professor Rossi.

Evidence at trial also revealed that Gaskin's opinion lacked any foundation.   Neither individual Plaintiff testified that he believed that he overpaid for a vehicle because of the mere potential for odor.   Nor did Plaintiff present any other witness (or class member) who testified that the witness overpaid for a vehicle because of its potential for odor.   Based on this testimony, a reasonable jury could not credit Mr. Gaskin's theory that customers who merely had the potential to experience—but did not actually experience—odor overpaid by their vehicles by 25%.

In addition, even if Mr. Gaskin's testimony is credited, it is a legally insufficient evidentiary basis for a reasonable jury to find that every class member was delivered a vehicle in a condition with a market value less than the market value of the vehicle in the condition in which it should have been delivered according to the contract of the parties. *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3rd DCA 1984).

Most obviously, Gaskin failed to measure the market value of a vehicle in the condition in which it should have been delivered according to the contract of the parties. For the market value of the vehicle in the condition in which it should have been delivered, Gaskin assumed that Toyota promised consumers to deliver a vehicle with, "No musty, damp, or sour odor emitted from the HVAC system." (Mar. 2, 2023 Tr. 30:1–2.) This assumption is neither legally correct nor factually supported. Plaintiffs presented no evidence that Toyota made that representation to its consumers. Nor did the law require Toyota to deliver a vehicle with absolutely no possibility of emitting musty, damp, or sour odor from the HVAC system. The meaning of an unambiguous contract is a matter of law, and as detailed above, by manufacturing vehicles, Toyota did not impliedly warrant (i.e., promise) that the vehicle had no potential whatsoever for emitting dusty, damp, or sour odor from it HVAC system. The uncontroverted evidence at trial demonstrates that every automobile HVAC system has some possibility of emitting odor.[7]

Nor did Gaskin measure the condition in which the vehicles were delivered according to Plaintiffs' proof at trial. At the very most, the evidence showed that the class vehicles had some minimal possibility of HVAC odor that would not appear in the vast majority of class vehicles or affect the vast majority of class members. But rather than measure the market value of vehicles in this condition (what their liability case proved), in seeking damages, Gaskin measured the market

---

[7] Plaintiffs introduced no evidence that customers valued one type of odor differently than another.

value of vehicles in which "[a] musty, damp, or sour odor may be emitted from the HVAC system," without any limit on the severity of the odor, its duration, or its possibility of occurrence.

Even crediting his unreliable testimony, Gaskin successfully proved only that if a company ever managed to build an automobile HVAC system with no possibility of emitting a musty, damp, or sour odor (which does not currently exist), then that company might be able to charge more money for its vehicles than companies manufacturing vehicles with current automotive HVAC systems (which all have the possibility of emitting a musty, damp, or sour odor).  Given that Toyota never promised its customers that it would deliver vehicles incorporating this nonexistent technology, Gaskin's conclusion does nothing to provide legally sufficient evidence of damages.

Plaintiffs thus failed to submit legally sufficient evidence from which a reasonable jury could determine either "the market value of the product . . . in the condition in which it was delivered" or "its market value in the condition in which it should have been delivered according to the contract of the parties." *Rollins, Inc.*, 454 So. 2d at 585.  Put another way, Plaintiffs failed to satisfy the requirement that "[their] damages case must be consistent with [their] liability case." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).  On either ground, Toyota is entitled to judgment as a matter of law.

In addition, the uncontroverted evidence presented at trial demonstrates that the Class Vehicles retain strong resale value compared to the vehicles of other manufacturers.  Given the age of the Class Vehicles, the resale market necessarily reflects the price of vehicles "in the condition in which they were delivered," rather than the price of vehicles in the condition in which they should have been delivered.  (That is, the market reflects the actual performance of the vehicles rather than any misrepresentations or omissions about their performance.)  This resale market demonstrates, unequivocally, that class members did not suffer actual damages by

17

overpaying for their vehicles.  Tellingly, none of Plaintiffs' experts ever evaluated the value of what Class Vehicles sell for in the real world.

Moreover, Plaintiffs introduced no evidence that Toyota charged a price premium (i.e., more than other manufacturers) because of misperceptions about its HVAC system, and, as discussed above, Toyota vehicles had no higher a potential for HVAC odor than that of other manufacturers.  Had class members not purchased vehicles from Toyota, they would have purchased a comparable product (with a comparable risk of HVAC odor) for a comparable price from another manufacturer.  These are precisely the circumstances in which the Eleventh Circuit has held that a party has not suffered actual damages under FDUTPA.  *See Reilly v. Chipotle Mexican Grill, Inc.*, 711 F. App'x 525, 529–30 (11th Cir. 2017) ("[S]he paid the identical amount for her burrito before and after Chipotle began its advertising and that she paid "about the same [price] ... or maybe $1.00 more" for a comparable meal at another Mexican grill.").  For these reasons as well, Toyota is entitled to judgment as a matter of law.

In addition, to the extent that they seek to prove actual damages, Plaintiffs failed to present evidence of the purchase price paid by class members for their vehicles, which the legally correct measure of damages must be based on.  Without such evidence, Plaintiffs have presented legally sufficient evidence of damages.

## IV.    A Reasonable Jury Would Not Have a Legally Sufficient Evidentiary Basis to Find That Baker Proved Fraudulent Concealment of His Claims.

In addition to the reasons for dismissal above, a reasonable jury would only find that Baker's claims are barred by FDUTPA's four-year statute of limitations.  This Court has already held, correctly, that the claims of Plaintiffs who purchased their Camry vehicles before July 12, 2014 are time-barred, absent tolling of the limitations period.  (ECF No. 481 at 2.)  Baker purchased both Camry vehicles before the cutoff date.  (Pls.' Exs. 167, 172.)

To prove fraudulent concealment, tolling Baker "must show (1) successful concealment of the cause of action; (2) fraudulent means to achieve that concealment and (3) that the plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of the claim." *Adderley v. Three Angels Broad. Network, Inc.*, No. 18-23362-CIV, 2019 WL 7189887, at *4 (S.D. Fla. Dec. 26, 2019) (cited at ECF No. 481 at 5). "[T]o successfully prove fraudulent concealment for purposes of tolling the statute of limitations, Plaintiffs must show that each Defendant engaged in an affirmative act that reached [Baker] and that it served to dupe, trick or hoodwink [Baker] such that he . . . was falsely enticed into inaction after [his] cause of action accrued." *In re Engle Cases*, 2012 WL 12904243, at *5 (M.D. Fla. Nov. 26, 2012) (cited at ECF No. 481 at 5). "[F]raudulent concealment goes beyond mere non-disclosure, and must constitute active and willful concealment." *Razor Capital, LLC v. CMAX Fin. LLC*, No. 17-80388-CIV, 2017 WL 3481761, at *5 (S.D. Fla. Aug. 14, 2017). Baker presented no such evidence.

Baker did not testify that Toyota made any affirmative misrepresentation to him that concealed his cause of action. In fact, Baker did not communicate with any Toyota Defendant regarding the odor in his vehicle. (Mar. 1, 2023 Tr. 198:2–13.) Baker testified that when he complained to an independent Toyota dealership about the smell of his 2012 Camry, the technicians reported that they could not duplicate the smell. (*Id.* at 185:12–18.) There is no reasonable basis to conclude that the statement somehow defrauded him. And Baker testified that Tires Plus—another independent company that provides repairs and automotive services—confirmed that the odor could not be duplicated. (*Id.* at 210:5–9.) Baker also complained to a Toyota dealership about the smell of his 2014 Camry, but merely testified that it could not resolve the issue. (*Id.* at 192:15–19.) He did not testify about any misrepresentations made to him. Far from presenting evidence that Toyota engaged in an affirmative act that concealed Baker's cause

of action, Baker testified that Toyota disclosed to him the very information that he claims Toyota should have disclosed—the potential for HVAC odor.  (*Id.* at 201:6–13, 202:19–25.)

Nor did Baker present any evidence about when he discovered Toyota's alleged fraud:  "If the plaintiff made any particular discovery, it should be stated when it was made, what it was, how it was made, and why it was not made sooner[.] . . . One may not avoid the effect of the statute of limitations on the ground of fraudulent concealment if he . . . fails to plead . . . when he . . . discovered the alleged fraud."  *Fedance v. Harris*, 1 F.4th 1278, 1289 (11th Cir. 2021) (quoting *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 881 (8th Cir. 2011)).  At trial, Baker failed to prove when he discovered the alleged fraud.

In addition, Baker presented no evidence from which a reasonable jury could conclude that he exercised reasonable care and diligence in seeking to discover the facts that form the basis of the claim.  To the contrary, Baker testified that he only got involved in this lawsuit in September 2019, years after he resold his vehicles, because he saw an advertisement about this lawsuit.  (Mar. 1, 2023 Tr. at 221:11–25).  He testified that he either had no interest in suing Toyota before then or simply chose not to.  (*Id.* at 222:1–7.)  Either way, his claims are time barred.

Baker was required to prove fraudulent concealment separately with respect to Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Engineering & Manufacturing North America, Inc.  A reasonable jury would not have a legally sufficient evidentiary basis to find that any of these Defendants committed fraudulent concealment.

### CONCLUSION

For these reasons, in addition to those raised orally, this Court should render judgment as a matter of law in favor of the Toyota Defendants.

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)**

Pursuant to Local Rule 7.1(a)(3), I hereby certify that counsel for Toyota has conferred with counsel for Plaintiffs regarding the relief sought in this motion, and Plaintiffs oppose the relief sought.

Dated:  March 8, 2023

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*s/ Brian M. Ercole*
Brian M. Ercole (Florida Bar No. 102189)
brian.ercole@morganlewis.com
Melissa M. Coates (Florida Bar No. 111420)
melissa.coates@morganlewis.com
Matthew M. Papkin (Florida Bar No. 106565)
matthew.papkin@morganlewis.com
600 Brickell Avenue, Suite 1600
Miami, Florida  33131-3075
Tel:  305.415.3000
Fax:  305.415.3001

J. Gordon Cooney, Jr. (admitted *pro hac vice*)
gordon.cooney@morganlewis.com
1701 Market St.
Philadelphia, PA  19103-2921
Tel:  +1.215.963.4806

David L. Schrader (admitted *pro hac vice*)
david.schrader@morganlewis.com
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel: +1.213.612.2500

Brent Hawkins (admitted *pro hac vice*)
Mark Feller (admitted *pro hac vice*)
mark.feller@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel: +1.415.442.1000

William R. Peterson (admitted *pro hac vice*)
william.peterson@morganlewis.com
1000 Louisiana Street, Suite 4000
Houston, TX  77002-5005
Tel: +1.713.890.5000

*Attorneys for Defendants Toyota Motor*
*Corporation, Toyota Motor Sales, U.S.A., Inc.,*
*and Toyota Motor Engineering & Manufacturing*
*North America, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2023, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

_s/ Brian M. Ercole_____
Brian M. Ercole